UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BOKF, N.A.,                            :
             Plaintiff,        :
                           :   Case No. 1:15-cv-01561 (SAS)
v.                                     :
                           :
CAESARS ENTERTAINMENT            :
CORPORATION,                           :
                           :
             Defendant           :
                           :
--------------------------------------------------------x
UMB BANK, N.A.,                        :
                           :
             Plaintiff,          :   Case No. 15-cv-04634 (SAS)
                           :
v.                                     :
                           :
CAESARS ENTERTAINMENT            :   **EXPERT DECLARATION OF JAMES**
CORPORATION,                           :   **GADSDEN**
                           :
             Defendant.         :
--------------------------------------------------------x

**Introduction**

      1.      I have been asked by counsel for Caesars Entertainment Corporation ("CEC") for my opinion regarding the custom and practices in drafting and negotiating provisions of indentures, and to review the provisions governing the release of CEC's guarantee contained in the Indentures at issue in these cases governing the Notes issued by Caesars Entertainment Operating Company, Inc. ("CEOC") to assess whether and to what extent market participants (including holders of the Notes) would have regarded CEC's guarantee (the "Parent Guarantee") as providing credit support for the Notes.

      2.      I have been a partner in the law firm Carter Ledyard & Milburn LLP since 1984 practicing in the areas of corporate trust, structured finance and bankruptcy and reorganization.  I am a past Chair of the Committee on Trust Indentures and Indenture Trustees of the American

Bar Association's Section of Business Law.  I was significantly involved in drafting the *Revised Model Simplified Indenture*, the *Model Negotiated Covenants and Related Definitions*, and the *Annotated Trust Indenture Act*, each published in *The Business Lawyer*.  A very significant part of my practice has involved representation of indenture trustees as well as issuers of debt under indentures.  I have also made a detailed study of indenture terms, including provisions at issue in this litigation in connection with my professional activities, including my several engagements as an expert witness on market custom and practice on indenture drafting.  My resume, which includes a list of my publications over the last ten years, is attached as **Appendix A**.  The materials that I relied upon in forming the opinions discussed in this declaration are identified in **Appendix B**.

3.      As discussed below, it is my opinion that a reasonable market participant[1] would have understood that the Parent Guarantee was provided to facilitate financial reporting and was not intended to provide credit support for the Notes since the Indentures permitted CEC to terminate the Parent Guarantee through steps entirely within its control.  A reasonable holder of the Notes would not have viewed a release of the Parent Guarantee as impairing the rights that it was assured of having for payment of its Notes under the terms of the Indentures.

4.      My opinion is based on principles and conventions that are familiar and important to the market for high yield notes, including: (1) rules of the Securities and Exchange Commission ("SEC") governing the provision of financial information concerning affiliated obligors on indenture securities; and (2) the role of restrictive covenants and events of default in

---

[1]      Purchasers of high yield debt securities, such as those at issue in these cases, are principally large and sophisticated institutions.  These securities are frequently never registered with the SEC (under "Rule 144A for Life") or are registered in what is known as an "A-B Exchange" after the securities are originally sold to large and sophisticated investors in a transaction exempt from registration that can then be resold under Rule 144A or some other exemption from registration.

indentures.  It is also based on a review of indentures drafted during the period that the CEOC Indentures were drafted.[2]

## I.   Background:  Relevant Principles and Market Conventions

5.   Drafting of Indentures.  Although the specific terms of indentures are negotiated, indentures tend to be very similar to one another.  This is a product of: (1) the use of model indentures[3]; (2) the practice of using precedents from prior similar transactions as a drafting base; (3) the concentration of responsibility and expertise for drafting in law firms that represent issuers and underwriters, and (4) the desire of investors for conformity in the terms among indentures, which simplifies the process of comparing the rights associated with different securities.

6.   Regulation S-X.  Regulation S-X (17 C.F.R. Part 210) sets out the requirements for the filing of financial statements in forms filed with the SEC.[4]  Among other things, Regulation S-X requires the inclusion of audited financial statements of the issuers of the securities, in addition to guarantors.[5]  As is relevant here, Rule 3-10 of Regulation S-X permits the filing of only consolidated financial statements for the issuer's parent entity—with condensed consolidating financial information provided for the issuer and any other guarantor where the parent's guarantee is "full and unconditional" and any other guarantors are 100% owned by the

---

[2]   This review comprised eighty-nine indentures that included parent guarantees, which were identified as exhibits to filings made with the SEC for periods ending after December 31, 2008 and on or before December 31, 2013.

[3]   See American Bar Foundation, Commentaries on the Model Debenture Indenture Provisions (1971), Model Simplified Indenture, 35 Bus. Law. 1115 (2000) and the Revised Model Simplified Indenture, 61 Bus. Law. 1439 (2006).

[4]   Indentures for issuers that are not required to file reports with the SEC—such as "Rule 144A for Life" issues—frequently follow the SEC rules, even though not applicable to them.

[5]   See SEC Division of Corporate Finance, Financial Reporting Manual sec. 2500.1, p. 142.

parent.[6]  Regulation S-X does not mandate that a guarantee can never be released or limited; the consequence of failure to meet the requirements of the rule is that the relief from filing separate audited financial statements for the issuer is no longer available.[7]

7.      Reporting Covenants.  Section 314(a) of the Trust Indenture Act ("TIA") requires that each obligor (i.e., the issuer and any guarantor(s)) file with the indenture trustee the financial reports that the obligor is required to file with the SEC.  If the issuer is not required to file reports with the SEC, indentures require the issuer to deliver to the trustee and make available to noteholders reports containing the information the issuer would file if it were required to file reports with the SEC.  Following the pattern of Regulation S-X, indenture covenants permit the provision of the parent reports to fulfill the issuer's reporting obligation if the parent files reports that qualify under Rule 3-10.  Where the parent is already preparing audited consolidated financial statements, providing the guarantee of the issuer's indenture obligations allows the group to avoid the time and expense of a separate audit of the issuer's financials.  Recognizing that the guarantee has been provided merely to facilitate reporting, some indentures provide that, if the issuer is at some point no longer a wholly owned subsidiary of the parent—in which case the issuer must prepare and file its own financial reports—the parent's guarantee is automatically released.

---

[6]      Release Nos. 33-7878, 34-43124; International Series No. 129, FR-55 File No. 57-7-99 "Financial Statements and Period Reservation for Related Issuers and Guarantors," 65 Fed. Reg. 51692, 51698 (8/24/2000).  The phrase "full and unconditional" is typical in any guarantee involving a sophisticated issuer and intended to make each guarantor in effect a co-obligor on the guaranteed liabilities and to contract out of the surety defenses that might otherwise be available to the guarantor.

[7]      Since the time that CEC's Guarantee was released on the Notes, CEOC has filed its own audited financial statements with the SEC.

## II.    Financial Reporting Guarantees vs. Credit Support Guarantees

8.    As discussed further in this section, there are several features that distinguish indentures with a parent guarantee oriented toward facilitating financial reporting (a "financial reporting guarantee") from those with a parent guarantee oriented toward providing credit support (a "credit support guarantee").  In particular: *First*, when the relief from separately filing financial reports is no longer available or used, the financial reporting guarantee is released, whereas a credit support guarantee would remain in place.  *Second*, if the indenture includes covenants restricting the ability to take steps that affect creditworthiness, then with a financial reporting guarantee such restrictive covenants would not apply to the guarantor, whereas with a credit support guarantee, one would expect to see such restrictive covenants that would apply to the guarantor (as well as the issuer and its subsidiaries).  *Third*, with a financial reporting guarantee, "cross-defaults" applicable to the guarantor would not be included, whereas in credit support guarantees such cross-defaults would be found.

9.    Guarantee Release Events.  Events of release from guarantees are a ubiquitous feature of indentures (and as noted, neither indenture drafters nor investors have, since the promulgation in 2000 of Rule 3-10[8] of Regulation S-X, understood it to prevent such provisions from being effective[9]).  These events often include (1) payment of the securities; (2) satisfaction

---

[8]    Similarly, indentures provide for release of pledges of the stock of subsidiaries if the existence of the pledge would require the submission of financial statements of the pledgor as a substantial portion of the collateral under Rule 3-16 of Regulation S-X.

[9]    In fact, my review turned up numerous instances of indentures that were contemporaneous with the CEOC Indentures, containing parent and subsidiary guarantees that were expressly termed "full and unconditional," and yet also providing for the release of the guarantee under various circumstances, including where it was expressly or implicitly permitted for a majority of the holders to consent to the amendment of parent and subsidiary guarantees. This indicates that there was no understanding in the market about a *per se* legal prohibition on the modification of guarantees, including modifications which could facilitate or even effectuate their release.

and discharge of the obligations under the indenture; (3) defeasance of the indenture securities; and (4) termination of the circumstances that caused the creation of the guarantee (frequently, the release of a guarantee of senior debt).  With a financial reporting guarantee, a release event based on the issuer no longer being a wholly owned subsidiary of the guarantor is found because Rule 3-10 only permits reliance on the parent's financials if the issuer is a wholly-owned subsidiary of the parent.

10.    <u>Restrictive covenants</u>.  High-yield debt indentures typically contain restrictive covenants limiting the transactions that the issuer and its "Restricted Subsidiaries" can engage in that would affect their ability to meet their obligations under the indenture.  Restrictions may be placed on providing guarantees of other debt, incurring debt, issuing stock, granting liens, paying dividends, redeeming stock, paying subordinated debt, engaging in transactions with affiliates, or selling assets.  Absent comparable covenants applicable to a parent guarantor, there are no limitations under the terms of an indenture on the parent's ability to engage in such transactions.  Indentures that are structured in this manner (*i.e.*, without the restrictive covenants applying to the parent) indicate that the guarantee is not in place to provide credit support but, rather, to facilitate financial reporting obligations.

11.    <u>Guarantor Events of Default</u>.  One may find indentures with a parent guarantee in which events of default include actions on the part of the parent that would affect its creditworthiness.  This is characteristic of a guarantee oriented toward credit support.  In the absence of such provisions, the acceleration of other indebtedness of the parent guarantor, unpaid judgments against the parent guarantor, and even the bankruptcy of the parent guarantor are not events that give holders of the notes the right to accelerate their claims and pursue remedies.  The

absence of such provisions suggests that the guarantee is in place to facilitate financial reporting obligations, not to provide credit support for the notes.

### III.     Analysis of the CEOC Indentures

12.     The CEOC Indentures are consistent with common market practice for TIA-qualified indentures for high yield issues.  All of the CEOC Notes were issued in "A-B exchanges."  CEOC initially offered each series of Notes pursuant to an Offering Memorandum without registration with the SEC but with an undertaking to file a registration statement and exchange registered Notes on identical terms with the unregistered Notes.  The financial statements of CEC incorporated by reference in each offering memorandum and subsequently included in each prospectus included the condensed consolidating financial information for CEC and its subsidiaries required to comply with Rule 3-10 of Regulation S-X.

13.     Reflecting the terms of Rule 3-10, CEC's Parent Guarantee was expressed to be "full and unconditional"—a term that appears in all indenture guarantees, regardless of whether there are release provisions.  In my opinion, investors would not understand this language as overriding the express terms of Article XII, which provided for the release of the Parent Guarantee through a variety of circumstances.

14.     As is relevant here, Section 12.02(c) of each Indenture set forth circumstances under which "[t]he Parent Guarantee shall terminate and be of no further force or effect and [CEC] shall be deemed released from all obligations" under the Indentures.  Each of those circumstances is under the control of CEC and CEOC, and each is common in indentures.

15.     It is my opinion that the CEOC Indentures included—and would have been understood by reasonable investors to include—a guarantee by CEC for the purpose of facilitating CEOC's financial reporting, not for the purpose of providing credit support, given the

7

events that could terminate its liability.  *First*, the initial release in section 12.02(c)(i) of the Indentures provides that when any amount of stock in CEOC is transferred away from CEC, the Parent Guarantee is released (at which point the relief for CEOC from separately filing financial reports would no longer be available under Rule 3-10 of Regulation S-X).  *Second*, Article IV of each Indenture includes covenants restricting the ability to incur debt, pay dividends, sell assets and engage in transaction benefitting affiliates—all steps that affect creditworthiness.  But by their terms, these restrictive covenants apply only to CEOC (the issuer) and its subsidiaries, and they do not prohibit CEC, the guarantor, from taking such actions.  *Third*, while the Indentures identify many events of default in section 6.01, the Indentures do not include events of cross-default that are based upon adverse developments to CEC, including a bankruptcy of CEC.

16.    In my opinion, CEC's Guarantee would not have been regarded by reasonable market participants (including holders of the Notes) as providing a financial recourse for payment of the Notes that they could rely upon.  That opinion is based on the terms governing release of the Guarantee (including the ease with which those provisions—particularly Section 12.02(c)(i)—could have been satisfied), the similarity between the Guarantee and other guarantees supplied by parent companies for reporting purposes, and the absence of covenants and events of default applicable to CEC that would have constrained CEC's ability to undertake actions affecting its ability to provide payment of the Notes.

## IV.    <u>Prior Testimony and Compensation</u>

17.    In the last four years, I was qualified as an expert witness and testified in an adversary proceeding in *In re K-V Discovery Solutions, Inc.*[10] and in *In re Residential Capital,*

---

[10]    Case No. 12-13146 (ALG); *Silver Point Finance LLC v. Deutsche Bank Trust Company Americas*, Ad. No. 13-01361 (ALG) (U.S.B.C., S.D.N.Y.).

*LLC*.[11]  I also prepared an expert report that was offered in evidence in *Marblegate Asset Management, LLC v. Education Management Corp.*, 14 Civ. 08584 (KPF).

18.     My firm is being compensated at an hourly rate of $850 for my work, at rates ranging from $225 to $300 for colleagues who assisted me, and for out-of-pocket expenses.  This compensation is not dependent on the opinions I reach or the results of these cases.

19.     I reserve the right to amend, revise, or modify the opinions expressed in this declaration based on any additional information that becomes available to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2015

James Gadsden

---

[11]     Case No. 12-12020 (MGL), *Residential Capital, LLC v. UMB Bank, N.A.*, Ad. No. 13-01343 (MG); *Official Committee of Unsecured Creditors v. UMB Bank, N.A.*, Ad. No. 13-01277 (MG).

**APPENDIX A**

**JAMES GADSDEN**
Carter Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005
(212) 238-8607 - Office
e-mail:  gadsden@clm.com

## PROFESSIONAL EXPERIENCE

May 1974 – Present; Partner (Since January, 1984)
Carter, Ledyard & Milburn LLP
2 Wall Street
New York, New York 10005

**Education**:
Columbia Law School (J.D., 1974) (James Kent Scholarship; Harlan Fiske Stone Scholar)
University of Rochester B.A., 1971 (with distinction in Political Science)

**Practice**:
Corporate and litigation practice involving structured finance, restructuring and bankruptcy matters; representation of issuers of asset backed securities and borrowers on syndicated lending facilities; frequent representation of corporate trustees for corporate and municipal debt in connection with the issuance of the debt and defaults and restructurings, including chapter 11 bankruptcy cases and covenant enforcement litigation; expert witness in litigation involving indenture interpretation issues.

**Admitted**:
1975 New York
1975 U.S. Court of Appeals, Second Circuit
1999 U.S. Court of Appeals, Third Circuit
1975 U.S. District Courts, Southern and Eastern Districts of New York
2001 U.S. District Court, Northern District of New York
2012 U.S. District Court, Eastern District of Michigan

**Affiliations**:
The American Law Institute (Sustaining Member)

American Bar Association (Section of Business Law, Committee on Trust Indentures and Indenture Trustees, Chair 2002-2006; Business Bankruptcy, Commercial Finance, UCC and Legal Opinions Committees)

Working Group on Legal Opinions Foundation

The Association of the Bar of the City of New York (Member, Committee on Commercial and Uniform State Laws, Former member, Committees on Bankruptcy and Corporate Reorganization, Structured Finance, Banking Law and Admiralty)

American Bankruptcy Institute

American Bar Foundation (Sustaining Life Fellow)

International Bar Association (Member, Section of Insolvency, Restructuring and Creditors' Rights)

Member of the mediation panels of the U.S. District Court, Southern District of New York and U.S. Bankruptcy Courts, Southern and Eastern Districts of New York and District of Delaware

**James Gadsden**                                                                                                      2

**Awards/Honors:**
2010-2014 *Super Lawyers*®
AV® Preeminent™ rated by Martindale-Hubbell®

# Illustrative Matters

| Client | Description |
|---|---|
| American Bar Association | <u>Amicus Curiae</u> in Southern Pacific Funding Corporation litigation. |
| Avnet Inc. | $450 million trade receivables securitization. |
| Bank of New England Litigation | Expert Witness. |
| The Bank of New York Mellon | Indenture trustee in the Allen Systems Corp, Dendreon Corporation, River Terrace Estates, Overseas Shipholding, Metro Affiliates, Energy Conversion Devices, Ambac Financial Group, Overseas Shipbuilding, Metro Affiliates, Charter Communications, Calpine, Mrs. Fields, Safety-Kleen, Owens Corning, G-I Holdings, and Kaiser Group bankruptcy cases and escrow agent in Cellnet bankruptcy case; Amylin Pharmaceuticals, Realogy and Countrywide covenant litigation. |
| Bankers Trust Company | Indenture trustee in Almacs bankruptcy case. |
| Cisco Systems, Inc. | Lessor in Rhythm NetConnections, Global Crossing, WorldCom/MCI and Genuity bankruptcy cases. |
| Creditors' Committee of Cybergenics Corporation | Litigation counsel for the Creditors' Committee asserting fraudulent claims. |
| Education Management Corp. | Expert witness. |
| JP Morgan Chase Bank | Indenture trustee for defaulted industrial revenue bond issues. |
| K-V Discovery Solutions, Inc. | Expert witness. |
| Loral Space and Communications Ltd. | Special counsel to the Board of Directors of Loral Orion, Inc. in chapter 11 case. |
| Orient-Express Hotels Ltd. | Single asset commercial mortgage backed securitization. |
| PSINet Consulting Solution | Plan oversight committee. |
| Recoton Corporation bankruptcy case | Mediator of adversary proceedings in chapter 11 case. |
| Residential Capital, LLC | Expert witness. |
| Sea Containers Ltd. | Special counsel in chapter 11 case. |
| | $350 million shipping container securitization; joint venture with Genstar Container Corporation. |
| Seaco SRL | Shipping container securitizations; syndicated loans. |
| Sunshine Oilsands Ltd. | $200 million senior secured note issue |
| Trinity Biotech plc | $115 million debt offering |
| U.S. Bank, N.A. | Tender option bond transactions. |

Member of the drafting committee for the ABA's Revised Model Simplified Indenture published in The Business Lawyer in 1999, the Model Negotiated Covenants published in The Business Lawyer in 2006 and the Annotated

**James Gadsden**                                                                                              3

Trust Indenture Act published in The Business Lawyer in 2012.

**Published**:

- "PR Bankruptcy Court Finds Debtor Waived Right to Re-characterize Lease as a Secured Transaction," *Clark's Secured Transactions Monthly,* November 2014

- "Avoiding Collateral Damage: <u>In re Motors Liquidation</u> and the Effectiveness of UCC Termination Statements," *Client Advisory,* November 6, 2014

- "Corporate Trust Opinions, Legal Opinions in Corporate Transactions," *Practicing Law Institute*, 2014

- "Disqualified Lenders:  The LightSquared Controversy Over the Acquisition of Its Debt by the Executive Chairman of Its Competitors Illustrates the Importance of Careful Drafting to Avoid Costly Pitfalls and Unintended Risks," *Client Advisory,* December 30, 2013

- "Safe Harbor" in the Bankruptcy Storm:  The Unavoidability of Securities Transactions Utilizing Financial Intermediaries,": *Client Advisory,* September 4, 2013

- "Covenant-Lite, Convergence and Consequences:  Observations on Leveraged Loans and High-Yield Bonds," *Client Advisory,* June 10, 2013

- "Enforcing 'Bad Boy' Guarantees in Nonrecourse Financings," *New York Law Journal,* March 11, 2013

- "Indenture "No-Action" Clauses Bar Independent Claims by Securityholders," *The Banking Law Journal,* March 1, 2013

- "The New York Court of Appeals Broadly Validates Contractual Choice of Law Clauses," *Client Advisory,* January 23, 2013

- "Annotated Trust Indenture Act," *The Business Lawyer,* August 2012

- "Structuring Commercial Mortgage Securitization Special Purpose Entities After General Growth Properties," *Committee on Structured Finance,* July 2010

- "Special Report on the Preparation of Substantive Consolidation Opinions," by the Committee on Structured Finance and the Committee on Bankruptcy and Corporate Reorganization of The Association of the Bar of the City of New York, *The Business Lawyer,* February 2009

- "New York's New Power of Attorney Law and Forms," *Client Advisory,* November 16, 2009

- "Lehman bankruptcy court sets a September 22, 2009 bar date for all claims, issues new proof of claim form, and orders derivatives and guarantee creditors to file supplemental questionnaires by October 22, 2009," *Client Advisory,* July 13, 2009

- "Madoff Securities Task Force Update: IRS Issues Helpful Guidance," *Client Advisory,* March 17, 2009

- "Madoff Securities Task Force Update: Claiming Tax Benefits for Losses," *Client Advisory,* January 9, 2009

- "Madoff Securities Task Force Update: March 4, 2009 Deadline, *Client Advisory,* January 2009

- "Madoff Securities Task Force," *Client Advisory,* December 30, 2008

- "Current Issues of Interest to Indenture Trustees," October 12, 2007

- "Indenture Trustee Failed to Persuade the Bankruptcy and District Courts that it Made a "Substantial Contribution" Justifying Recovery of its Fees and Expenses as an Administrative

Expense Under Bankruptcy Code§ 303 (b), July 23, 2007

- "Delaware Supreme Court's Decision in Gheewalla Returns Clarity and Consistency to Creditors' Rights," *Business Reorganization Committee ABI Committee News,* July 2007

- "Both Senior and Subordinated Notes Bear a Burden of Proofs in Establishing the Application of the Subordination Provisions of the Indentures to Post-Petition Interest," May 29, 2007

- "Securitization Trustee is Unsuccessful in Obtaining Dismissal of Claims Asserted Against it in Litigation Arising Out of Sub-Prime Mortgage Lender's Bankruptcy," May 29, 2007

- "Release of Security Pursuant to the Terms of the Equal and Ratable Clause of the Indenture Shortly Prior to Bankruptcy Filing Does Not Violate the Covenant of Good Faith and Fair Dealing," May 29, 2007

- "Indenture Trustee Can Settle Dispute Over the Allowed Amount of the Claim on the Bonds Without the Consent of All Bondholders," May 29, 2007

- "Issuer Fails to Recover from Indenture Trustee Funds Withheld from an Interest Payment to Fund Litigation Against the Company," May 29, 2007

- "Required Disclosure by Claim Traders Participating in a Bankruptcy Case," *Client Advisory*, March 2007

- "Enron and the Subordination of Stock Options and Other Claims under §510(b) of the Code," *American Bankruptcy Institute Journal*, February 2007

- "Model Negotiated Covenants and Related Definitions," *The Business Lawyer*, August 2006

**Presentations**:

- "Seventh Circuit Addresses "True Sales" to Bankruptcy Remote Vehicles: Paloian v. LaSalle Bank, N.A.," *2010 Fall Legal Opinion Seminar*, ABA Business Law Section, October 19, 2010

- "General Growth Properties and its Aftermath," *Hot Topics in Structured Finance*, New York City Bar Association, March 17, 2010

## APPENDIX B

## CEOC Indentures

–      Indenture, dated as of June 10, 2009, among Harrah's Operating Escrow LLC and Harrah's Escrow Corporation, as Joint Issuers, Harrah's Entertainment, Inc., as Parent Guarantor, and US Bank National Association, as Trustee, pursuant to which the 11.25% Senior Secured Notes due 2017 were issued.

–      Indenture, dated as of February 14, 2012, among Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Joint Issuers, Caesars Entertainment Corporation, as Parent Guarantor, and US Bank National Association, as Trustee, pursuant to which the 8.50% Senior Secured Notes due 2020 were issued.

–      Indenture, dated as of August 22, 2012, among Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Joint Issuers, Caesars Entertainment Corporation, as Parent Guarantor, and US Bank National Association, as Trustee, pursuant to which the 9.00% Senior Secured Notes due 2020 were issued.

–      Indenture, dated as of February 15, 2013, among Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Joint Issuers, Caesars Entertainment Corporation, as Parent Guarantor, and US Bank National Association, as the Trustee, pursuant to which the 9.00% Senior Secured notes due 2020 were issued.

–      Indenture, dated as of April 16, 2010, among Harrah's Operating Escrow LLC and Harrah's Escrow Corporation, as Joint Issuers, Harrah's Entertainment, Inc., as Parent Guarantor and US Bank National Association, as Trustee, pursuant to which the 12.75% Second Priority Senior Secured Notes Due 2018 were issued.

## Offering Memoranda

–      Offering Memorandum, dated as of August 15, 2015, for $750,000,000 principal amount 9% Senior Secured Notes, issued by Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Escrow Issuers.

–      Offering Memorandum, dated as of February 9, 2012, for $1,250,000,000 principal amount 8.5% Senior Secured Notes, issued by Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Escrow Issuers.

–      Offering Memorandum, dated as of September 8, 2009, for $720,000,000 principal amount 11.25% Senior Secured Notes, issued by Harrah's Operating Company, Inc.

–      Offering Memorandum, dated as of December 16, 2012, for $750,000,000 principal amount 9% Senior Secured Notes, issued by Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Escrow Issuers.

i

–   Offering Memorandum, dated as of February 4, 2013, for $1,500,000,000 in principal amount 9% Senior Secured Notes, issued by Caesars Operating Escrow LLC and Caesars Escrow Corporation, as Escrow Issuers.

–   Offering Memorandum, dated as of May 27, 2009, for $1,375,000,000 in principal amount 11.25% Senior Secured Notes, issued by Harrah's Operating Escrow LLC and Harrah's Escrow Corporation, as the Escrow Issuers.

–   Offering Memorandum, dated as of April 13, 2010, for $750,000,000 in principal amount 12.75% Second Priority Senior Secured Notes.

**Court Papers**

*BOFK, N.A., v. Caesars Entm't Corp.,* (No. 15-cv-1561):

–   Complaint for Recovery on Guarantee, Damages and Declaratory Relief, Demand for Trial by Jury, March 3, 2015.

–   Letter to the Court from BOKF, N.A. May 19, 2015.

–   Letter to the Court from CEC, May 22, 2015.

–   Transcript of Pre-motion Conference, May 26, 2015.

–   Memorandum of Law in Support of Plaintiff BOKF N.A.'s Motion for Partial Summary Judgment, June 25, 2015.

–   Plaintiff BOKF N.A.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in support of its Motion for Partial Summary Judgment, June 25, 2015.

–   Declaration of Andrew I. Silfen in Support of Plaintiff BOKF N.A.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in Support of its Motion for Partial Summary Judgment, June 25, 2015.

*UMB Bank, N.A., v. Caesars Entm't Corp.*, (No. 15-cv-4634(SAS)):

–   Memorandum of Law of Plaintiff UMB Bank, N.A. in Support of its Motion for Partial Summary Judgment, June 26, 2015.

–   Plaintiff UMB Bank N.A.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in Support of its Motion for Partial Summary Judgment, June 26, 2015.

–   Declaration of David A. Crichlow in Support of Plaintiff UMB Bank N.A.'s Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 in Support of its Motion for Partial Summary Judgment, June 26, 2015.

**Other Reference Material**

American Bar Foundation, Commentaries on the Model Debenture Indenture Provisions (1971).

Committee on Trust Indentures and Indenture Trustees, ABA Section of Business Law, *Model Negotiated Covenants and Related Definitions*, 61 Bus. Law. 1439 (2006).

SEC Division of Corporate Finance, Financial Reporting Manual

Securities and Exchange Commission, Financial Statements and Periodic Reports for Related Issuers and Guarantors, Fed. Reg. Vol. 65, No. 165, August 24, 2000.

David E. Webb, Documentation for High Yield Debt (Euromoney 2001).

Release Nos. 33-7878, 34-43124; International Series No. 1229; -- FR-55; File No. 57-7-99 Financial Statements and Periodic Reports for Related Issues and Guarantors, 65 Fed. Reg. 51692 (8/24/2000)

Understanding High-Yield Bonds (PEI Alternative Insights)

*An Analysis of Current Reporting Issues*, SEC COMMENTS AND TRENDS (Ernst & Young), Sep. 23, 2014

*Rod Miller* et al., *Protecting the Bondholder's Place in the Queue – the Role of Subordination, Anti-layering, Liens, Guarantees, and Time*, in UNDERSTANDING HIGH-YIELD BONDS 63, (PEI, September 25, 2014).

**Other Indentures**

– Indenture, dated as of December 8, 2009, among Acuity Brands Lighting, Inc., as Issuer, Acuity Brands, Inc., as Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 6.00% Senior Notes due 2019 were issued.

– Indenture, dated as of May 22, 2012, among AerCap Aviation Solutions B.V., as the Company, AerCap Holdings N.V., the Parent Guarantor, and Future Subsidiary Guarantors pursuant to which the 6.375% Senior Unsecured Notes due 2017 were issued.

– Supplemental Indenture, dated as of November 20, 2012 to May 11, 2010 Indenture, among AK Steel Corporation, as the Company, and AK Steel Holding Corporation, as Parent Guarantor, pursuant to which the 5.00% Exchange Senior Notes due 2019 were issued.

– Supplemental Indenture, dated as of March 22, 2012 to May 11, 2010 Indenture, among AK Steel Corporation as the Company, AK Steel Holding Corporation, as Parent Guarantor, pursuant to which the 8.375% Senior Notes due 2022 were issued.

iii

–     Indenture, dated as of November 20, 2012, among AK Steel Corporation, as the Company, AK Steel Holding Corporation, as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which the 8.750% Senior Secured Notes due 2018 were issued.

–     Indenture, dated as of May 11, 2010, among AK Steel Corporation, as the Company, AK Steel Holding Corp., as Parent Guarantor, pursuant to which Debt Securities were issued.

–     Indenture, dated as of October 4, 2013, among Allegion Holding Company Inc., as Issuer, Allegion Plc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5.750% Senior Notes due 2021 were issued.

–     Indenture, dated as of October 16, 2009, among Anheuser-Busch Inbev Worldwide Inc., as the Company, Anheuser-Busch Inbev Nv/Sa, as Parent Guarantor, and Subsidiary Guarantor, pursuant to which Debt Securities were issued.

–     Indenture, dated as of November 17, 2009, among Antero Resources Finance Company, as Issuer, Antero Resources LLC, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 9.375% Senior Notes due 2017 were issued.

–     Indenture, dated as of August 1, 2011, among Antero Resources Finance Corporation, as Issuer, Antero Resources Corporation, as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which the 7.250% Senior Notes, Series A due 2019 were issued.

–     Indenture , dated as of November 19, 2012, among Antero Resources Finance Corporation, as Issuer, Antero Resources LLC, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 6.0% Senior Notes, Series A due 2020 were issued.

–     Indenture , dated as of November 5, 2013, among Antero Resources Finance Corporation as Issuer, and Antero Resources Corporation, as Parent Guarantor, pursuant to which the 5.373% Senior Notes, Series A due 2021 were issued.

–     Indenture, dated as of April 2, 2012, among Aon Corporation, as the Company, and Aon Plc, as Parent Guarantor, pursuant to which Debt Securities were issued.

–     Indenture, dated as of April 2, 2012, among Aon Corporation, as the Company, and Aon Plc, as Parent Guarantor, pursuant to which the 7.375% Senior Notes due 2012 were issued.

–     Indenture, dated as of March 7, 2013, among Aramark Corporation, as Issuer, Aramark Holdings Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5.75% Senior Notes due 2020 were issued.

–     Indenture, dated as of December 17, 2013, among Aramark Holdings Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5.75% Senior Notes due 2020 were issued.

–       Indenture, dated as of December 22, 2010, among Atkore International, Inc., as the Company, Atkore International Holdings, Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Notes were issued.

–       Indenture, dated as of June 5, 2015, among Berry Plastics Corporation, as Issuer, Berry Plastics Group Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5.125% Second Priority Senior Secured Notes due 2023 were issued.

–       Indenture, dated as of May 10, 2011, among CCO Holdings LLC and CCO Holdings Capital Corp, as Co-Issuers, and Charter Communications Inc., as Parent Guarantor, pursuant to which the 6.500% Senior Notes due 2021 were issued.

–       Indenture, dated as of May 16, 2011, among CCO Holdings LLC and CCO Holdings Capital Corp, as Co-Issuers, Charter Communications Inc, as Parent Guarantor, pursuant to which Senior Debt Securities were issued.

–       Indenture, dated as of September 27, 2010, among CCO Holdings, LLC and CCO Holdings Capital Corp., as Co-Issuers, Charter Communications Inc. as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which the 7.25% Senior Notes due 2017 were issued.

–       Indenture, dated as of April 28, 2010, among CCO Holdings, LLC and CCO Holdings Capital Corp., as Co-Issuers, Charter Communications, Inc., as Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 7.875% Senior Notes due 2018 and the 8.125% Senior Notes due 2020 were issued.

–       Indenture, dated as of November 5, 2014, among CCO Holdings, LLC and CCO Holdings Capital Group and CCOH Safari, LLC, as Co-Issuers, and Charter Communications, Inc., as Parent Guarantor, pursuant to which Debt Securities were issued.

–       Indenture, dated as of January 11, 2011, among CCO Holdings, LLC and CCO Capital Corp, as Co-Issuers, Charter Communications Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 7.00% Senior Notes due 2019 were issued.

–       First Supplemental Indenture, dated as of November 5, 2014 to November 5, 2014 Indenture, among CCOH Safari, LLC., as Issuer, and Charter Communications, Inc., as Guarantor, pursuant to which the 5.500% Senior Notes due 2022 were issued.

–       Indenture, dated as of December 17, 2010, among CDW LLC and CDW Finance Corporation, as Co-Issuers, CDW Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 8 % Senior Secured Notes due 2018 were issued.

–       Supplemental Indenture, dated as of May 6, 2011 toMay 6, 2011 Indenture, among Celanese US Holdings LLC, as Issuer, Celanese Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5 7/8% Senior Notes due 2011 were issued.

v

–       Supplemental Indenture, dated as of November 13, 2012 to May 6, 2011 Indenture, among Celanese US Holdings LLC, as Issuer, Celanese Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 4.625% Senior Notes due 2022 were issued.

–       Indenture, dated as of May 6, 2011, among Celanese US Holdings LLC, as Issuer, and Celanese Corporation, as Parent Guarantor, pursuant to which Senior Debt Securities were issued.

–       Indenture, dated as of September 24, 2010, among Celanese US Holdings, LLC, as Issuer, Celanese Corporation, as the Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 6.8 % Senior Notes due 2018 were issued.

–       Indenture, dated as of November 4, 2011, among Chiron Merger Sub, Inc., as Initial Issuer, Kinetic Concepts, Inc. and KCI USA, Inc., as Joint and Several Issuers, Chiron Guernsey LP Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 10.5% Second Lien Senior Secured Notes due 2018 were issued.

–       Indenture, dated as of November 4, 2011, among Chiron Merger Sub., Inc., as Initial Issuer, Kinetic Concepts, Inc. and KCI USA, Inc., as Joint and Several Issuers, Chiron Guernsey LP, Inc., and Subsidiary Guarantors, pursuant to which the 12.5% Senior Notes due 2019 were issued.

–       Indenture, filed as of September 3, 2010, among Compton Petroleum Finance Corporation, as Issuer, Compton Petroleum Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 10% Senior Mandatory Convertible Notes due 2011 were issued.

–       Indenture, filed as of August 30, 2010, among Compton Petroleum Finance Corporation, as Issuer, Compton Petroleum Finance Corporation, as the Parent Guarantor, Subsidiary Guarantors pursuant to which the 10% Senior Mandatory Convertible Notes due 2017 were issued.

–       Indenture, filed as of October 8, 2010, among Compton Petroleum Finance Corporation, as Issuer, Compton Petroleum Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 10 % Senior Mandatory Convertible Notes due 9/2017 were issued.

–       Indenture, dated as of September 16, 2011, among Cubesmart L.P., as Issuer, Cubesmart, as Parent Guarantor, and Subsidiary Guarantor, pursuant to which Debt Securities were issued.

–       Indenture, dated as of September 10, 2012, among Directv Holdings LLC and Directv Financing Co., as Co-Issuers, Directv, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Securities were issued.

–   Indenture, dated as of September 14, 2012, among Directv Holdings LLC and Directv Financing Co., as Co-Issuers, Directv, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Unsecured Debt Securities were issued.

–   Indenture, dated as of March 8, 2012 among Directv Holdings LLC and Directv Financing Co., as Co-Issuers, Directv, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 2.400% Senior Notes due 2017, the 3.80% Senior Notes due 2011, and the 5.150% Senior Notes due 2014 were issued.

–   Indenture, dated as of May 18, 2011, among Dycom Investments, Inc., as Issuer, and Dycom Industries, Inc., as Parent Guarantor, pursuant to which Debt Securities were issued.

–   Indenture, dated as of May 22, 2009, among El Pollo Loco Inc., as Issuer, EPL Intermediate, Inc., as Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 11 3/4% Senior Secured Notes due 2012 were issued.

–   Supplemental Indenture, dated as of October 22, 2013 to May 31, 2011 Indenture, among Exopack Holding Corp., as the Company, Exopack Intermediate Holdings S Ar. L., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 10% Senior Notes due 2018 were issued.

–   Indenture, dated as of May 31, 2011, among Exopack Holding Corp., as the Company, and Subsidiary Guarantors, pursuant to which the 10% Senior Notes due 2018 were issued.

–   Indenture, dated as of January 15, 2013, among Far East Energy (Bermuda), Ltd., as the Company, Far East Energy Corporation, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5% Senior Secured Notes due 2016 were issued.

–   Indenture, dated as of May 21, 2013, among Freescale Semiconductor, as Issuer, Freescale Semiconductor Holdings, Ltd., as Parent, Holdings II, Holdings II, Holdings IV, Holdings V, as Parent Guarantors, and Subsidiary Guarantors, pursuant to which the 5.00% Senior Secured Notes due 2021 were issued,

–   Indenture, dated as of November 1, 2013, among Freescale Semiconductor, as Issuer, Freescale Semiconductor Holdings, Ltd., as the Parent, Holdings II, Holdings II, Holdings IV, Holdings V, as Parent Guarantors, Subsidiary Guarantors, pursuant to which the 6.000% Senior Secured notes Due 2022 were issued.

–   Indenture, dated as of June 10, 2011, among Freescale Semiconductor Inc., as Issuer, Holdings I, Holdings II, Holdings II, Holdings IV, Holdings V, as Parent Guarantors, and Subsidiary Guarantors, pursuant to which the 8.05% Senior Notes due 2020 were issued.

–   Indenture, dated as of April 13, 2010, among Freescale Semiconductor, Inc., as Issuer, Freescale Semiconductor Holding I, Ltd, Freescale Semiconductor Holding II, Ltd, Freescale Semiconductor Holding III, Ltd, Freescale Semiconductor Holding IV, Ltd,

Freescale Semiconductor Holding V, Ltd , as Parent Guarantors, and Subsidiary Guarantors, pursuant to which the 9 1/4% Senior Secured Notes due 2018 were issued.

–      Indenture, dated as of February 19, 2010, among Freescale Semiconductor, Inc., as Issuer, Freescale Semiconductor Holding I, Ltd, Freescale Semiconductor Holding II, Ltd, Freescale Semiconductor Holding III, Ltd, Freescale Semiconductor Holding IV, Ltd, Freescale Semiconductor Holding V, Ltd, as Parent Guarantors, and Subsidiary Guarantors, pursuant to which the 10 1/8% Senior Secured Notes due 2018 were issued.

–      Indenture, dated as of October 30, 2013, among GLP Capital, L.P and GLP Financing II, Inc., as Co-Issuers, Gaming And Leisure Properties, Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Senior Notes were issued.

–      Indenture, dated as of April 20, 2011, among Goodyear Dunlop Tires Europe B.V., as Issuer, Goodyear Tire and Rubber Company, as the Company and Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 6 3/4% Senior Notes due 2019 were issued.

–      Indenture, dated as of November 24, 2009, among Graham Packaging Company, L.P., and GPC Capitol Corp. I, as Issuers, Graham Packing Holdings Company, as the Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 8 1/4% Senior Notes due 2017 were issued.

–      Supplemental Indenture, dated as of April 2, 2013 to September 29, 2010 Indenture, among Graphic Packaging International, Inc., as the Company, Graphic Packaging Holding Company, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 7.875% Senior Notes due 2018 were issued.

–      Indenture, dated as of September 29, 2010, among Graphic Packaging International, Inc., as the Company, Graphic Packaging Holding Company, as Parent Guarantor. and Subsidiary Guarantors, pursuant to which the 7.875% Senior Notes due 2018 were issued.

–      Indenture, dated as of August 01, 2011, among HCA Inc., as Issuer, and Subsidiary Guarantors, pursuant to which the 8.00% Senior Notes due 2018 were issued.

–      Indenture, dated as of April 5, 2013, among Intelsat (Luxembourg) S.A., as Issuer, Intelsat S.A., as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which the 6 3/4% Senior Notes due 2018, the 7 3/4% Senior Notes due 2021, and the 8 1/8% Senior Notes due 2023 were issued.

–      Indenture, dated as of June 5, 2013, among Intelsat Jackson Holdings S.A., as Issuer, Holdings, Intelsat Investment Holdings, Intelsat Holdings, Intelsat Investments, Intelsat Luxembourg, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 5.5% Senior Notes Due 2023 were issued.

–      Indenture, dated as of April 27, 2009, among JBS USA LLC and JBS USA Finance, Inc., as Co-Issuers, JBS S.A., JBS USA Holding, Inc., JBS Hungary Kft. As Parent Guarantor,

and Subsidiary Guarantor, pursuant to which the 11.625 % Senior Notes due 2014 were issued.

–       Indenture, dated as of April 5, 2011, among Kennedy-Wilson Inc., as the Company, Kennedy-Wilson Holdings, Inc., as Parent Guarantor. and Subsidiary Guarantors, pursuant to which the 8.750% Senior Notes due 2019 were issued.

–       Third Supplemental Indenture dated as of December 11, 2011 to January 20, 2011 Indenture, among Laredo Petroleum, Inc., as the Company, and Laredo Petroleum Holdings, Inc., as the new Parent Guarantor, pursuant to which the new Parent Guarantor assumed liability.

–       Indenture, dated as of January 20, 2011, among Laredo Petroleum, Inc., as the Company, Laredo Petroleum, LLC, as the Parent, and Subsidiary Guarantors, pursuant to which the 9 1/2% Senior Notes due 2019 were issued.

–       Indenture, dated as of June 3, 2013, among McMoRan Exploration Co., as the Company, providing for merger and release of Guarantees.

–       Indenture, dated as of November 14, 2007, among McMoRan Exploration Co., as the Company, and Subsidiary Guarantors, pursuant to which the 11.875% Senior Notes due 2014 were issued.

–       Indenture, dated as of November 14, 2007, among McMoRan Exploration Co. as the Company, pursuant to which Securities were issued.

–       Indenture, dated as of August 9, 2013, among MPT Operating Partnership, L.P. (OpCo) [MPT Finance Corporation (Finance Corporation)], as Issuers, Medical Properties Trust, Inc., as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–       Indenture, dated as of October 10, 2013, among MPT Operating Partnership, L.P. (OpCo) MPT Finance Corporation (Finance Corporation)], as Issuers, Medical Properties Trust, Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–       Supplemental Indenture, dated as of October 10, 2013 to October 10, 2013 Indenture, among MPT Operating Partnership, L.P. (OpCo) [MPT Finance Corporation (Finance Corporation)], as Issuers, Medical Properties Trust, Inc., as Parent Guarantor. and Subsidiary Guarantors, pursuant to which the 5.750% Senior Notes due 2020 were issued.

–       Indenture, filed as July 22, 2011, among Niska Gas Storage US, LLC, Niska Gas Storage US Finance Corp., Niska Gas Storage Canada Ulc, Niska Gas Storage Canada Finance Corp., as Issuers, Niska Gas Storage Partner LLC, as Parent Guarantor, pursuant to which Debt Securities were issued.

–        Indenture, dated as of November 8, 2012, among Northern Tier Energy LLC, as Issuer, Northern Tier Finance Corporation Northern Tier Energy LP, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 7.125% Senior Secured Notes due 2020 were issued.

–        Indenture, dated as of March 9, 2011, among Northstar Realty Finance Limited Partnership, as Issuer, Northstar Realty Finance Corp., as Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 7.50% Exchangeable Senior Notes due 2031 were issued.

–        Indenture, dated as of June 12, 2012, among Northstar Realty Finance Limited Partnership, as Issuer, Northstar Realty Finance Corp., as the Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 8.875% Exchangeable Senior Notes due 2032 were issued.

–        Indenture, dated as of June 19, 2013, among Northstar Realty Finance Limited Partnership, as Issuer, Northstar Realty Finance Corp., as Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 5.373% Exchangeable Senior Notes due 22033 were issued.

–        Indenture, dated as of Filed February 27, 2009, among NRP (Operating) LLC, as Issuer, Natural Resource Partners, L.P., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–        Supplemental Indenture, dated as of January 22, 2013 to January 22, 2013 Indenture, among Nustar Logistics, L.P., as Partner, Nustar Energy, L.P., as Parent Guarantor, and Affiliate Guarantor, pursuant to which the 7.625% Fixed-to-Floating Rate Subordinated Notes due 2043 were issued.

–        Indenture, dated as of January 22, 2013, among Nustar Logistics, L.P., as Partner, Nustar Energy, L.P., as Parent Guarantor, and Affiliate Guarantor, pursuant to which Subordinate Debt Securities were issued.

–        Indenture, dated as of June 8, 2011, among Prologis, L.P., as the Company, Prologis, Inc., as Parent Guarantor and General Partner, pursuant to which Senior Debt Securities were issued.

–        Indenture, dated as of July 15, 2009, among Regal Cinemas Corporation, as the Company, and Regal Entertainment Group, as Parent Guarantor, pursuant to which the 8.625 % Senior Notes due 2019 were issued.

–        Indenture, dated as of September 5, 2012, among Rockwood Specialties Group, Inc., as Issuer, Rockwood Holdings, Inc., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 4.625% Senior Notes due 2020 were issued.

x

– Indenture, dated as of May 18, 2012, among Sally Holdings LLC and Sally Capital Inc., as Co-Issuers, and No Parent Guarantor Named Subsidiary Guarantors, pursuant to which the 5.75% Senior Notes due 2022 were issued.

– Indenture, dated as of October 29, 2013, among Sally Holdings LLC and Sally Capital Inc., as Co-Issuers, and Subsidiary Guarantors, pursuant to which the 5.50% Senior Notes due 2023 were issued.

– Indenture, dated as of December 20, 2011, among Sally Holdings, LLC and Sally Capital Inc., as Co-Issuers, and Sally Beauty Holdings, Inc. and Sally Investment Holdings, Inc., as Parent Guarantors, pursuant to which the 6 7/8% Senior Notes due 2019 were issued.

– Second Supplemental Indenture, dated as of May 4, 2012 to December 20, 2011 Indenture, among Sally Holdings, LLC and Sally Capital Inc., as Co-Issuers, and Sally Beauty Holdings, Inc. and Sally Investment Holdings, Inc., as Parent Guarantors, Pursuant to which the 6 7/8% Senior Notes due 2019 were issued.

– Indenture, dated as of November 8, 2011, among Sally Holdings, LLC, as the  Company, Sally Capital Inc., as Co-Issuers, and  Sally Beauty Holdings, Inc. and Sally Investment Holdings, Inc. as the Parent Guarantors, Pursuant to which the 6 7/8% Senior Notes due 2019 were issued.

– Indenture, dated as of November 8, 2011, among Sally Holdings, LLC, as the Company, Sally Capital Inc., as the Co-Issuers, and Sally Beauty Holdings, Inc. and Sally Investment Holdings, Inc., as Parent Guarantors, pursuant to which the 6 7/8% Senior Notes due 2019 were issued.

– Indenture, dated as of November 5, 2013, among Seagate HDD Cayman, as the Company, and Seagate Technology Plc, as Parent Guarantor, pursuant to which the 3.75% Senior Notes due 2018 were issued.

– Indenture, dated as of May 22, 2013, among Seagate HDD Cayman, as the Company, and Seagate Technology Plc, as Parent Guarantor, pursuant to which the 4.75% Senior Notes due 2023 were issued.

– Indenture, dated as of May 18, 2011, among Seagate HDD Cayman, as the Company, Seagate Technology Plc, as Parent Guarantor, pursuant to which the 7.00% Senior Notes due 2021 were issued.

– Indenture, dated as of May 14, 2015, among Seagate HDD Cayman, as Issuer, Seagate Technology Plc, as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which the 4.875% Senior Notes due 2027 were issued.

– Indenture, dated as of September 20, 2006, among Seagate Technology HDD Holdings, as Issuer, and Seagate Technology, as Parent Guarantor, pursuant to which the 6.375% Senior Notes due 2011 and 6.800% Senior Notes due 2016 were issued.

–     Indenture, dated as of June 17, 2013, among Summit Midstream Holdings, LLC, as the Company, Summit Midstream Finance Corp, as Issuer, Summit Midstream Partners, L.P., as the Parent Guarantor, and Subsidiary Guarantors, pursuant to which Initial Notes, Exchange notes and Additional Notes were issued.

–     Third Supplemental Indenture, dated as of October 3, 2011 to August 1, 2011 Indenture, among HCA Inc., as Issuer, and Hca Holdings, Inc., as Parent Guarantor, pursuant to which the 8.00% Senior Notes due 2018 were issued.

–     Indenture, dated as of April 8,2015, among TA Mfg Limited, as Issuer, Esterline Technologies Corp., as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 3.625% Senior Notes due 2023 were issued.

–     Indenture, dated as of April 15, 2011, among Taseko Mines Limited, as the Company and Parent Guarantor, and Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–     Indenture, dated as of May 15, 2011, among Taseko Mines Limited, as Issuer and Parent Guarantor, and Gibraltar Mines Ltd. and Aley Corporation, as the Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–     Indenture, dated as of October 26, 2009, among Terra Capital, Inc., as Issuer, Terra Industries, Inc., as the Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 7.75 % Senior Notes due 2019 were issued.

–     Indenture, dated as of April 19, 2011, among Texas Competitive Electric Holdings Company LLC and TCEH Finance Inc., as Co-Issuers, and Energy Future Competitive Holdings Company, as the Parent Guarantor, pursuant to which the 11.5% Senior Secured Notes due 2020 were issued.

–     Indenture, dated as of October 6, 2010, among Texas Competitive Electric Holdings Company LLC, as Issuer, Energy Future Competitive Holdings Company, as the Parent Guarantor, and Subsidiary Guarantors, pursuant to which the Senior Secured Second Lien Notes due 2021 were issued.

–     Supplemental Indenture, dated as of May 11, 2012 to May 11, 2012 Indenture, among Thompson Creek Metals Company, Inc., as the Company, and Future Parent Guarantor, pursuant to which the 12.5% Senior Notes due 2019 were issued.

–     Indenture, dated as of May 11,2012, among Thompson Creek Metals Company, Inc., as the Company, pursuant to which Debt Securities were issued.

–     Indenture, dated as of May 20, 2011, among Thompson Creek Metals Company, Inc., as Issuer, and Parent Guarantor, and Subsidiary Guarantors, pursuant to which the 7.375% Senior Notes due 2018 were issued.

–   Indenture, dated as of November 30, 2011, among Travelport LLC, as the Company, Travelport Limited, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which the Second Priority Senior Secured Notes due 2016 were issued.

–   Indenture, dated as of Filed August 8, 2013, among Trinity Acquisition Plc, as Issuer, Willis Group Holdings Public Limited Company, as Parent Guarantor, and other Guarantors, pursuant to which Unsecured Debentures, Notes or other evidences of indebtedness were issued.

–   Indenture, dated as of August 15, 2013, among Trinity Acquisition Plc, as Issuer, Willis Group Holdings Public Limited Company, as Parent Guarantor, and other Guarantors, pursuant to which Debt Securities were issued.

–   Indenture, dated as of September 16, 2014, among W.R. Grace and Co.-Conn., as Issuer, W.R. Grace and Co., as Parent Guarantor, and Future Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–   Indenture, dated as of November 26, 2013, among Wesco Distribution, Inc., as Issuer, and Wesco International, Inc., as Parent Guarantor, pursuant to which the 5.375% Senior Notes due 2012 were issued.

–   Indenture, filed as of October 29, 2012 , among Willis North America, Inc., as Issuer, Willis Group Holdings Public Limited Company, as Parent Guarantor, and other Guarantors, pursuant to which Unsecured Debentures, Notes or other evidences of indebtedness were issued.

–   Indenture, filed as of June 3, 2009, among WPP Finance (UK), as Issuer, WPP Plc, as Parent Guarantor, and Subsidiary Guarantors, pursuant to which Debt Securities were issued.

–   Indenture, dated as of June 30, 2009, among XM Satellite Radio Inc., as the Company, XM Satellite Radio Holdings, Inc., as the Parent Guarantor, and Subsidiary Guarantor, pursuant to which the 11.25 % Senior Secured Notes due 2013 were issued.