USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/5/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

BOKF, N.A., solely in its capacity as successor
Indenture Trustee for the 12.75% Second-Priority
Senior Secured Notes due 2018,

        Plaintiff,

        -against-

CAESARS ENTERTAINMENT CORPORATION,

        Defendant.

------------------------------------------------------------- X

**MEMORANDUM**
**OPINION**
**AND ORDER**

15-cv-1561 (SAS)

UMB BANK, N.A., solely in its capacity as Indenture
Trustee under those certain indentures, dated as of
June 10, 2009, governing Caesars Entertainment
Operating Company, Inc.'s 11.25% Notes due 2017;
dated as of February 14, 2012, governing Caesars
Entertainment Operating Company, Inc.'s 8.5%
Senior Secured Notes due 2020; dated August 22,
2012, governing Caesars Entertainment Operating
Company, Inc.'s 9% Senior Secured Notes due 2020;
dated February 15, 2013, governing Caesars
Entertainment Operating Company, Inc.'s 9%
Senior Secured Notes due 2020,

        Plaintiff,

        -against-

CAESARS ENTERTAINMENT CORPORATION,

        Defendant.

------------------------------------------------------------- X

15-cv-4634 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

BOKF, N.A. and UMB Bank, N.A., as successor indenture trustee and indenture trustee respectively, bring these actions to enforce Caesars Entertainment Corporation's ("CEC") guarantees of roughly seven billion dollars in first and second lien notes issued by Caesars Entertainment Operating Company ("CEOC"). Plaintiffs assert that CEC's guarantees became due and payable upon CEOC's filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of Illinois Bankruptcy Court on January 15, 2015. Plaintiffs now move for partial summary judgment on their contract claims based on the terms of the Indentures governing the notes. For the following reasons, plaintiffs' motions are DENIED.

Familiarity with prior rulings in these and the related "MeehanCombs" cases pending before this Court is assumed.[1] Section 12.02(c) of each Indenture contains substantively identical guarantee release provisions. In relevant part, section 12.02(c) provides that CEC

> shall be deemed to be released from all obligations . . . upon:
> (i) [CEOC] ceasing to be a Wholly Owned Subsidiary of [CEC];

---

[1] *See generally MeehanCombs Global Credit Opportunities Master Fund, LP v. Caesars Entm't Corp.*, No. 14-cv-7091, 2015 WL 9478240 (S.D.N.Y. Dec. 29, 2015); *BOKF, N.A. v. Caesars Entm't Corp.*, No. 15-cv-1561, 2015 WL 5076785 (S.D.N.Y. Aug. 27, 2015).

>> (ii) [CEOC's] transfer of all or substantially all of its assets to, or merger with, an entity that is not a Wholly Owned Subsidiary of [CEC] in accordance with Section 5.01 and such transferee entity assumes the [CEOC's] obligations under this Indenture; and
>
>> (iii) [CEOC's] exercise of its legal defeasance option or covenant defeasance option under Article VIII or if [CEOC's] obligations under this Indenture are discharged in accordance with the terms of this Indenture.
>
> In addition, the Parent Guarantee will be automatically released upon the election of [CEOC] and Notice to the Trustee if the guarantee by [CEC] of . . . the ["Existing Notes," including the MeehanCombs] Notes . . . has been released or discharged.

CEC contends that it is not liable on the guarantees because they were released under section 12.02(c) of the Indentures as a result of two independent events that occurred prior to CEOC's bankruptcy. *First*, CEC asserts that section 12.02(c)(i) — the wholly-owned subsidiary provision — was satisfied in May 2014 by CEC's sale of 5% of CEOC's stock and/or the contribution of an additional 6% of CEOC's stock to an employee compensation fund (the "May Transactions"). *Second*, CEC asserts that the stand-alone provision of section 12.02(c) — the provision concerning the release of the guarantees on the Existing Notes — was satisfied in August 2014 by a transaction that purported to release the guarantee on the MeehanCombs Notes (the "August Transaction").

Plaintiffs focus on establishing that the Indentures "unambiguously require[] the occurrence of three separate conditions enumerated in subsections

3

12.02(c)(i), (ii), and (iii) before the Parent Guarantee[s] can be automatically terminated or released."[2] They do not, however, attempt to establish that the August Transaction was invalid. This may be — in part — because plaintiffs presumed that I would grant MeehanCombs' earlier-filed motion for summary judgment, thereby holding that the August Transaction was invalid. Thus, plaintiffs argue that

> Together, the grant of [MeehanCombs'] Motion[] and a grant of this Motion would be case dispositive for the Trustees. If the Court determines on this Motion that Section 12.02(c)(i), (ii), and (iii) must be read in the conjunctive, then CEC cannot rely on these romanette numbered provisions to effectuate the termination of its Parent Guarantee because it is undisputed that the requirements of 12.02(c)(ii) and 12.02(c)(iii) have not been met. As a result, CEC's only basis for releasing its Parent Guarantee of the Notes would be the alleged release of CEC's guarantee of all of the Existing Notes under the last paragraph of 12.02. However, a grant of [MeehanCombs'] Motion[] would mean that CEC did not effectively release its guarantee of at least [the MeehanCombs Notes] . . . and that the conditions of the last paragraph of Section 12.02 were not satisfied, leaving CEC with no remaining bases to avoid its continuing obligations pursuant to the Parent Guarantee.[3]

After the instant motion was fully submitted, I denied relief on MeehanCombs' motion without reaching the issue of whether the August

---

[2] Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment, at 5. Plaintiffs also point out that CEC admits that subsections (ii) and (iii) were not satisfied. *See id.* at 6.

[3] *Id.* at 5.

4

Transaction was valid. I held that under the terms of the MeehanCombs indentures — which, among other things, contain a different definition of "wholly owned" than in the Indentures at issue here — there was a genuine dispute of material fact as to whether the May Transactions resulted in CEOC ceasing to be a wholly owned subsidiary of CEC.[4]

Thus, to prevail on their motions, plaintiffs must demonstrate that (1) the Indentures unambiguously require that section 12.02(c)(i), (ii), and (iii) be read in the conjunctive, and also that (2) CEOC continued to be a wholly owned subsidiary of CEC within the meaning of the MeehanCombs indentures, and (3) that the August Transaction did not validly remove the guarantee of the MeehanCombs Notes (and thus that the Existing Notes provision was not satisfied). While plaintiffs argue that the Indentures require that the three subsections of section 12.02(c) must all be satisfied, they made no attempt to argue that CEOC continued to be a wholly owned subsidiary of CEC or that the August Transaction was invalid. Because I have now concluded that there is a disputed issue of fact with respect to whether CEOC continued to be a wholly owned subsidiary of CEC after the May Transactions, plaintiffs cannot prevail here even if I were to agree that the three subsections of section 12.02 (c) must be read

---

[4] *See MeehanCombs Global Credit Opportunities Master Fund, LP*, 2015 WL 9478240, at *9-10.

conjunctively. Accordingly, I decline to reach that issue as it is unnecessary to the resolution of the pending motions.[5]

For the foregoing reasons, plaintiffs' motions for partial summary judgment are DENIED. The Clerk of Court is directed to close these motions (Docket No. 60 in 15-cv-1561 and Docket No. 66 in 15-cv-4634).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        January 5, 2016

---

[5] I note, however, that when interpreting a contract, "[w]ords and phrases are to be given their plain and ordinary meaning, and New York courts will commonly refer to dictionary definitions in order to determine that meaning." *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014). The dictionary definition of "and" is conjunctive. *See* American Heritage Dictionary (5th ed. 2015) (defining "and" in relevant part to mean "[t]ogether with or along with; in addition to; as well as"). New York courts also interpret "and" as conjunctive. *See Sasson v. TLG Acquisition LLC*, 127 A.D. 3d 480, 481 (1st Dep't 2015); *Progressive Ne. Ins. Co. v. State Farm Ins. Cos.*, 81 A.D.3d 1376 (4th Dep't 2011); *Maxwell v. State Farm Mut. Auto Ins. Co.*, 92 A.D.2d 1049, 1050 (3d Dep't 1983). That said, whether "and" is a conjunctive or disjunctive term — and similarly whether "or" is conjunctive or disjunctive — may well depend on the context and usage in a particular contract. *See Major Oldsmobile, Inc. v. General Motors Corp.*, No. 93 Civ. 2189, 1995 WL 326475, at *6 (S.D.N.Y. May 31, 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996) (holding that "[i]t is well established that "[t]he word 'or' is frequently construed to mean 'and' and vice versa, in order to carry out the evident intent of the parties.") (collecting cases).

6

- Appearances -

**For Plaintiff BOKF, N.A.:**

Andrew I. Silfen, Esq.
Mark B. Joachim, Esq.
Michael S. Cryan, Esq.
Arent Fox LLP
1675 Broadway
New York, NY 10019
(212) 484-3929

Ralph A. Taylor, Jr., Esq.
Jackson D. Toof, Esq.
Arent Fox LLP
1717 K Street, N.W.
Washington, D.C. 20006
(202) 857-6000

**For Plaintiff UMB Bank, N.A.:**

David A. Chrichlow, Esq.
Craig A. Barbarosh, Esq.
Karen B. Dine, Esq.
Rebecca Kinburn, Esq.
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
(212)-940-8800

**For Defendant Caesars Entertainment Corporation:**

Lewis R. Clayton, Esq.
Michael E. Gertzman, Esq.
Jonathan H. Hurwitz, Esq.
Ankush Khardori, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas

7

New York, NY 10019
(212) 373-3000

Eric Seiler, Esq.
Philippe Adler, Esq.
Jason C. Rubinstein, Esq.
Christopher M. Colorado, Esq.
Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, NY 10036
(212) 833-1100