

PHILIPPE ADLER
padler@fklaw.com
212.833.1119

January 27, 2016

**BY ECF AND HAND DELIVERY**

Hon. Shira A. Scheindlin
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:    *BOKF, N.A.* v. *Caesars Entertainment Corporation*, 15-cv-1561

             *UMB Bank, N.A.* v. *Caesars Entertainment Corporation*, 15-cv-4634

             *MeehanCombs Global Credit Opp'ties Master Fund, LP* v. *Caesars Entertainment Corp.*, 14-cv-07091

Dear Judge Scheindlin:

      We represent defendant Caesars Entertainment Corporation ("CEC"), and I write pursuant to Rule IV.C of the Court's Individual Rules and Procedures to request a pre-motion conference on a motion to strike two improper purported "rebuttal" expert reports served by plaintiffs on January 22, 2016 and to preclude these experts from testifying at the trials in each of these actions.  While characterized as rebuttal, these reports—which in fact consist principally, if not exclusively, of legal argument—do not address or rebut any opinion offered by any of CEC's experts, and instead offer opinions about subjects on which no expert on either side has previously opined.  Plaintiffs' submission of these reports violates Fed. R. Civ. P. 26(a)(2)(D) and this Court's scheduling Orders, which required plaintiffs to disclose initial expert reports by December 18, 2015, and would unfairly deprive CEC of the ability to proffer rebuttal expert testimony.  As the courts have repeatedly held, such improper rebuttal reports should be stricken.  CEC requests permission to make this motion immediately—in advance of expert discovery and of any motions *in limine*—so as to avoid the substantial costs of pursuing discovery from these late-disclosed experts.

      Under the Court's scheduling Orders, initial expert reports were due on December 18, 2015, and rebuttal reports, if any, on January 22, 2016.  The schedule for expert disclosures was initially established by the Amended Scheduling Order dated June 2, 2015 [*BOKF* Dkt. 21; *UMB* Dkt. 34; *MeehanCombs* Dkt. 44], and extended at the parties' joint request at a pretrial conference on November 10, 2015 (11/10/15 Hg. Tr. 24:15-25:3).  As set forth in Fed. R. Civ. P. 26(a)(2)(D)(ii), a rebuttal expert report is one "intended solely to contradict or rebut evidence on the same subject matter identified by another party."  *See Long Term Capital Holdings* v. *United States*, No. 01-CV-1290, 2003 WL 21518555, at *2 (D. Conn. May 15, 2003) ("An expert rebuttal report does exactly what is says:  it rebuts . . . .").

The reports at issue on the proposed motion—by Roberta S. Karmel and Michael W. Phillips, two of plaintiffs' four purported rebuttal experts—offer opinions about the meaning of the term "substantially all" in Rule 1.02 of SEC Regulation S-X, a term employed in the definition of "wholly owned subsidiary" in the indenture at issue in the *MeehanCombs* and *Danner* actions. The reports further opine that Caesars Entertainment Operating Company ("CEOC") remained a "wholly owned subsidiary" within the meaning of the *MeehanCombs* and *Danner* indenture and Regulation S-X following the disposition by CEC of shares of CEOC in May 2014. (Karmel Rpt. at ¶¶ 5-8, 18-20; Phillips Rpt. at 3, 7-12.) Should the reports of Ms. Karmel and Mr. Phillips not be stricken before the deadline for filing motions *in limine*, CEC intends to move to preclude any testimony by them on the ground, among others, that opinions about the interpretation of a federal regulation are not appropriate subjects for expert testimony.

Each of the reports, however, is labelled a rebuttal report, and they purport to rebut opinions that they claim were offered by James Gadsden, one of CEC's experts. (Karmel Rpt. at ¶ 6; Phillips Rpt. at 1. Relevant excerpts from the Karmel, Phillips, and Gadsden reports are attached as Exhibits 1-3 respectively.) As the Court noted in its recent summary judgment ruling in *BOKF* and *UMB*, the question of whether CEOC remained a "wholly owned subsidiary" of CEC under Regulation S-X following the May 2014 transactions is relevant to the indentures at issue in those actions because they each contain an independent provision permitting the release of CEC's guarantee if CEC's guarantee on certain other series of notes was released or discharged. Those include the notes governed by the indenture at issue in *MeehanCombs* and *Danner*, which specifies that CEC's guarantee would be automatically released if CEOC was no longer "wholly owned" by CEC, as that term is defined in Regulation S-X.

Yet neither Mr. Gadsden nor any of CEC's other experts (or, indeed, any of plaintiffs' initial experts) has offered an opinion on the meaning of the term "substantially all" as used in either Regulation S-X or "Wholly Owned Subsidiary" in the *MeehanCombs* and *Danner* indenture, or whether CEOC remained a Wholly Owned Subsidiary under those indentures following the May transactions. (*See* Ex. 3 at ¶¶ 2-7 (summarizing opinions).) While Mr. Gadsden notes in his report that the definition of "Wholly Owned Subsidiary" in the *MeehanCombs* and *Danner* indenture refers to the definition of that term in Regulation S-X, which in turn uses the words "substantially all" (*id*. ¶ 42 & n. 18), his report offers no opinion about the meaning of either term as used in either the *MeehanCombs* and *Danner* indenture or in the regulation. On the contrary, Mr. Gadsden expressly states that he is addressing only the different definition of that term in the *BOKF* and *UMB* indentures, which do not refer to Regulation S-X (*id*. ¶ 38). The report of one of plaintiffs' experts, Mr. Phillips, acknowledges that Mr. Gadsden's report "does not address the application of the term Wholly Owned Subsidiary under the guidance promulgated by the [SEC], the SEC staff, and guidance under [GAAP]." (Ex. 2 at 2.)

Where a purported rebuttal expert goes beyond rebutting the opinions in the initial report of the adversary's expert, the expert's report should be stricken. *See Ebbert* v. *Nassau County*, No. 05-CV-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (striking portion of rebuttal expert report that "is new material and not rebuttal") (collecting cases). *See also Exxon Corp.* v. *Halcon Shipping Co., Ltd.*, 156 F.R.D. 586, 588 (D.N.J. 1994) (striking

purported expert rebuttal report that was not rebuttal, but was "of a direct nature"); *Gilbane Bldg. Co.* v. *Downers Grove Cmty. High Sch. Dist. No. 99*, No. 02-CV-2260, 2005 WL 838679, at *11-12 (N.D. Ill. Apr. 5, 2005) (striking purported rebuttal report that was "much broader" and went "far beyond" the opinions set forth in the affirmative expert report); *Home Design Servs., Inc.* v. *Hibiscus Homes of Fla., Inc.*, No. 03-CV-1860, 2005 WL 2465020 at *5 (M.D. Fla. Oct. 6, 2005) (striking expert report, in part, where the "rebuttal" expert "engage[d] in analysis and offer[ed] conclusions which exceed[ed] what can reasonably be called 'rebuttal evidence'"); *cf. Lidle* v. *Cirrus Design Corp.*, No. 08-CV-1253, 2009 WL 4907201, at *4-5 (S.D.N.Y. Dec. 18, 2009) (Pitman, M.J.) (excluding "rebuttal" expert report where that report was used to introduce new evidence).

Permitting plaintiffs to offer expert testimony on new subjects in the guise of rebuttal reports would violate the Court's scheduling Order, which required plaintiffs to serve their initial experts on December 18, 2015, more than a month ago. *See Int'l Bus. Machs. Corp.* v. *Fasco Indus., Inc.*, No. C-93-20326, 1995 WL 115421, *3 (N.D. Cal. Mar. 15, 1995) (striking improper rebuttal expert reports on the ground that they were served in violation of the Courts' scheduling order regarding expert disclosure). And it would prejudice CEC by precluding it from offering its own rebuttal experts to address those new subjects, as it would have been entitled to do had plaintiffs disclosed the opinions of these experts, as they were required to, in the initial exchange of expert reports.[1]

For the foregoing reasons, CEC respectfully requests that the Court permit it to move on an expedited basis to strike the Karmel and Phillips reports.

Respectfully submitted,

Philippe Adler

Enclosures

cc: All Counsel of Record (via CM/ECF)

---

[1] CEC also has similar concerns about the purported "rebuttal" expert report of Martha E. M. Kopacz—which was also served on behalf of plaintiffs in the *BOKF*, *UMB*, and *MeehanCombs* actions—on the basis that the report likewise goes beyond the scope of proper rebuttal expert testimony. CEC believes the impropriety of this report most significantly impacts the potential testimony at trial in the *MeehanCombs* action because (unlike the plaintiffs in *BOKF* and *UMB*), the *MeehanCombs* plaintiffs did not serve an initial expert report concerning whether the release of CEC's guarantee occurred as part of an out-of-court "reorganization" or "restructuring." Ms. Kopacz purports to address this question under the guise of a rebuttal report even though the expert report on behalf of CEC that she claims to be rebutting did not provide an opinion on this subject. Nevertheless, in the interest of streamlining the issues to be resolved by the Court prior to the upcoming trial in *BOKF* and *UMB*, CEC does not propose to move to strike the Kopacz rebuttal report at this time.