**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOKF, N.A., solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018, | :     Case No. 1:15-cv-01561 (SAS) |
|          **Plaintiff,** | |
| v. | |
| CAESARS ENTERTAINMENT CORPORATION, | |
|          **Defendant.** | |

| | |
|---|---|
| UMB BANK, N.A. solely in its capacity as Indenture Trustee under those certain indentures, dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s 11.25% Notes due 2017; dated as of February 14, 2012, governing Caesars Entertainment Operating Company, Inc.'s 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020; dated February 15, 2013, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020, | :     Case No. 1:15-cv-04634 (SAS) |
|          **Plaintiff,** | |
| v. | |
| CAESARS ENTERTAINMENT CORPORATION, | |
|          **Defendant.** | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION *IN LIMINE* FOR AN ORDER (I) HOLDING THAT SECTIONS 12.02(c)(i), (ii), AND (iii) OF THE INDENTURES ARE UNAMBIGUOUS AS A MATTER OF LAW AND THAT THEY WERE INTENDED TO BE READ CONJUNCTIVELY AS WRITTEN; OR REGARDLESS OF AMBIGUITY, (II) EXCLUDING PAROL EVIDENCE PROFFERED BY CEC WITH RESPECT TO THE MEANING OF THOSE SECTIONS**

# TABLE OF CONTENTS

Page

I. INDENTURE SECTIONS 12.02(c)(i), (ii), AND (iii) ARE UNAMBIGUOUS AS A MATTER OF LAW, WITHOUT THE NEED FOR EXTRINSIC EVIDENCE, AND MUST BE READ CONJUNCTIVELY ("AND") RATHER THAN DISJUNCTIVELY ("OR") .................................................................................. 5

    A. Section 12.02(c) is Unambiguous as a Matter of Law ........................................... 5

    B. Extrinsic Evidence is Inadmissible to Interpret Section 12.02(c) .......................... 8

    C. Well-Settled Law Holds that the Specific Types of Extrinsic Evidence Proffered by CEC are Inadmissible ...................................................................... 9

        1. CEC Has Not and Cannot Introduce Evidence of A Special Meaning of the Term "And" in the Financial Industry ............................. 9

        2. Extrinsic Evidence of "Commercial Reasonableness" of Section 12.02(c) of the Indentures Is Inadmissible to Vary Its Plain Meaning ............................................................................................... 10

II. EVEN IF THE COURT WERE TO FIND THAT THE LANGUAGE OF SECTION 12.02(C)(I), (II), AND (III) IS AMBIGUOUS, EVIDENCE OF SUBJECTIVE INTENT AND OTHER PARTIES' ALLEGED UNDERSTANDING WOULD STILL BE INADMISSIBLE TO RESOLVE THE AMBIGUITY .......................................................................................................... 14

    A. Evidence of Non-Parties' Subjective Understanding of Section 12.02(c)(i), (ii), and (iii) is Inadmissible ................................................................................ 15

    B. Evidence of Uncommunicated Subjective Intent of the Parties is Also Inadmissible ...................................................................................................... 18

    C. CEOC's Acts and Purported Noteholder Understanding are Inadmissible Representations of Parties' Post-Hoc Subjective Interpretation ......................... 19

**Cases**

*In re Allegiance Telecom, Inc.,*
 356 B.R. 93 (Bankr. S.D.N.Y. 2006) .....................................................................13

*Ashwood Capital, Inc. v. OTG Mgmt., Inc.,*
 99 A.D.3d 1, 948 N.Y.S.2d 292 (1st Dep't 2012) .................................................8

*Baum v. Rockland Cmty. Coll.,*
 299 F. Supp. 2d 172 (S.D.N.Y. 2003).............................................................14, 18

*BOKF, N.A. v. Caesars Entm't Corp.,*
 No. 15-cv-1561, 2015 WL 5076785 (S.D.N.Y. Aug. 27, 2015)...................... *passim*

*BOKF, N.A. v. Caesars Entm't Corp.,*
 No. 15-cv-1561, 2016 WL 67728 (S.D.N.Y. Jan. 5, 2016) .................................2, 6

*Breed v. Ins. Co. of N. Am.,*
 46 N.Y.2d 351, 385 N.E.2d 1280 (1978)..............................................................11

*Coan v. State Farm Mut. Auto. Ins. Co.,*
 911 F. Supp. 81 (E.D.N.Y. 1996) ........................................................................6, 7

*Direxion Shares, ETF Trust v. Leveraged Innovations LLC,*
 No. 14 CIV. 1777 KBF, 2014 WL 6469084 (S.D.N.Y. Nov. 18, 2014) ...........14, 17

*Duchow v. New York State Teamsters Conf. Pension & Ret. Fund,*
 691 F.2d 74 (2d Cir. 1982)....................................................................................18

*Faulkner v. Nat'l Geographic Soc'y,*
 452 F. Supp. 2d 369 (S.D.N.Y. 2006), *aff'd sub nom. Ward v. Nat'l
 Geographic Soc'y,* 284 F. App'x 822 (2d Cir. 2008) ......................................16, 18

*Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
 No. 96 CIV. 7874 (RWS), 2002 WL 31106406 (S.D.N.Y. Sept. 20, 2002) ...........13

*Great Earth Int'l Franchising Corp. v. Milks Dev.,*
 311 F. Supp. 2d 419 (S.D.N.Y. 2004).....................................................................4

*Hudson-Port Ewen Assocs., L.P. v. Kuo,*
 165 A.D.2d 301, 566 N.Y.S.2d 774, *aff'd,* 78 N.Y.2d 944, 578 N.E.2d 435
 (1991)......................................................................................................................18

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.,*
 889 F.2d 1274 (2d Cir. 1989).........................................................................6, 8, 9

*Invista B.V. v. E.I. Du Pont De Nemours & Co.*,
    No. 07 CIV. 713 (WHP), 2008 WL 4865044 (S.D.N.Y. Nov. 5, 2008)............................15, 17

*JA Apparel Corp. v. Abboud*,
    682 F. Supp. 2d 294 (S.D.N.Y. 2010)...............................................................14, 19

*Jade Realty LLC v. Citigroup Commercial Mortg. Trust 2005-EMG*,
    20 N.Y.3d 881, 980 N.E.2d 945 (2012)............................................................11, 13

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*,
    424 F.3d 195 (2d Cir. 2005)............................................................................15

*Luce v. United States*,
    469 U.S. 38 (1984)........................................................................................4

*Major Oldsmobile, Inc. v. Gen. Motors Corp.*,
    No. 93 CIV. 2189 (SWK), 1995 WL 326475 (S.D.N.Y. 1995), *aff'd*, 101 F.3d
    684 (2d Cir. 1996)......................................................................................7, 8

*Marin v. Constitution Realty, LLC*,
    128 A.D.3d 505, 11 N.Y.S.3d 550 (1st Dep't 2015) ........................................12

*Maxwell v. State Farm Mut. Auto. Ins. Co.*,
    92 A.D.2d 1049, 461 N.Y.S.2d 541 (3d Dep't 1983) ...............................6, 7, 11

*Murray Walter, Inc. v. Sarkisian Bros., Inc.*,
    183 A.D.2d 140, 589 N.Y.S.2d 613 (3d Dep't 1992) .............................15, 16, 19

*Norman v. United States*,
    56 Fed. Cl. 255 (2003), *aff'd*, 429 F.3d 1081 (Fed. Cir. 2005)...........................4

*Nycal Corp. v. Inoco PLC*,
    988 F. Supp. 296 (S.D.N.Y. 1997), *aff'd*, 166 F.3d 1201 (2d Cir. 1998) ...........14, 16

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996)..............................................................................4

*Quadrant Structured Prods. Co. v. Vertin*,
    23 N.Y.3d 549, 16 N.E.3d 1165 (2014)............................................................6

*Sasson v. TLG Acquisition LLC*,
    127 A.D.3d 480, 9 N.Y.S.3d 2 (1st Dep't 2015) ...........................................7, 14

*SSP Cap. Partners, LLC v. Mandala, LLC*,
    715 F. Supp. 2d 443 (S.D.N.Y. 2009), *aff'd*, 402 F. App'x 572 (2d Cir. 2010).............14

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*,
    1 N.Y.3d 470, 807 N.E.2d 876 (2004)..........................................................8, 11

*Wallace v. 600 Partners Co.*,
    86 N.Y.2d 543, 658 N.E.2d 715 (1995).....................................................8, 10, 11, 12

*Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*,
    112 A.D.3d 78, 973 N.Y.S.2d 187 (1st Dep't 2013) ...................................11, 12, 13

*Wells v. Shearson Lehman/Am. Express, Inc.*,
    72 N.Y.2d 11, 526 N.E.2d 8 (1988).....................................................................14

*Zheng v. City of New York*,
    19 N.Y.3d 556, 973 N.E.2d 711 (2012).................................................................14

## Other Authorities

11 Williston on Contracts § 30:6 (4th ed.)......................................................................12

11 Williston on Contracts § 32 (4th ed.).................................................................10, 11

Plaintiffs in the above-captioned Actions,[1] BOKF, N.A. ("BOKF"), solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018 (the "Second Lien Notes") and UMB Bank, N.A. ("UMB," and together with BOKF, the "Trustees"), solely in its capacity as Indenture Trustee under those certain indentures, dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s ("CEOC's") 11.25% Notes due 2017; dated as of February 14, 2012, governing CEOC's 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing CEOC's 9% Senior Secured Notes due 2020; dated February 15, 2013, governing CEOC's 9% Senior Secured Notes due 2020 (the "First Lien Notes," and together with the Second Lien Notes, the "Notes"), respectfully submit this memorandum of law in support of their motion *in limine* regarding the interpretation of Section 12.02(c) of the indentures governing the Notes (the "Indentures").

## INTRODUCTION

A disputed material issue in these Actions involves whether "and" as used to delineate subsections 12.02(c)(i), (ii), and (iii) of the Indentures means the conjunctive "and," as written, or instead means the disjunctive "or." This issue was previously briefed by the parties in the context of the Trustees' joint motion for partial summary judgment (*BOKF* ECF Nos. 60-63; *UMB* ECF Nos. 66-69). This Court did not reach the issue: Because "I have now concluded that there is a disputed issue of fact with respect to whether CEOC continued be a wholly owned subsidiary of Defendant Caesars Entertainment Corporation ("CEC") after the May Transactions, plaintiffs cannot prevail here [on their partial summary judgment motion] even if I were to agree

---

[1] *BOKF, N.A. v. Caesars Entertainment Corporation*, Case No. 1:15-cv-01561-SAS (the "BOKF Action") and *UMB Bank, N.A. v. Caesars Entertainment Corporation*, Case No. 1:15-cv-04634-SAS (the "UMB Action"), are referred to collectively as the "Actions." For convenience, references to court filings generally will be to those made in the BOKF Action, cited as *BOKF* ECF No. ____. References to any court filings made in the UMB Action are cited as *UMB* ECF No. ___.

that the three subsections of Section 12.02(c) must be read conjunctively." *BOKF, N.A. v. Caesars Entm't Corp.*, No. 15-cv-1561, 2016 WL 67728, at *2 (S.D.N.Y. Jan. 5, 2016).

The meaning of Section 12.02(c) is still unresolved, and a decision on whether or not it is unambiguous affects what evidence, if any, may be presented to the jury at trial with respect to both the meaning and application of Section 12.02(c). Accordingly, the Trustees respectfully submit that the issue is now ripe for determination.

## BACKGROUND

The Trustees contend that "and" means "and," so that CEC must prove that all *three* romanette subsections were satisfied in order to claim that CEC's guarantee of the Notes (the "Parent Guarantee") was released automatically under Section 12.02(c)(i)-(iii). CEC has admitted that two of the romanette subsections were not satisfied. However, CEC contends that "and" means "or" so that the Parent Guarantee was automatically released if any one of the romanette subsections (i) – (iii) was met.

Section 12.02(c) of the Indentures provides for the automatic termination of the Parent Guarantee upon the occurrence of three conditions precedent:

(c)     The Parent Guarantee shall terminate and be of no further force or effect and [CEC] shall be deemed to be released from all obligations under this Article XII upon:

(i) [CEOC] ceasing to be a Wholly Owned Subsidiary of [CEC];

(ii) [CEOC's] transfer of all or substantially all of its assets to, or merger with, an entity that is not a Wholly Owned Subsidiary of [CEC] in accordance with Section 5.01 and such transferee entity assumes [CEOC's] obligations under this Indenture; ***and***

(iii) [CEOC's] exercise of its legal defeasance option or covenant defeasance option under Article VIII or if [CEOC] obligations under this Indenture are discharged in accordance with the terms of this Indenture.

Indentures, Section 12.02(c) (Exs. A-E to the accompanying Declaration of Andrew I. Silfen ("Silfen Decl. I")) (emphasis added).

The Trustees contend that Section 12.02(c)(i)-(iii) is unambiguous and must as a matter of law be construed as written, without resort to any extrinsic evidence. *See generally* Mem. in Supp. of Pls.' Mot. for Partial Sum. J., November 20, 2015, *BOKF* ECF No. 62 ("Pls.' Mot. Sum. J."); Pls. Reply Mem. of Law in Further Supp. of Mot. for Partial Sum. J., December 11, 2015, *BOKF* ECF No. 71 ("Pls.' Reply").

In its December 4, 2015 opposition to BOKF's November motion for partial summary judgment, CEC relied on extrinsic evidence to support its disjunctive interpretation of Sections 12.01(c)(i)-(iii). *See* CEC's Mem. in Opp. to Pls.' Mots. for Partial Sum. J., December 4, 2015, *BOKF* ECF No. 64 ("CEC Opp."), at 2, 6-7, 9-10, 13, 18-19. CEC's evidentiary proffers on this issue include the following:

- Deposition testimony of William J. Miller, an attorney who represented the financial institutions that participated in the structuring of the Note offerings, that he understood the provision to be read disjunctively (Transcript of Sept. 28, 2015 Deposition of William Miller ("Miller Tr.") at 25:6-38:23; 58:13-68:20; 74:5-78:12; 80:13-81:5; 115:21-120:20 (Silfen Decl. I, Ex. F));

- Declaration of David B. Sambur, a partner of an affiliate of Apollo Global Management LLC, regarding the purpose of the provision and purported commercial reasonableness of a disjunctive construction (Declaration of David Sambur of July 24, 2015 ("Sambur Decl. I"), *BOKF* ECF No. 40, ¶¶ 9-10; Declaration of David Sambur of December 4, 2015 ("Sambur Decl. II"), *BOKF* ECF No. 66, ¶¶ 4-6);

- Evidence of analysts' and market participants' understandings of the effect of Section 12.02(c) of the Indentures (Sambur Decl. I, *BOKF* ECF Nos. 40 & 45, ¶ 10 & Exs. A-D; Declaration of Eric Seiler of December 4, 2015 ("Seiler Decl."), *BOKF* ECF Nos. 65, 65-4, & 70, at Ex. D); and

- Evidence that CEOC did not file its own audited financial statements until after it believed the Parent Guarantee to have been released (Sambur Decl. I, ECF No. 40, ¶¶ 9, 15).

The Trustees anticipate that CEC will seek to introduce this and other similar extrinsic evidence at trial to advocate for its interpretation of Section 12.02(c). But *no* evidence outside of

-3-

the Indentures' four corners should be considered here because the provision unambiguously requires all three conditions to be met before the Parent Guarantee is released. Moreover, even if the Court were to find that Sections 12.02(c)(i)-(iii) are ambiguous, the type of evidence CEC seeks to introduce is inadmissible.

The Trustees seek an order from this Court settling the issue that "and" means "and" without reference to any extrinsic evidence. Alternatively, the Trustees ask that CEC be prevented from introducing at trial the extrinsic evidence outlined above or other similar extrinsic evidence regardless of any ambiguity because this evidence represents merely CEC's and others' post-hoc, subjective interpretations of the Parent Guarantee.[2]

## ARGUMENT

Motions *in limine* allow the Court to rule "in advance of trial on the admissibility and relevance of certain forecasted evidence." *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (quoting *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001)). This allows the Court to make evidentiary rulings "without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Norman v. United States*, 56 Fed. Cl. 255, 267 (2003), *aff'd*, 429 F.3d 1081 (Fed. Cir. 2005). By this Motion, the Trustees seek to avoid the unnecessary delay caused by disputes over the introduction or exclusion of evidence at trial relating to the interpretation of Section 12.02(c) of the Indentures. The evidence that CEC proffers consists of evidence outside of the four corners of the document and amounts only to the

---

[2] The Trustees also expect that CEC will rely on the purported expert testimony of James Gadsden, Jeremy Reifsnyder, and Robert Grien in support of its interpretation of the Indentures. To the extent the Court rules that the Indentures are unambiguous such that all extrinsic evidence must be excluded, the Trustees request that this expert testimony also be excluded. The Trustees have not, however, briefed, and explicitly reserve their rights to file *Daubert* motions to exclude all or any portion of the testimony of these purported experts.

subjective interpretation of the Parent Guarantee by parties and nonparties to the Indentures. Accordingly, the Trustees seek an order from the Court declaring now that the Parent Guarantee is unambiguous and the "and" at the end of Section 12.02(c)(ii) means the conjunctive "and." The Court can render such an order without resort to consideration of any extrinsic evidence. Alternatively, the parol evidence CEC proffers in support of its interpretation is inadmissible because it consists of only uncommunicated, subjective, and self-serving post-hoc interpretations that fail to shed light on the parties' intent *at the time* the Indentures were executed. Such evidence is inadmissible regardless of the Indentures' ambiguity and should be excluded.

I.  **INDENTURE SECTIONS 12.02(c)(i), (ii), AND (iii) ARE UNAMBIGUOUS AS A MATTER OF LAW, WITHOUT THE NEED FOR EXTRINSIC EVIDENCE, AND MUST BE READ CONJUNCTIVELY ("AND") RATHER THAN DISJUNCTIVELY ("OR").**

The Trustees request that this Court enter an order *in limine* holding that Section 12.02(c) is unambiguous. Section 12.02(c) requires the occurrence of all three separate conditions in subsections 12.02(c)(i), (ii), and (iii) before the Parent Guarantee can be automatically terminated or released. This interpretation is mandated by the Section's plain language and the use of the conjunctive "and." This interpretation does not require or permit introduction of any extrinsic evidence. Moreover, because CEC admits – as it must – that two of these three required conditions have not been satisfied, a ruling that "and" means "and" in subsections 12.02(c) necessarily means that there was no automatic release of the Parent Guarantee under the romanette subsections of Section 12.02(c).

A.  **Section 12.02(c) is Unambiguous as a Matter of Law.**

"A trust indenture is a contract, and under New York law '[i]nterpretation of indenture provisions is a matter of basic contract law.'" *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549, 559, 16 N.E.3d 1165, 1172 (2014). As this Court observed:

> The court's function in interpreting a contract is to apply the meaning intended by the parties, as derived from the language of the contract in question. [T]he best evidence of what parties to a written agreement intend is what they say in their writing. *Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.*

*BOKF, N.A. v. Caesars Entm't Corp.*, No. 15-cv-1561, 2015 WL 5076785, at *4 (S.D.N.Y. Aug. 27, 2015) (emphasis added) (footnote omitted); *see also Maxwell v. State Farm Mut. Auto. Ins. Co.*, 92 A.D.2d 1049, 1050, 461 N.Y.S.2d 541, 543 (3d Dep't 1983) ("Written instruments are to be construed by the courts," and the courts "must determine 'what is the intention of the parties as derived from the language employed'") (citing 4 Williston, Contracts [3d ed.], § 600, p. 280)).

"The question of whether a written contract is ambiguous is a question of law for the court." *BOKF, N.A.*, 2015 WL 5076785, at *4. "Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Id.* (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)); *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). If the terms of the Indenture are unambiguous, extrinsic evidence cannot be used to "add to or vary the writing." *See BOKF, NA.*, 2015 WL 5076785, at *4.

"A long and well-established rule of construction provides that words are to be given their ordinary meaning." *Maxwell*, 92 A.D.2d at 1050, 461 N.Y.S.2d at 543. Courts in New York "commonly refer to dictionary definitions" to determine plain and ordinary meaning. *BOKF, N.A.*, 2016 WL 67728, at * 2 n.5 (citing *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.*, 993 F. Supp. 2d 379, 390 (S.D.N.Y. 2014)). The ordinary meaning of "and" is conjunctive. *Id.* (citing *American Heritage Dictionary* (5th ed. 2015)); *see also Coan v. State Farm Mut. Auto. Ins. Co.*, 911 F. Supp. 81, 85 (E.D.N.Y. 1996); *Sasson v. TLG Acquisition LLC,* 127 A.D.3d 480, 481, 9 N.Y.S.3d 2 (1st Dep't 2015); *Maxwell*, 92 A.D.2d at 1050, 461 N.Y.S.2d at 543.

Thus, the plain and unambiguous meaning of a provision that joins a number of termination conditions with the word "and" is that the termination is not triggered unless *all* termination conditions are satisfied. *Maxwell*, 92 A.D.2d at 1050, 461 N.Y.S.2d at 543 (finding "as totally devoid of merit" defendant's contention that only one of three conditions delimited by an "and" must be satisfied). *See also Coan*, 911 F. Supp. at 85 (provisions "broken down into three subdivisions and stated in the conjunctive, as demonstrated by use of the word 'and' connecting the second and third subdivisions" must all be met); *Sasson,* 127 A.D.3d at 481, 9 N.Y.S.3d at 1 (definition of "Permitted Investors" was "in the conjunctive, unambiguous, and not subject to any rule of construction in the relevant documents or to any special commercially reasonable interpretation. It plainly required all three of those investors to take over the entity's board for there to be no 'Change of Control.'").

These well-settled rules of contract interpretation inescapably establish that "and," as used at the end of Section 12.02(c)(ii) of the Indentures, is conjunctive, and that all three termination conditions listed in that section must be satisfied in order to terminate or release the Parent Guarantee. As with the conditions separated by "and" in *Maxwell*, *Coan*, and *Sasson*, the use of the conjunctive to delineate the termination conditions in Section 12.02(c)(i), (ii), and (iii) is only susceptible of one reasonable interpretation and is, therefore, unambiguous.[3] The word

---

[3] CEC has not identified any precedent that interprets the term "and" disjunctively where, as here, the term is used in a list of termination conditions. *See* Pls.' Reply, *BOKF* ECF No. 71, at 3-4 (incorporated here by reference). The only case cited in CEC's Opposition to BOKF and UMB's partial motion for summary judgment that contains a list of conditions that would trigger an event is *Major Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 93 CIV. 2189 (SWK), 1995 WL 326475, at *3 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996). There, the relevant provision allowed the termination of an agreement, triggered by the "failure to conduct," *i.e.*, "not conducting," ***both*** "sales and service," such that the negation properly turned "and" into an "or." *Id.* ("[D]ealer is required to perform *both* sales and service operations, with the failure to perform either one constituting a breach of the provision."). Here, Section 12.02(c) contains a list of affirmative acts that must occur prior to the Parent Guarantee being released, each separated by

"and" chosen by the drafters of the Indentures to state their intent should be given its plain and ordinary meaning.

**B.      Extrinsic Evidence is Inadmissible to Interpret Section 12.02(c).**

Because the language in Section 12.02(c) is unambiguous, extrinsic evidence cannot be used to vary this unambiguous meaning. *BOKF, NA.*, 2015 WL 5076785, at *4. It is well settled that "[i]f the terms of a contract are unambiguous, the obligations it imposes are to be determined without reference to extrinsic evidence." *Hunt Ltd.*, 889 F.2d at 1277. "Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing . . . ." *BOKF N.A.*, 2015 WL 5076785, at *4. Rather, courts must "*look solely to the language used by the parties* to discern the contract's meaning." *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475-76, 807 N.E.2d 876, 879-80 (2004) (emphasis added); *Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548, 658 N.E.2d 715, 717 (1995) ("It is axiomatic that a contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed."). "[Courts] apply this rule with even greater force in commercial contracts negotiated at arm's length by sophisticated, counseled businesspeople." *Ashwood Capital, Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 7, 948 N.Y.S.2d 292, 297 (1st Dep't 2012).

As demonstrated above, "and" is plainly and unambiguously conjunctive as used in the context of Section 12.02(c). Indeed, even CEC admits that Section 12.02(c) is unambiguous. *See, e.g.*, CEC Opp., *BOKF* ECF No. 64, at 9, 6 n.2; *see also id.* at 11, 18 (subheading C). Accordingly, there is no basis for the introduction of any extrinsic language.

---

the word "and." The negation of "and" contained in *Major Oldsmobile*, therefore, is inapplicable here.

**C. Well-Settled Law Holds that the Specific Types of Extrinsic Evidence Proffered by CEC are Inadmissible.**

Additionally, the specific types of extrinsic evidence proffered by CEC are inadmissible to vary the Indentures' terms under New York law.

**1. CEC Has Not and Cannot Introduce Evidence of A Special Meaning of the Term "And" in the Financial Industry.**

CEC cannot introduce extrinsic evidence of the subjective meaning of Section 12.02(c) under the guise of custom and usage evidence. While evidence of industry custom or usage may sometimes be used to determine whether a provision is unambiguous, "[a] court may *only* consider evidence of custom and usage where 'parties have used contract terms which are in common use in a business or art and have a definite meaning understood by those who use them, but which convey *no meaning* to those who are not initiated into the mysteries of the craft.'" *BOKF, N.A.*, 2015 WL 5076785, at *8 (emphasis added) (citing *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010)).[4]

CEC has not shown that "and" has some unique and well established meaning in the financial industry. *See BOKF, N.A.*, 2015 WL 5076785, at *8 (refusing to consider CEC's evidence that everyone in the financial industry understood the Parent Guarantee to be meaningless because there were "no specialized terms used in [that] provision that would necessitate looking to extrinsic evidence of custom and usage"). Instead, CEC merely asserts that the custom in the industry compels a meaning of the entire provision that deviates from the plain language. *See* CEC Opp., *BOKF* ECF No. 64, at 6 & n.2, 12-15. Bald assertions that this provision was generally understood in the industry to be read disjunctively (*see, e.g.*, Sambur

---

[4] Moreover, even when admissible, evidence of custom and usage may not be used to add to or vary the writing. *Id.*; *Hunt Ltd.*, 889 F.2d at 1277-78 ("[T]rade custom and usage is not admissible to contradict or qualify" provisions of an unambiguous contract.).

Decl. I, *BOKF* ECF Nos. 40 & 45, ¶ 10 & Exs. A-D) and similar statements cannot be considered to vary the plain meaning of the word "and" here. Indeed, this Court has previously foreclosed CEC from proffering "third-party analyst reports and expert declarations" that the Parent Guarantee, while unambiguous, was understood by all parties as intended merely to facilitate financial reporting obligations, not to provide credit support. *BOKF, N.A.*, 2015 WL 5076785, at *8. Here too, the proffered evidence does not establish some specialized meaning of the word "and" widely used in the industry and is therefore inadmissible to establish ambiguity or vary the plain meaning of the provision.

### 2. Extrinsic Evidence of "Commercial Reasonableness" of Section 12.02(c) of the Indentures Is Inadmissible to Vary Its Plain Meaning.

CEC proffers evidence from Mr. Sambur and others suggesting that interpreting the term "and" conjunctively (as it is normally understood) would be commercially unreasonable. Sambur Decl. II, *BOKF* ECF No. 66, ¶¶ 4-6 ("I believe plaintiffs' construction would lead to commercial unreasonable outcomes."); *see also* CEC Opp., *BOKF* ECF No. 64, at 12-13. But considerations of reasonableness may not be considered in the face of unambiguous language, let alone override its plain meaning.

Rules of judicial construction, including specifically the "commercial reasonableness" rule invoked by CEC, are inapplicable to unambiguous provisions. *Wallace*, 86 N.Y.2d at 545, 658 N.E.2d at 715 (enforcing unambiguous provision as written despite claims that it produced an unreasonable result). As a leading treatise explains, rules of construction can be divided into "primary" and "secondary" rules. 11 Williston on Contracts § 32:1 (4th ed.). Primary rules, such as the "the plain meaning rule," are used regardless of "whether the language of a contract or agreement is ambiguous or unclear since . . . the court must necessarily determine what the parties meant and intended regardless of the clarity with which they expressed themselves." *Id.*

In contrast, secondary rules, such as the "rule favoring a reasonable construction," *id.* § 32:11, "are only used to determine the meaning of" ambiguous language, *id.* § 32:1. This is so because secondary rules indicate which alternative meaning of an ambiguous provision is "preferred" – a choice not presented by unambiguous language. *Id.*; *Breed v. Ins. Co. of N. Am.,* 46 N.Y.2d 351, 355, 385 N.E.2d 1280, 1282 (1978) ("[B]efore the rules governing the construction of ambiguous contracts are triggered, the court must first find ambiguity. . . .").

Moreover, even if a "reasonable construction" rule were applicable to an unambiguous provision – which it is not – it cannot be used to modify the plain meaning of the language used by the parties "under the guise of interpreting the writing." *Vermont Teddy Bear Co.*, 1 N.Y.3d at 475, 807 N.E.2d at 879; *Jade Realty LLC v. Citigroup Commercial Mortg. Trust 2005-EMG*, 20 N.Y.3d 881, 883, 980 N.E.2d 945, 947 (2012) ("[I]t is not a court's function to imply a term to save a defendant from the consequences of an agreement that it drafted."). This is so even where the plain meaning leads to a result that is "novel or unconventional,"[5] contrary to what the party actually intended,[6] or outright "bizarre."[7] "This [C]ourt may not make or vary the contract . . . to accomplish its notions of abstract justice or moral obligation . . . ." *Breed*, 46 N.Y.2d at 355, 385 N.E.2d at 1283.

---

[5] *See Wallace*, 86 N.Y.2d 543, 658 N.E.2d 715 (lease provided for a retroactive appraisal of rent payments made over the course of 32 years); *Jade Realty LLC*, 20 N.Y.3d 881, 980 N.E.2d 945 (note provided for lower prepayment penalty in the first six years than in the years seven through ten).

[6] *See Maxwell*, 92 A.D.2d at 1050, 461 N.Y.S.2d at 543-44 (giving "and" its plain meaning even if the drafters "intended something different" but used the conjunctive "[f]or some inexplicable reason.").

[7] *See Warberg Opportunistic Trading Fund, L.P. v. GeoResources, Inc.*, 112 A.D.3d 78, 81, 973 N.Y.S.2d 187 (1st Dep't 2013) (a provision of a stock warrant prevented another provision from ever having any effect).

Indeed, the only way for CEC to overcome the plain unambiguous meaning of the word "and" would be to demonstrate that Section 12.02(c), applied as written, is "absurd." *See* 11 Williston on Contracts § 30:6 (4th ed.) ("When a contract is unambiguous, the court must . . . unless the result would be an absurdity, give effect to the contract as written . . . without reference to extrinsic facts or aids and without resort to the rules of construction."); *Wallace*, 86 N.Y.2d at 545, 658 N.E.2d at 715 ("resort to judicial construction and extrinsic evidence is unnecessary" absent lack of ambiguity).

However, it is black letter law that extrinsic evidence is inadmissible to establish absurdity of unambiguous provisions. Evidence of absurdity must be found, if at all, within "the four corners of the [agreement]." *Wallace*, 86 N.Y.2d at 548, 658 N.E.2d at 717; *Marin v. Constitution Realty, LLC*, 128 A.D.3d 505, 509, 11 N.Y.S.3d 550, 555 (1st Dep't 2015) (to consider expert opinion that the plain reading would "produce an absurd result . . . . is to admit extrinsic evidence to an admittedly unambiguous contract which is prohibited by long-standing precedent"). Thus, CEC may not introduce extrinsic evidence to override the plain conjunctive meaning of Section 12.02(c).

Moreover, CEC could never establish absurdity because the conjunctive interpretation would not deprive CEOC of all benefits of the Indentures. "[T]he Court of Appeals has set a high bar for declaring a contract absurd." *Warberg Opportunistic Fund, L.P.*, 112 A.D.3d at 84, 973 N.Y.S.2d at 192. Under New York law, absurdity is present only where the plain reading completely deprives a party of all benefits under the agreement. Mere assertions of unreasonableness or departure from the usual commercial practice do not meet the high burden of establishing absurdity. *See Wallace*, 86 N.Y.2d at 547-48, 658 N.E.2d at 717 ("unconventional" retroactive adjustment in rent over the period of 32 years was not absurd

despite "dramatic inconsistencies[,] anomalies," and "fiscal uncertainties"); *Jade Realty LLC*, 20 N.Y.3d at 884, 980 N.E.2d at 947 (lower prepayment penalty in the first six years than during the balance of the loan term was "novel" and "unconventional," but not absurd). A literal reading is not absurd even if it leads to a result unintended by one of the parties. *Jade Realty LLC*, 20 N.Y.3d at 884, 980 N.E.2d at 947; *In re Allegiance Telecom, Inc.*, 356 B.R. 93, 100 (Bankr. S.D.N.Y. 2006) ("the trouble with XO's position [that it would never have taken on unconditional risk of loss] is that this is not what [the agreement] say[s]."). And, it is insufficient that the literal interpretation is not as favorable to its opponent as an alternative one. *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 96 CIV. 7874 (RWS), 2002 WL 31106406, at *7 (S.D.N.Y. Sept. 20, 2002) ("The fact that the 102[%] was not as beneficial to [the defendant] as a figure of 120[%] . . . does not by itself render the provision 'absurd' or 'unreasonable'"). Finally, absurdity does not arise even where the plain reading ensures that provisions of the agreement "never come into effect," "bizarre" as it may seem. *Warberg Opportunistic Fund, L.P.*, 112 A.D.3d at 81, 973 N.Y.S.2d at 190. Accordingly, CEC's self-serving position, CEC Opp., *BOKF* ECF No. 64, at 2, that the conjunctive interpretation is unreasonable because it is more favorable to the Noteholders falls far short of the "absurdity" required to deviate from the plain meaning of Section 12.02(c).

In sum, CEC cannot proffer any evidence of the commercial unreasonableness of applying Section 12.02(c) conjunctively as written. Mr. Sambur's testimony to this point, and similar testimony by others, is therefore inadmissible.

**II. EVEN IF THE COURT WERE TO FIND THAT THE LANGUAGE OF SECTION 12.02(c)(i), (ii), AND (iii) IS AMBIGUOUS, EVIDENCE OF SUBJECTIVE INTENT AND OTHER PARTIES' ALLEGED UNDERSTANDING WOULD STILL BE INADMISSIBLE TO RESOLVE THE AMBIGUITY.**

In New York "extrinsic evidence of subjective intent . . . is inadmissible." *BOKF, N.A.*, *BOKF N.A.*, 2015 WL 5076785, at *8. A court is prohibited from considering the parties' "[u]ncommunicated subjective intent" whether the contract is ambiguous[8] or unambiguous.[9] Only "objective manifestations of intent are deemed relevant." *SSP Cap. Partners, LLC*, 715 F. Supp. 2d at 451 (since record was "devoid of any [admissible] contemporaneous objective extrinsic evidence" court construed ambiguity against the drafter).

All non-expert evidence proffered by CEC in support of undermining the plain reading of Section 12.02(c) falls within this category. The extrinsic evidence includes: (1) testimony concerning the interpretation of the agreement purportedly understood by one of the Indentures' drafters (Mr. Miller); (2) the interpretation of the Indentures purportedly understood by an interested party who claims to have been involved in the issuance of the Notes (Mr. Sambur)

---

[8] *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 303 (S.D.N.Y. 2010); *see also, e.g.*, *Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 302 (S.D.N.Y. 1997) ("evidence of uncommunicated subjective intent [is] irrelevant."), *aff'd*, 166 F.3d 1201 (2d Cir. 1998); *SSP Cap. Partners, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 451 (S.D.N.Y. 2009) (only extrinsic evidence of parties' intent expressed to the other side during negotiations is relevant in construing ambiguous contract provisions), *aff'd*, 402 F. App'x 572 (2d Cir. 2010); *Baum v. Rockland Cmty. Coll.*, 299 F. Supp. 2d 172, 175 n.1 (S.D.N.Y. 2003) (defendants' subjective but unexpressed intentions could never be considered even if the terms of the agreement at issue were found to be ambiguous).

[9] *See, e.g.*, *Zheng v. City of New York*, 19 N.Y.3d 556, 577, 973 N.E.2d 711, 725 (2012) ("One party's subjective or actual intent . . . is of no moment . . . unless the other knows or has reason to know of that intention." (internal citations omitted)); *Wells v. Shearson Lehman/Am. Express, Inc.*, 72 N.Y.2d 11, 24, 526 N.E.2d 8, 15 (1988) (refusing to consider plaintiff's testimony of her own intent in forming the contract where "no manifestation of this alleged intent was made to anyone when the parties entered into the release"); *see also, e.g.*, *Direxion Shares, ETF Trust v. Leveraged Innovations LLC*, No. 14 CIV. 1777 KBF, 2014 WL 6469084, at *7 (S.D.N.Y. Nov. 18, 2014) ("the Court could not properly consider 'uncommunicated subjective intent'"); *Sasson*, 127 A.D.3d at 481, 9 N.Y.S.3d at 4 ("A contract is not rendered ambiguous simply because one of the parties attaches a different, subjective meaning to one of its terms.").

(Sambur Decl. I, *BOKF* ECF No. 40, ¶¶ 9-10); (3) the interpretation of the Indentures purportedly understood by market participants and others in the industry, as evidenced by Mr. Sambur's conversations with underwriters and analysts, and analyst reports issued in 2013 and 2014 (Sambur Decl. I, *BOKF* ECF Nos. 40 & 45, ¶¶ 9-10 & Exs. B, D); (4) the allegation that CEOC believed the Parent Guarantee to have been released before filing its unaudited financial statements (Sambur Decl. I, *BOKF* ECF No. 40, ¶¶ 9, 15); and (5) that some CEOC noteholders in late 2013 and 2014 purportedly believed that the Parent Guarantee would be released (Seiler Decl., *BOKF* ECF Nos. 65, 65-4, & 70, at Ex. D). For the reasons discussed below, this and any similar evidence is inadmissible whether or not the Court determines that Section 12.02(c) is unambiguous.

## A. Evidence of Non-Parties' Subjective Understanding of Section 12.02(c)(i), (ii), and (iii) is Inadmissible.

The proffered evidence from market participants and industry analysts, Mr. Miller, and Mr. Sambur, are inadmissible subjective manifestations of the interpretation of third-parties. Post-hoc statements made by those claiming to have been involved in the contract negotiation process about their interpretation of the agreement are inadmissible "unilateral expressions" of one side's interpretation of the contract. *Invista B.V. v. E.I. Du Pont De Nemours & Co.*, No. 07 CIV. 713 (WHP), 2008 WL 4865044, at *5 (S.D.N.Y. Nov. 5, 2008) (declining to consider testimony from attorneys responsible for negotiating the agreements supporting their contractual interpretation inadmissible).[10] The uncommunicated subjective intent of third-parties to the

---

[10] This rule applies even where one party expressed its interpretation to the opposing side after the contract was entered into. Such evidence is inadmissible because it does not reflect the "parties' mutual intent in entering into their agreement," but rather one side's "postcontractual subjective understanding." *Murray Walter, Inc. v. Sarkisian Bros., Inc.*, 183 A.D.2d 140, 146, 589 N.Y.S.2d 613, 616 (3d Dep't 1992) (letter sent by party's attorney "well after contract formation" communicating interpretation of the agreement inadmissible); *see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 208 n. 10 (2d Cir. 2005) (holding that

agreement, other than those who participated in the negotiation process, is even more problematic, as those statements "say nothing about [the parties'] views at the time the contract[] [was] entered." *Faulkner v. Nat'l Geographic Soc'y*, 452 F. Supp. 2d 369, 379 (S.D.N.Y. 2006), *aff'd sub nom. Ward v. Nat'l Geographic Soc'y*, 284 F. App'x 822 (2d Cir. 2008).

For this reason, the "underst[anding] [of] . . . market participants and underwriters for the Notes . . . that CEC's [Parent] Guarantee could be released unilaterally" is irrelevant to determining the intent of the parties to the Indentures, at the time the Indentures were executed. Sambur Decl. I, *BOKF* ECF No. 40 & 45, ¶ 10 & Exs. B-D; *see also id.* ("Market analysts have acknowledged that the sale of CEOC equity would independently serve to release the [Parent Guarantee]."). CEC's reliance on market reports published in October 2013 and April 2014 is even further attenuated, given the fact that the Indentures were executed as early as June 2009 and as late as February 2013. These reports could not have informed the parties' intent. *See Murray Walter, Inc.*, 183 A.D.2d at 146, 589 N.Y.S.2d at 616 ("postcontractual subjective understandings" are not admissible extrinsic evidence); *Nycal Corp.*, 988 F. Supp. at 302 (the only admissible evidence is testimony "concerning objective expressions of the parties' intent made during the negotiations").

CEC also proffers testimony from Mr. Sambur, a "partner of an affiliate of Apollo Global Management LLC" who purports to have been "involved in the issuance of the . . . Notes, including negotiations with underwriters of the issuances." Sambur Decl. I, *BOKF* ECF No. 40, ¶¶ 1, 9. Mr. Sambur is a third party to the Indentures because he joined the board of directors of

---

lower court improperly relied on extrinsic evidence to interpret an unambiguous term, and that the evidence relied upon—letters exchanged between the parties years after the contract was entered into—was an inadmissible unilateral expression of one party even if the contract were ambiguous).

CEC in November 2010, well after the Indentures were executed. *Id.* ¶ 1.[11] Furthermore, Mr. Sambur has a vested interest in whether CEC is still subject to the Parent Guarantee, and his post-hoc testimony pertaining to the purpose of the Parent Guarantee and the conditions that must be met under Section 12.02(c) before it can be released, *id.* ¶¶ 9-10, is self-serving and sheds no light on what the parties to the Indentures actually intended because nowhere does Mr. Sambur claim to have timely communicated his interpretations to any party to the Indentures. *See id.* ¶¶ 9-10; *see also* Part II.B. below.

CEC's reliance on the testimony of Mr. Miller, a purported drafter of the Indentures who represented non-party financial institutions, is equally misplaced. CEC makes much of the fact that Mr. Miller testified that the use of the word "upon" combined with the conjunctive "and" corroborates *his* understanding that Section 12.02(c) compels a disjunctive reading of the provisions, such that each is alone sufficient to terminate the Parent Guarantee. CEC Opp., *BOKF* ECF No. 64, at 1, 6, 9-10, 13, 18-19 (citing Miller Tr. at 25:6-38:23; 58:13-68:20; 74:5-78:12; 80:13-81:5; 115:21-120:20, contained in Silfen Decl. I, Ex. F)). But whether Section 12.02(c) is deemed to be ambiguous or unambiguous, Mr. Miller's testimony remains inadmissible. Just as the court in *Invista B.V.* declined to entertain evidence from attorneys involved in drafting the agreement at issue regarding their personal interpretation of its contested provisions, here too Mr. Miller's statements reflect only his own "postcontractual subjective understanding" of the Indentures' terms. 2008 WL 4865044, at \*5; *see also Direxion Shares,*

---

[11] Some of the applicable Indentures containing Section 12.02(c) predate Mr. Sambur's involvement with the CEC Board. *See* Complaint, *BOKF* ECF No. 1, ¶¶ 54, 55, 58 (Second Lien Notes at issue were issued pursuant to an Indenture dated April 16, 2010, ); Complaint, *UMB* ECF No. 1, ¶¶ 18-21 (the earliest First Lien Notes were issued pursuant to an Indenture dated as of June 10, 2009, and more First Lien Notes were issued pursuant to a supplemental Indenture dated September 11, 2009; later First Lien Notes were issued on August 22, 2012, and again on February 15, 2013).

*ETF Trust*, 2014 WL 6469084, at *7 (refusing to consider declaration from company president that he was "personally involved in execution" to create an ambiguity because it was "classic" impermissible evidence of uncommunicated subjective intent).[12]

In sum, evidence of market participant's post-hoc interpretation of Section 12.02(c), Mr. Sambur's self-serving statements, and Mr. Miller's personal construction of the Indentures are all uncommunicated, subjective, non-party interpretations and that are inadmissible regardless of the provisions' ambiguity.

### B. Evidence of Uncommunicated Subjective Intent of the Parties is Also Inadmissible.

Even if Mr. Miller and Mr. Sambur could be deemed to be parties to the Indentures, their testimony remains inadmissible because a party's subjective interpretation of the terms of the agreement is not probative to the contract's interpretation unless communicated to the other party at the time of contracting. *See, e.g.*, *Hudson-Port Ewen Assocs., L.P. v. Kuo*, 165 A.D.2d 301, 305, 566 N.Y.S.2d 774, 777 (evidence must show that contract interpretation was communicated to the opposing side "prior to or contemporaneous with the execution of the contract" to be admissible), *aff'd*, 78 N.Y.2d 944, 578 N.E.2d 435 (1991); *see also Baum*, 299 F. Supp. 2d at 175 n.1 (defendants' subjective but unexpressed intent irrelevant); *Faulkner*, 452 F. Supp. 2d at 377-78 (plaintiff's interpretation without evidence that they conveyed that interpretation to the other party inadmissible); *JA Apparel Corp.*, 682 F. Supp. 2d at 303 (court cannot consider parties' uncommunicated intent). Indeed, these "post-hoc statement[]" are "self-serving," and add no value to the Court's interpretation of the parties' shared understanding of Section 12.02(c). *See*

---

[12] In addition, nothing about the plain meaning of the word "upon" suggests that the list it precedes must be read in the disjunctive. *See, e.g.*, *Duchow v. New York State Teamsters Conf. Pension & Ret. Fund*, 691 F.2d 74, 76 (2d Cir. 1982) (interpreting in the conjunctive conditions preceded by "upon" and separated by "and").

*JA Apparel Corp.*, 682 F. Supp. 2d at 306 n.10 (S.D.N.Y. 2010) (declining to consider testimony from parties and "a variety of witnesses as to their subjective interpretations of the contract").

> ### C. CEOC's Acts and Purported Noteholder Understanding are Inadmissible Representations of Parties' Post-Hoc Subjective Interpretation.

CEC proffers two additional categories of evidence in support of its strained interpretation of Section 12.02(c). *First*, CEC seeks to introduce factual evidence that CEOC did not file its own audited financial statements with the SEC until after May 2014, when it allegedly believed that the Parent Guarantee was released, to demonstrate that CEOC acted as if the Parent Guarantee had been released at that time. *See* Sambur Decl. I., *BOKF* ECF No. 40, ¶ 10. But this is at best circumstantial evidence of CEOC's immaterial post-hoc subjective interpretation. *Second*, CEC relies on correspondence by and between Noteholders in 2013 and 2014 about the Parent Guarantee's supposed "release" to suggest that both parties understood that the Parent Guarantee could be released if any one of the three conditions enumerated in section 12.02(c) were met. *See* Ex. D. to Seiler Decl., *BOKF* ECF Nos. 65-4, 70. Even though this evidence purports to demonstrate the interpretation of parties to the agreement, it is still an inadmissible post-contractual, subjective understanding of the provision. *See Murray Walter, Inc.*, 183 A.D.2d at 146, 589 N.Y.S.2d at 616 (fact that party's attorney sent a letter "well after" contract's formation manifesting that party's intent to act as though indemnity provision was still in effect inadmissible to clarify ambiguity because "the communication was sent well after contract formation" and demonstrated "unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement").

In sum, none of the evidence proffered by CEC is admissible in light of the plain meaning of Sections 12.02(c)(i), (ii), and (iii) of the Indentures. Alternatively, even if those sections are deemed ambiguous, the proffered evidence is still inadmissible evidence of the

subjective intent held by non-parties and parties alike and does not shed light on the intent of the parties to the Indentures *at the time* those Indentures were executed. CEC should not be allowed to introduce this parol evidence at trial.

## **CONCLUSION**

For the foregoing reasons, the Trustees respectfully request that the Court grant this motion, and enter an order *in limine* that romanette Sections 12.02(c)(i), (ii), and (iii) are unambiguous as a matter of law and the "and" at the end of Section 12.02(c)(ii) must be read conjunctively as written, so that all three romanette subjections of Section 12.02(c) must be satisfied to automatically release the Parent Guarantee. Alternatively, irrespective of whether the Indentures are ambiguous, the Trustees respectfully request that the Court exclude the introduction of any improper parol evidence offered with respect to the meaning of those sections.

Respectfully submitted,

Dated: New York, New York
      February 5, 2016

*/s/ Andrew I. Silfen*
Andrew I. Silfen, Esq. (AS-1264)
Michael S. Cryan, Esq. (MC-4887)
Mark A. Angelov, Esq. (MA-5291)
ARENT FOX LLP
1675 Broadway
New York, NY 10019-5820
Tel: (212) 484-3900
Fax: (212) 484-3990
Email: andrew.silfen@arentfox.com
      michael.cryan@arentfox.com
      mark.angelov@arentfox.com

-and-

Ralph A. Taylor, Jr., Esq. (*admitted pro hac vice*)
Jackson D. Toof, Esq. (*admitted pro hac vice*)
ARENT FOX LLP
1717 K Street, N.W.
Washington, D.C. 20006
Tel:     (202) 857-6000
Fax:    (202) 857-6395
Email: ralph.taylor@arentfox.com
         jackson.toof@arentfox.com

*Attorneys for BOKF, N.A., solely in its capacity as successor Indenture Trustee under the Indenture governing the Second Lien Notes*


/s/ David A. Crichlow
David A. Crichlow
Craig A. Barbarosh
Karen B. Dine
Rebecca Kinburn
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Tel:     (212) 940-8800
Fax:    (212) 940-8776
Email: craig.barbarosh@kattenlaw.com
         david.crichlow@kattenlaw.com
         karen.dine@kattenlaw.com
         rebecca.kinburn@kattenlaw.com

*Attorneys for Plaintiff UMB Bank, N.A. solely in its capacity as successor Indenture Trustee under the Indentures governing the First Lien Notes*