**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **BOKF, N.A., solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018,** | : : : : : | **Case No. 1:15-cv-01561 (SAS)** |
| **Plaintiff,** | : : | |
| **v.** | : : : | |
| **CAESARS ENTERTAINMENT CORPORATION,** | : : : | |
| **Defendant.** | : : : | |

| | | |
|---|---|---|
| **UMB BANK, N.A. solely in its capacity as Indenture Trustee under those certain indentures, dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s 11.25% Notes due 2017; dated as of February 14, 2012, governing Caesars Entertainment Operating Company, Inc.'s 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020; dated February 15, 2013, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020,** | : : : : : : : : : : : : : : : : : | **Case No. 1:15-cv-04634 (SAS)** |
| **Plaintiff,** | : : | |
| **v.** | : : : | |
| **CAESARS ENTERTAINMENT CORPORATION,** | : : : | |
| **Defendant.** | : : : | |

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFFS' JOINT OMNIBUS MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I. OMNIBUS MOTION IN LIMINE NO. 1: TO EXCLUDE EVIDENCE THAT THE PARENT GUARANTEE WAS NOT INTENDED TO, AND DID NOT, PROVIDE CREDIT SUPPORT ...................................................................... 2

BACKGROUND ................................................................................................ 2

ARGUMENT ...................................................................................................... 4

A. Evidence Intended to Prove Issues Already Settled by this Court is Irrelevant and Prejudicial. ....................................................................... 4

B. CEC Should Be Precluded From Offering Evidence Regarding the Purpose of the Parent Guarantee Because This Court Has Already Determined That It Unambiguously Provides Credit Support. ............................. 6

II. OMNIBUS MOTION IN LIMINE NO. 2: TO EXCLUDE TESTIMONY OR OTHER EVIDENCE ON INFORMATION WITHHELD IN DISCOVERY BY CEC ON THE GROUNDS OF THE ATTORNEY-CLIENT PRIVILEGE .................... 8

III. OMNIBUS MOTION IN LIMINE NO. 3: TO PRECLUDE CEC FROM INTRODUCING EVIDENCE OR ARGUMENT (1) THAT A JUDGMENT WOULD OR COULD LEAD IT TO FILE BANKRUPTCY, (2) THAT SUCH A FILING WOULD PRODUCE NEGATIVE CONSEQUENCES FOR CEC, CEOC, OR OTHERS, OR (3) THAT CEC CANNOT SATISFY ANY JUDGMENT AGAINST IT IN THIS CASE ................................................................. 12

BACKGROUND .............................................................................................. 13

ARGUMENT .................................................................................................... 13

A. Evidence that is Irrelevant and Prejudicial Is Inadmissible. ................................. 13

B. CEC Should be Precluded from Offering Evidence Regarding the Potential Financial or Other Consequences of Incurring Liability in These Actions Because that Evidence is Speculative, Irrelevant, and Prejudicial. ........ 14

IV. OMNIBUS MOTION IN LIMINE NO. 4 – TO EXCLUDE LAY WITNESSES FROM EXPRESSING LEGAL CONCLUSIONS IN THEIR TESTIMONY ................ 16

BACKGROUND .............................................................................................. 17

ARGUMENT .................................................................................................... 17

CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007)............................................................................................. *passim*

*BOKF, N.A. et al. v. Caesars Entertainment Corp.*,
Nos. 15-cv-1561, 15-cv-4634, 2015 WL 5076785 (S.D.N.Y. Aug. 27, 2015)............... *passim*

*Cameron v. City of New York*,
598 F.3d 50 (2d Cir. 2010)...................................................................................................17

*DiLaura v. Power Auth. Of New York*,
982 F.3d 73 (2d Cir. 1992)......................................................................................................4

*Doe v. New York City Dep't of Soc. Servs.*,
709 F.2d 782 (2d Cir. 1983).....................................................................................................4

*Fournier v. Erickson*,
242 F.Supp. 2d 318 (S.D.N.Y. 2003)......................................................................................13

*In re Grand Jury Proceedings*,
219 F.3d 175 (2d Cir. 2000).....................................................................................................8

*Great Earth Intern'l Franchising Corp. v. Milds Develop.*,
311 F.Supp. 2d 419 (S.D.N.Y. 2002)........................................................................................2

*Interspiro, Inc. v. Exeter Twp.*,
No. 08-12878, 2010 WL 890171 (E.D. Mich. Mar. 10, 2010) ...............................................14

*Jacobs v. Alexander*,
No. 05-CV-01625 (SAB), 2015 WL 8010537 (E.D. Cal. Dec. 7, 2015)................................14

*Jaramillo v. United States*,
357 F.Supp. 172 (S.D.N.Y. 1973) ..........................................................................................14

*Maradiaga v. Intermodal Bridge Transp., Inc.*,
889 F.Supp. 2d 551 (N.D. Tex. 2012) ....................................................................................14

*Marx & Co. v. Diners' Club, Inc.*,
550 F.2d 505 (2d Cir. 1977)....................................................................................................18

*Maryland Cas. Co. v. W.R. Grace & Co. – Conn.*,
No. 88 Civ. 2613 (SWK), 1994 WL 592267 (S.D.N.Y. Oct. 26, 1994)....................................4

*Murrell v. Laster*,
    No. 90-4169 (R), 1990 WL 171051 (D. Kan. Oct. 15, 1990)..................................14

*Ndremizara v. Swiss Re America Holding Corp*,
    93 F.Supp. 3d 301, 315 (S.D.N.Y. 2015) ..................................................4

*New York v. Adamowicz*,
    932 F.Supp. 2d 340 (E.D.N.Y. 2013) ..............................................4, 7

*Palmieri v. Defaria*,
    88 F.3d 136 (2d. Cir. 1996)................................................................2

*Rebolledo v. Herr-Voss Corp.*,
    101 F.Supp. 2d 1034 (N.D. Ill. 2000) ..........................................15, 16

*Regeneron Pharmaceuticals, Inc. v. Merus B.V.*,
    No. 14 Civ. 1650 (KBF), 2015 WL 6674818 (S.D.N.Y. Nov. 2, 2015)........................8, 9, 12

*In re Rezulin*,
    309 F.Supp. 2d 531 (S.D.N.Y. 2004)..................................................18

*Stephen v. Hanley*,
    No. 03–CV–6226(KAM)(LB), 2009 WL 1471180 (E.D.N.Y. May 21, 2009) ........................5

*United States v. Bensimon*,
    172 F.3d 1121 (9th Cir. 1999) ..........................................................14

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991)............................................................8

*United States v. Gibson*,
    636 F.2d 761 (D.C. Cir. 1980) ........................................................15

*United States v. Hamilton*,
    No. 10-CV-231-ABJ, 2013 WL 819243 (D. Wyo. Mar. 5, 2013)..........................15

*United States v. Rea*,
    958 F.2d 1206 (2d Cir. 1992)..........................................................18

*United States v. Wells Fargo Bank, N.A.*,
    No. 12-CV-7527 JMF, 2015 WL 6395917 (S.D.N.Y. Oct. 22, 2015)......................8

**Other Authorities**

Fed. R. Evid. 401 .................................................................................................................5, 7

Fed. R. Evid. 402 ........................................................................................................13, 14, 15

Fed. R. Evid. 403 ................................................................................................... *passim*

Fed. R. Evid. 701 ........................................................................................................17, 18

# INTRODUCTION

Plaintiffs in the above-captioned Actions,[1] BOKF, N.A. ("BOKF"), solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018 (the "Second Lien Notes") and UMB Bank, N.A. ("UMB," and together with BOKF, the "Trustees"), solely in its capacity as Indenture Trustee under those certain indentures, dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s ("CEOC's") 11.25% Notes due 2017; dated as of February 14, 2012, governing CEOC's 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing CEOC's 9% Senior Secured Notes due 2020; dated February 15, 2013, governing CEOC's 9% Senior Secured Notes due 2020 (the "First Lien Notes," and together with the Second Lien Notes, the "Notes"), respectfully submit this memorandum of law in support of each of the following separate and independent motions *in limine* (collectively, the "Motions")[2]:

- **Omnibus Motion 1**: Motion *in Limine* to exclude evidence that the Caesars Entertainment Corporation ("CEC") guarantee of the Notes (the "Parent Guarantee"), memorialized in Section 12.01(a) of the indentures governing the Notes (the "Indentures"), was not intended to, and did not, provide credit support;

- **Omnibus Motion 2**: Motion *in Limine* to exclude testimony or other evidence on information withheld in discovery by CEC on the grounds of the attorney-client privilege;

- **Omnibus Motion 3**: Motion *in Limine* to preclude Defendant CEC from introducing evidence or argument (1) that a judgment would or could lead it to file bankruptcy; (2) that

---

[1] *BOKF, N.A. v. Caesars Entertainment Corporation*, Case No. 1:15-cv-01561-SAS (the "BOKF Action") and *UMB Bank, N.A. v. Caesars Entertainment Corporation*, Case No. 1:15-cv-04634-SAS (the "UMB Action"), are referred to collectively as the "Actions." For convenience, references to court filings will be to those made in the *BOKF* Action, cited as *BOKF* ECF No. ____.

[2] The Trustees are separately filing a Motion *in Limine* for an Order (I) Holding that Sections 12.01(c)(i), (ii), and (iii) of the Indentures are Unambiguous as a Matter of Law and that They Were Intended to be Read Conjunctively As Written; or Regardless of Ambiguity, (II) Excluding Parol Evidence Proffered by CEC With Respect to the Meaning of Those Sections. The Trustees further reserve their rights to file separately any *Daubert* motions to exclude any or all of the testimony of CEC's proffered expert witnesses.

such a filing would produce negative consequences for CEC, CEOC, or Others, or (3) that CEC cannot satisfy any judgment against it in this case; and

- **Omnibus Motion 4**: Motion *in Limine* to exclude lay witnesses from expressing legal conclusions in their testimony.

Motions *in limine* allow the Court to rule "in advance of trial on the admissibility and relevance of certain forecasted evidence," *Great Earth Intern'l Franchising Corp. v. Milds Develop.*, 311 F.Supp. 2d 419, 424 (S.D.N.Y. 2002) (quotation omitted)), so that the Court can rule on evidentiary matters "without lengthy argument at, or interruption of, the trial," *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996). Each of the Trustees' motions *in limine* seeks to avoid the unnecessary delay caused by disputes over the introduction or exclusion of particular evidence CEC is anticipated to proffer at trial.

## I. OMNIBUS MOTION *IN LIMINE* NO. 1: TO EXCLUDE EVIDENCE THAT THE PARENT GUARANTEE WAS NOT INTENDED TO, AND DID NOT, PROVIDE CREDIT SUPPORT

The Trustees move to preclude CEC from introducing at trial evidence that the Parent Guarantee, memorialized in Section 12.01(a) of the Indentures, was not intended to, and did not, provide credit support. Because this Court has already decided, as a matter of law, that the Parent Guarantee unambiguously provided credit support to the Noteholders, evidence to the contrary is irrelevant, prejudicial, and precluded by the law of the case doctrine.

### BACKGROUND

In August 2015, this Court held that "the plain language of the Guarantee section indicates that it provided credit support" and that it was "a promise of full payment in the event that CEOC was unable to fulfill its payment obligations." Opinion and Order of August 27, 2015, *BOKF, N.A. et al. v. Caesars Entertainment Corp.*, Nos. 15-cv-1561, 15-cv-4634, 2015 WL 5076785, at *7 (S.D.N.Y. Aug. 27, 2015). Because the Parent Guarantee's language is plain and unambiguous, the Court properly refused to consider CEC's proffered third-party and purported expert

interpretations of the provision. *Id.* at *6-8. The Court held that this extrinsic evidence was inadmissible in light of the plain language of the Parent Guarantee. *Id.* at *7-8. Accordingly, the Court also refused to allow CEC to conduct discovery of the Noteholders' understanding of the Parent Guarantee because "extrinsic evidence of subjective intent . . . is inadmissible under New York law." *Id.* at *8.

Despite the Court's holding that the Parent Guarantee provided credit support, CEC has continually proffered testimony from witnesses with alleged "personal knowledge," third party analysts, and purported experts supporting its allegation that the Parent Guarantee was merely intended to comply with Rule 3-10 of SEC Regulation S-X.[3] That evidence, offered in opposition to motions for partial summary judgment and included in Defendant's expert reports, attempts to show that the Parent Guarantee was a meaningless promise that was never intended to provide recourse to the Noteholders; accordingly, CEC argues, the Noteholders' right to receive payment on their Notes could not have been impaired under Section 316(b) of the Trust Indenture Act through termination of the Parent Guarantee.

Because this point has already been fully litigated and decided against CEC as a matter of law, this evidence is barred by the law of the case doctrine as well as some or all of Federal Rules of Evidence 401, 402, and 403.

---

[3] *See* Mem. of Law of Caesars Entertainment Corp. in Opp. to BOKF, N.A.'s Mot. for Partial Sum. J. ("CEC Opp."), *BOKF* ECF No. 44, at 9, 29 (citing Decl. of David B. Sambur in Support CEC Opp. ("Sambur Decl. I"), *BOKF* ECF Nos. 40 & 45, ¶¶ 9-11 & Ex. A-D; Decl. of James Gadsden in Support of CEC Opp. ("Gadsden Decl."), *BOKF* ECF No. 42, ¶¶ 6, 8-11; 15-16; Decl. of Phillippe Adler in Support of CEC Opp. ("Adler Decl."), *BOKF* ECF No. 43, Ex. A).

# ARGUMENT

## A. Evidence Intended to Prove Issues Already Settled by this Court is Irrelevant and Prejudicial.

Under the "law of the case" doctrine, a court's decision on a "rule of law. . . should continue to govern the same issues in subsequent stages in the same case." *New York v. Adamowicz*, 932 F.Supp. 2d 340, 345 (E.D.N.Y. 2013) (quoting *DiLaura v. Power Auth. Of New York*, 982 F.3d 73, 76 (2d Cir. 1992)). The doctrine ensures "the orderly progress of court proceedings." *Maryland Cas. Co. v. W.R. Grace & Co. – Conn.*, No. 88 Civ. 2613 (SWK), 1994 WL 592267, at *6 (S.D.N.Y. Oct. 26, 1994) (quotation omitted). "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Id.* (quoting *Zdnok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)).

Only "cogent' or "compelling" reasons justify a court's departure from the law of the case doctrine. *Adamowicz*, 932 F.Supp. 2d at 345 (*quoting United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002)). These reasons are not present except in exceptional circumstances such as "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983) (quoting 18 C. Wright, A. Miller & E. Cooper, Fed. Prac. & Procedure § 4478 (1981)). "Cumulative evidence," *Doe*, 709 F.2d at 789, or a "mere disagreement with the Court's [prior] analysis," *Ndremizara v. Swiss Re America Holding Corp*, 93 F.Supp. 3d 301, 315 (S.D.N.Y. 2015), are insufficient to justify a departure from the law of the case doctrine. Rather, "[a]s a general matter [the court] will adhere to its own decision at an earlier stage of the litigation." *Id*; *see also Adamowicz*, 932 F.Supp.2d at 345 (order on summary judgment justified preclusion of evidence at trial contrary to that ruling).

It is axiomatic that "[e]vidence that is not relevant is not admissible." *Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (quoting Fed. R. Evid. 402). Evidence is relevant only if it "tends to prove a fact that is of consequence to the determination of the action." *Id.* (quotation omitted); *see also* Fed. R. Evid. 401. "A material fact is one that would affect the outcome of the suit under the governing law." *Arlio*, 474 F.3d at 52 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006)). "Even relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Arlio*, 474 F.3d at 52 (quoting Fed. R. Evid. 403); *see also Stephen v. Hanley*, No. 03–CV–6226(KAM)(LB), 2009 WL 1471180, at *3 (E.D.N.Y. May 21, 2009) (same). District courts are afforded "broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis," and "should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict." *Stephen*, 2009 WL 1471180, at *3 (internal quotations and alterations omitted).

Because this Court has previously ruled as a matter of law that (1) the Parent Guarantee unambiguously provided the Noteholders with credit support, and (2) evidence outside of the Indentures' four corners is therefore inadmissible, *BOKF N.A.*, 2015 WL 5076785, at *8-10, any evidence proffered to show that the Parent Guarantee did not provide credit support to the Noteholders or was included in the Indentures for any other purpose is inadmissible under the "law of the case" doctrine as immaterial, highly prejudicial, or both.

**B.  CEC Should Be Precluded From Offering Evidence Regarding the Purpose of the Parent Guarantee Because This Court Has Already Determined That It Unambiguously Provides Credit Support.**

CEC should be precluded from offering any testimony or other evidence at trial with respect to its rejected theory that the Parent Guarantee never provided any credit support for the Noteholders. This evidence includes:

- statements from David Sambur regarding his belief that the "purpose of the Guarantee. . . was to comply with Rule 3-10 of SEC Regulation S-X," and that CEC's limited resources at the time it was allegedly terminated made the Parent Guarantee that much less valuable (Sambur Decl. I, *BOKF* ECF No. 40, ¶¶ 9, 11);

- statements from Mr. William Miller, who purportedly negotiated the Indentures on behalf of financial institutions, regarding his understanding that CEOC could use the audited financials of CEC under Regulation S-X when issuing the notes because of the Parent Guarantee (Transcript of Sept. 28, 2015 Deposition of William Miller at 74:5-78:12; 80:13-81:5 (Ex. A to the accompanying Second Declaration of Andrew I. Silfen ("Silfen Decl. II"));

- reference to a 2005 Fitch Ratings report stating that the Parent Guarantee would allow CEC's predecessor to file consolidated financial statements as a proxy for CEOC (Sambur Decl. I, *BOKF* ECF No. 40, ¶ 9 & Ex. A);

- Mr. Sambur's assertions that market participants understood that the Parent Guarantee could be released unilaterally, citing hearsay from a 2013 Goldman Sachs report, a 2013 Covenant Review report, and a 2014 JP Morgan Chase report commenting on how the Parent Guarantee could be released (Sambur Decl. I, *BOKF* ECF Nos. 40 and 45, ¶ 10 & Ex. B-D; *see also* Adler Decl., *BOKF* ECF No. 43, Ex. A; Declaration of Eric Seiler of December 4, 2015 ("Seiler Decl."), *BOKF* ECF Nos. 65, 65-4, & 70, at Ex. D);

- purported expert testimony that the Parent Guarantee did not provide credit support, was filed for regulatory reasons, and "reasonable market participants" would not have believed the Parent Guarantee to have provided a credit guarantee (Gadsden Decl., *BOKF* ECF No. 42, ¶¶ 15-16; Dec. 18, 2015 Expert Report of James Gadsen, ¶¶ 6, 35-40 (Silfen Decl. II, Ex. B); Dec. 18, 2015 Expert Report of Robert Grien, ¶¶ 21, 43-46 (Silfen

Decl. II, Ex. C); Expert Decl. of Jeremy E. Reifsnyder, *BOKF* ECF No. 68, ¶ 25);[4] and

- any similar testimonial or documentary evidence.

Here, CEC's proffered documentary evidence and lay and expert testimony regarding the purpose and meaning of the Parent Guarantee is entirely irrelevant in light of this Court's ruling that conclusively determined the unambiguous meaning of the provision. *BOKF, N.A.*, 2015 WL 5076785, at *8-10; Fed. R. Evid. 401. Not only has the Court determined that the Parent Guarantee unequivocally provides credit support to the Noteholders, but it has also ruled that all extrinsic evidence, such as the lay testimony of Mr. Sambur, third-party market analysts, purported experts, and any other non-party's or party's interpretation or intent surrounding the Parent Guarantee is irrelevant as a matter of law. *BOKF, N.A.*, 2015 WL 5076785, at *4, *8-10. There are no "compelling" reasons for the Court to permit re-litigation of this issue, and CEC cites none. *Adamowicz*, 932 F.Supp.2d at 345.

In addition, such evidence is prejudicial and potentially confusing to the jury. "Even if the bounds of materiality could be stretched" to permit introduction now of evidence previously foreclosed by this Court (which it cannot), *Arlio*, 474 F.3d at 53, its extremely limited "probative value [would be] substantially outweighed" by the danger that the jury would be misled by the evidence. *See* Fed. R. Evid. 403. It is now settled that the Parent Guarantee provided the Noteholders with the promise that CEC would be required to pay the Noteholders if CEOC failed to do so. Evidence that runs contrary to that ruling would only confuse the jury and waste time.

---

[4] The Trustees reserve the right to challenge Mr. Gadsden's and Mr. Grien's qualifications and purported expert testimony in one or more *Daubert* motions.

In sum, CEC should not be permitted to introduce any extrinsic testimonial or documentary evidence at trial on the purpose and effect of the Parent Guarantee because it is irrelevant and prejudicial in light of the Court's order settling these questions as a matter of law.[5]

## II. OMNIBUS MOTION *IN LIMINE* NO. 2: TO EXCLUDE TESTIMONY OR OTHER EVIDENCE ON INFORMATION WITHHELD IN DISCOVERY BY CEC ON THE GROUNDS OF THE ATTORNEY-CLIENT PRIVILEGE

The Trustees seek to exclude testimony at trial based on the invocation of the attorney-client privilege.

It is well-settled that the attorney-client privilege cannot be used as both a "sword" and a "shield." *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *see also Regeneron Pharmaceuticals, Inc. v. Merus B.V.*, No. 14 Civ. 1650 (KBF), 2015 WL 6674818, at *44 n.48 (S.D.N.Y. Nov. 2, 2015) (summarizing Second Circuit case law on the use of privilege as a sword and a shield). In other words, a party cannot claim privilege on a topic in order to prevent the disclosure of unfavorable information while waiving the privilege in order to disclose favorable information. *In re Grand Jury Proceedings*, 219 F.3d 175, 182-183 (2d Cir. 2000) ("[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."). If any witness who previously claimed that certain information is protected by the attorney-client chooses to testify at trial as to such information, even in part, such testimony would constitute a waiver of the attorney-client privilege as to the entire subject matter of the allegedly privileged information. *United States v. Wells Fargo Bank,*

---

[5] The Trustees have proffered expert testimony of Christopher S. Hillcoat that in part rebuts CEC's interpretation of the Parent Guarantee as one of convenience, but the Trustees will not proffer portions of Mr. Hillcoat's testimony that address this issue should the Court grant the relief the Trustees seek in this Motion.

*N.A.*, No. 12-CV-7527 JMF, 2015 WL 6395917, at *4 (S.D.N.Y. Oct. 22, 2015) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) and citing *Crawford v. Coram Fire Dist.*, No. 12-CV-3850 (DRH) (WDW), 2014 WL 1686203, at *4 (E.D.N.Y. Apr. 29, 2014)).

Recently, this District Court addressed similar issues in *Regeneron Pharmaceuticals*, 2015 WL 6674818. There, the defendant, Regeneron, opted to disclose at trial an affidavit it had previously withheld as privileged. *Id.* at *50. The Court found Regeneron's use of the affidavit to be a waiver of the privilege "as to the subject matter of each of the topics the affidavit addressed." *Id.* Because the affidavit had not been produced in discovery based on assertion of privilege, the Court concluded that Regeneron was not in compliance with its discovery obligations and could not rely on the affidavit at trial. *See id.*

The Court analyzed at length what the appropriate remedy would be for Regeneron's choice to switch from using the attorney-client privilege as a shield to using it as a sword. *Id.* at *51-52. The Court observed that the admission of the previously withheld evidence "could only occur – in fairness – if there was a wholesale re-opening of discovery," which would have been impractical and would not be "a fair burden for [the other party] or this Court." *Id.* at *51. Instead, the Court opted to exclude the testimony of several individuals and imposed the sanction of an adverse inference on certain topics. *Id.* The Trustees seek the same remedy provided in *Regeneron Pharmaceuticals.*

During the depositions of CEC's employees and former employees and the depositions of third parties from Blackstone, Chatham, Paulson, and Scoggin, the deponents declined to testify on certain topics on the basis of attorney-client privilege. For example, CEC's 30(b)(6) corporate designee, David Sambur, was asked at his deposition whether he had "an understanding that the officer's certificate is sent because the issuer believes that the existing notes have been released or

discharged under . . . 12.02(c)(i) parent guarantee release." Transcript of Sept. 9-10, 2015 Deposition of David Sambur ("Sambur Tr.") at 675:25-676:6 (Silfen Decl. II, Ex. D). Mr. Sambur responded that he had no "independent view on the interpretation of the contract other than through discussions with counsel." *Id.* at 676:10-12.

Mr. Sambur, as CEC's corporate designee, similarly testified that he had no understanding, other than from communications with counsel, as to numerous other germane topics, including:

- "what considerations underlie CEOC's delivery of the officer's certificate," any "negotiations regarding the wording or preparation or decision to deliver the officer's certificate," "analysis regarding the officer certificate," and "communications regarding the officer's certificate;" *id.* at 306:6-23;

- "discussions" or "concerns" with respect to not offering the repurchase of the notes to the entire group of noteholders;" *id.* at 329:9-21;

- whether the "release of the parent guarantee might give rise to fraudulent transfer liability at CEC;" *id.* at 277:9-12;

- whether "the PIP would release noteholder guarantees;" *id.* at 535:23-536:8.

- that "no consent by the holders of the notes was required under the terms of the indentures;" *id.* at 726:18-729:16; and

- that "the 'and' in the indentures should be interpreted literally and that the guarantee released on CEOC's ceasing to be wholly owned could be challenged by the noteholders;" *id.* at 733:8-734:13.

Given that CEC, through Mr. Sambur, used privilege as a shield against testifying about each of these topics, CEC and Mr. Sambur should not be permitted at trial to testify on these topics and thereby use privilege as a sword to selectively disclose only evidence favorable to CEC.

The deposition testimony of CEC's Chief Financial Officer, Mr. Hession similarly was littered with invocations of the attorney-client privilege. For example, Mr. Hession declined to testify regarding the following topics:

- "mechanisms by which CEC's guarantee could potentially be removed," Transcript of Sept. 17-18, 2015 Deposition of Eric Hession ("Hession Tr."). at 45:6-10 (Silfen Decl. II, Ex. E); *accord id.* at 43:25-44:5;

- whether "a sale of 25% of the CEOC equity would release the parent guarantee," *Id*. at 161:4-9;

- whether "transfer of stock pursuant to the PIP would affect CEC's guarantee of CEOC debt," *Id.* at 321:19-322:7; and

- "everything" Mr. Hession "understood about this contract" pursuant to which certain holders of the 2016 and 2017 notes sold their notes back to CEOC and CEC," *Id.* at 461:10-15.

Indeed, Mr. Hession even relied on the attorney-client privilege to shield his testimony where the privilege had been waived by disclosure to third parties. For example, Mr. Hession testified that the totality of his knowledge of the operation of the guarantee termination provisions in Section 12.02(c) was from conversations with counsel. Hession Tr. at 49:18-23. Mr. Hession then testified that he communicated this understanding to market analysis who were outside of the protections of privilege. *Id.* at 49:24-50:3. Taken at face value, Mr. Hession's testimony leads to the inescapable conclusion that he communicated to parties outside the protection of the attorney-client privilege regarding the mechanisms by which the guarantee could be removed. It would be particularly unfair to permit the introduction at trial of evidence that was shielded from disclosure under these circumstances.

Mr. Sambur and Mr. Hession are not the only deponents who relied on the attorney-client privilege in declining to testify about a variety of topics that will be relevant – and in some cases, central – to trial on the Trustees' claims. For example, at the deposition of Donald Colvin, the former CFO of CEC, CEC asserted privilege and advice of counsel in response to questions concerning the release of the parent guarantees at issue in this litigation. *See, e.g.*, Transcript of Sept. 29, 2015 Deposition of Donald Colvin ("Colvin Tr."), at 76:6-77:11 (Silfen Decl. II, Ex. F) (first testifying to a lack of recall, then acknowledging conversations with counsel and following counsel's instruction not to answer); *id.* at 185:6-7 ("I cannot reply, then, because this all comes from counsel."). Even when Mr. Colvin was unsure whether he or his staff even spoke with

counsel, he declined to answer. *See id*. at 164:22-165:6 ("Well, I mean, as previously stated, my staff may also have solicited legal counsel, and so I can't really reply to that because I am nervous about impinging upon legal confidentiality."). Likewise, Alex van Hoek testified that his knowledge concerning each of CEC's several attempts in May and August 2014 to cause the release of the Parent Guarantee was obtained solely from counsel. Transcript of Sept 21-22, 2015 Deposition of Alex van Hoek, at 92:7-95:10 (Silfen Decl. II, Ex. G).

Similarly, CEC asserted privilege at Diane Wilfong's deposition in response to questions regarding CEC's dispute with its auditor over the application of Regulation S-X to CEC's financial reporting. *See, e.g.*, Transcript of Oct. 9, 2015 Deposition of Diane Wilfong, at 80:21-81:13 (Silfen Decl. II, Ex. H).

Therefore, the Trustees respectfully request that this Court, in accordance with *Regeneron Pharmaceuticals,* preclude any witness from testifying on any topic during trial if, at deposition, the witness or its employer used the attorney-client privilege to withhold testimony on that topic.

III. **OMNIBUS MOTION *IN LIMINE* NO. 3: TO PRECLUDE CEC FROM INTRODUCING EVIDENCE OR ARGUMENT (1) THAT A JUDGMENT WOULD OR COULD LEAD IT TO FILE BANKRUPTCY, (2) THAT SUCH A FILING WOULD PRODUCE NEGATIVE CONSEQUENCES FOR CEC, CEOC, OR OTHERS, OR (3) THAT CEC CANNOT SATISFY ANY JUDGMENT AGAINST IT IN THIS CASE**

The Trustees seek to preclude CEC from (1) introducing at trial, evidence or argument that CEC is likely to file for bankruptcy protection if a judgment or verdict is entered in the Trustees' favor at trial, (2) introducing evidence or argument about the perceived consequences of that bankruptcy filing on CEC, CEOC, or others, or (3) introducing evidence or argument that CEC would not be able to satisfy any judgment against or that CEC is "judgment proof." Such evidence is entirely speculative, immaterial, and highly prejudicial, and should therefore be excluded.

## BACKGROUND

The Trustees anticipate that CEC will proffer at trial the type of evidence described above because CEOC has done so before in the CEOC Adversary proceeding, where the Debtor CEOC sought to enjoin the Actions (among others). For example, Steven Zelin, the senior manager of CEC's financial advisor, Blackstone, testified in June 2015 that, based on his personal knowledge and conversations with his client, CEC was likely to file for bankruptcy to avoid incurring liability in this and other lawsuits "no later than August [2015]." June 4, 2015, Transcript of Proceedings Before Hon. A. Benjamin Goldgar, at 209:10-23 (Silfen Decl. II., Ex. I); *see also id.* at 80:22-25; *id.* at 131:2-132:2. Over five months have elapsed since August 2015, and CEC has not filed for bankruptcy.[6] This type of testimony is conjectural and completely irrelevant to the issue of CEC's liability under the Parent Guarantee. The introduction of such evidence would prejudice the jury by causing it to fear that if it found in the Trustees' favor, CEC would file for bankruptcy and thereby harm CEC, its employees, and other parties. This and any similar evidence should therefore be excluded.

## ARGUMENT

### A.    Evidence that is Irrelevant and Prejudicial Is Inadmissible.

As described above, "[e]vidence that is not relevant is not admissible." *Arlio* , 474 F.3d at 52 (quoting Fed. R. Evid. 402), and "[e]ven relevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice,'" *id.* (quoting Fed. R. Evid.

---

[6] A second CEOC witness also testified that CEC would be likely to file for bankruptcy protection if it incurred liability in any of the Guarantee Litigations. Mr. James Millstein—the founder and chief executive of Millstein & Co., which provides CEOC with financial advice—testified, based on his review of CEC's fourth-quarter 2015 10-Q—that CEC "will need to avail itself of a bankruptcy proceeding to protect its assets" if judgment in any of the Guarantee Litigations was entered against it." *See* June 3, 2015, Transcript of Proceedings Before Hon. A. Benjamin Goldgar, at 23:10-24:26; 49:17-50:20; 51:11-52:3 (Silfen Decl. II, Ex. J).

403); *see generally supra* Omnibus Motion *in* Limine No. 1, Argument A. Speculative evidence—

that is, evidence that lacks a foundational basis in fact[7]—is inadmissible as irrelevant under Rule

402 and as prejudicial and misleading under Rule 403. *See Fournier v. Erickson*, 242 F.Supp. 2d

318, 330 (S.D.N.Y. 2003) (excluding memorandum containing projected sales goals).

> **B.  CEC Should be Precluded from Offering Evidence Regarding the Potential Financial or Other Consequences of Incurring Liability in These Actions Because that Evidence is Speculative, Irrelevant, and Prejudicial.**

The Trustees seek to preclude CEC from offering testimony or evidence (i) that *if* CEC

were to lose these Actions, it would or might file for bankruptcy,  (ii) about what the consequences

of that bankruptcy would or might be on CEC, CEOC, or others, or (iii) that CEC is judgment

proof or unable to pay any. This evidence is speculative, irrelevant to the issue of CEC's liability

in these Actions, and can only have the effect of misleading the jury or unduly prejudicing the

Trustees.

Courts routinely exclude evidence regarding the *actual* financial status of parties to a suit

because such evidence is irrelevant to the issue of liability and has the potential to distract the jury

and prejudice its decisions. *See United States v. Bensimon*, 172 F.3d 1121, 1130 (9th Cir. 1999)

(evidence of defendants' prior bankruptcy had "limited probative value and likely prejudicial

effect" justifying its preclusion under Rule 403); *Maradiaga v. Intermodal Bridge Transp., Inc.*,

889 F.Supp. 2d 551, 571 (N.D. Tex. 2012) (evidence that plaintiff filed for bankruptcy irrelevant

to liability issues); *Interspiro, Inc. v. Exeter Twp.*, No. 08-12878, 2010 WL 890171, at *1 (E.D.

---

[7] *See Jacobs v. Alexander*, No. 05-CV-01625 (SAB), 2015 WL 8010537, at *3 (E.D. Cal. Dec. 7, 2015) (party's "belief" unsupported by facts speculative); *see also Jaramillo v. United States*, 357 F.Supp. 172, 175 (S.D.N.Y. 1973) ("'Speculation' is the art of theorizing about a matter as to which evidence is not sufficient for certain knowledge"). *Cf. Murrell v. Laster*, No. 90-4169 (R), 1990 WL 171051, at *5 (D. Kan. Oct. 15, 1990) (unsupported claims that plaintiff's unemployment would "force him into the streets or require the filing of bankruptcy" were speculative).

Mich. Mar. 10, 2010) (excluding evidence of company's and purported agent's respective financial conditions and bankruptcy filings because it could improperly influence the jury's decision as to which party should bear the loss in a breach of contract action).

The irrelevance and prejudicial effects are even greater in allowing the admission of evidence relating to the speculative financial consequences the defendant may face if the jury returns a verdict for the plaintiff. Evidence that a "judgment against it would cause financial harm or burden" to the defendant is irrelevant under Rule 402 and is prejudicial under Rule 403, as it "would only appeal to the sympathy of the jury." *Rebolledo v. Herr-Voss Corp.*, 101 F.Supp. 2d 1034, 1036-37 (N.D. Ill. 2000). Evidence that a judgment may cause "financial harm to the members of the jury or any entity" is also irrelevant and prejudicial. *Id.*

In *Rebolledo*, for example, the court precluded the defendant in a products liability action from introducing evidence at trial "implying that any judgment entered against [it] would have any effect on the defendant or present any financial burden on the defendant, the jury, or any other person or entity." 101 F.Supp.2d at 1036. The court found that such evidence was irrelevant and had only the potential to appeal to the jury's sympathy. *Id.* Accordingly, the defendants were only permitted to introduce evidence that "support[ed] reasonable arguments or inferences made regarding the amount of damages." *Id. Cf. United States v. Hamilton*, No. 10-CV-231-ABJ, 2013 WL 819243, at *2 (D. Wyo. Mar. 5, 2013) (evidence of potential "costly," "bankruptcy-inducing" penalties for violating the Clean Water Act were "irrelevant to a jury's determination of whether [a] violation occurred," and had the potential to prejudice the jury, justifying bifurcation of trial).

The Trustees are not by this motion seeking to preclude factual evidence of CEC's or CEOC's past financial condition or its effects on the past actions of CEC or CEOC, although the Trustees reserve the right to object at trial to the admission of such evidence. But evidence

introduced to suggest, directly or indirectly, that *if* the jury finds against CEC in these Actions, *then* CEC would or may file for bankruptcy, is not relevant to determining CEC's liability for actions it has taken in the past: such evidence does not tend to prove or disprove a "material fact" that could "affect the outcome of the suit under governing law" under Rule 402. *Arlio*, 474 F.3d at 52 (quotation omitted). It also lacks any factual basis and is speculative. *See, e.g., United States v. Gibson*, 636 F.2d 761, 764 (D.C. Cir. 1980) (witness not permitted to testify about what he *might* have seen or done under different circumstances).

If permitted to consider such evidence, a jury that is not well-versed in the ins-and-outs of Chapter 11 bankruptcy proceedings is likely to worry that a ruling against CEC in these Actions may have dire circumstances: it may cause CEC to "go under," employees to lose their jobs, and cause other economic consequences. Any limited "probative value" of such evidence—there is none—is "substantially outweighed" by the risk that it could prejudice the jury against finding in the Trustees' favor even if the law compels this outcome. *See* Fed. R. Evid. 403; *see also Arlio*, 474 F.3d at 53.

In sum, testimony or other evidence that CEC may or is likely to file for bankruptcy and testimony, or other evidence about the attendant consequences of bankruptcy, or that CEC is judgment proof, "would only appeal to the sympathy of the jury" or falsely lead them to believe that a judgment would be futile, and should be excluded. *Rebolledo*, 101 F.Supp. 2d at 1036.

## IV.  OMNIBUS MOTION *IN LIMINE* NO. 4 – TO EXCLUDE LAY WITNESSES FROM EXPRESSING LEGAL CONCLUSIONS IN THEIR TESTIMONY

The Trustees seek to preclude lay witnesses of CEC from testifying at trial about legal conclusions, including whether CEC effectively removed the Parent Guarantee. Because such a determination is a legal conclusion, CEC's lay witnesses are not allowed to make such statements, and such testimony is inappropriate, prejudicial, and precluded by the Federal Rules of Evidence.

# BACKGROUND

At prior stages of these Actions CEC witnesses have offered legal conclusions. For example, CEC has proffered testimony on legal conclusions from a variety of lay witnesses supporting its allegation that the Parent Guarantee was effectively removed. To cite but one example, Mr. Hession testified that the parent guarantees were effectively removed. *See* Hession Tr. 40:21-41:3 (Silfen Dec. II, Ex. E) ("Q: Are you aware of any efforts to remove CEC's -- strike that. Are you aware of any efforts to remove CEC's guarantee of any CEOC obligations? A: I am aware the guarantee was removed).

The Trustees expect CEC to attempt to introduce similar evidence at trial. Such lay opinion testimony in the form of legal conclusion, and any other testimony concerning legal conclusions, is barred by Federal Rule of Evidence 701.

# ARGUMENT

A lay witness may testify in the form of an opinion, provided it is "(a) rationally based on the witnesses perception; (b) helpful to clarify understanding the witnesses testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Thus, lay testimony must (i) be based on first-hand knowledge (*i.e.*, perception); (ii) be helpful to determining a fact in issue; and (iii) not be an expert opinion. A legal conclusion meets none of those requirements.

A lay witness may not testify to legal conclusions, such as the interpretation and effect of a contract.[8] *Cameron v. City of New York*, 598 F.3d 50, 62 n.5 (2d Cir. 2010). ("The cases laying

---

[8] The prohibition on testifying to legal conclusions applies equally to expert witnesses. As of the date of this Motion, the Trustees have not deposed any of CEC's experts, as noted in note 2 above. The Trustees reserve the right bring a *Daubert* motions to exclude any and all testimony of legal conclusions offered by expert witnesses.

out this rule have focused on expert witnesses. But the impropriety of allowing a lay witness to testify in the form of a legal conclusion is all the clearer."). *See also*, *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 512 (2d Cir. 1977) (ruling that expert witnesses may not testify to legal conclusions and that being an expert is "hardly a qualification for construing a document for its legal effect"); *In re Rezulin*, 309 F.Supp. 2d 531, 541 (S.D.N.Y. 2004) (permitting an expert to testify to legal conclusions would usurp the role of the court**)**.

Testimony from a lay witness, for example, about whether the Parent Guarantee was effectively removed, is not proper for trial because it amounts to legal conclusions. As such, it would usurp the role of the fact-finder. *See id.* at 512. The introduction of lay testimony about legal conclusions would not clarify testimony or aid in determining a fact. Rather, it would unduly influence the jury to reach a certain conclusion—essentially telling a jury how to decide, which is also prohibited by Rule 701(b). *See United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) (the "helpfulness requirement is designed to provide assurance[ ] against the admission of opinions which would merely tell the jury what result to reach" or would constitute an attempt "to introduce meaningless assertions which amount to little more than choosing up sides.") (internal quotation marks omitted). Allowing a lay witness to offer or evaluate any legal conclusion would be improper.

In sum, CEC should not be permitted to introduce any testimony from lay witnesses at trial on legal issues, such as whether the Parent Guarantee was effectively removed. Such testimony is prejudicial and precluded by the Federal Rules of Evidence.

## CONCLUSION

For the foregoing reasons, the Trustees respectfully request that the Court grant each of their omnibus motions *in limine* numbered 1 through 4; proposed Orders for each Motion are attached.

Respectfully submitted,

Dated: New York, New York
      February 5, 2016

/s/ Andrew I. Silfen
Andrew I. Silfen, Esq. (AS-1264)
Michael S. Cryan, Esq. (MC-4887)
Mark A. Angelov, Esq. (MA-5291)
ARENT FOX LLP
1675 Broadway
New York, NY 10019-5820
Tel:   (212) 484-3900
Fax:   (212) 484-3990
Email: andrew.silfen@arentfox.com
       michael.cryan@arentfox.com
       mark.angelov@arentfox.com

-and-

Ralph A. Taylor, Jr., Esq. (*admitted pro hac vice*)
Jackson D. Toof, Esq. (*admitted pro hac vice*)
ARENT FOX LLP
1717 K Street, N.W.
Washington, D.C. 20006
Tel:   (202) 857-6000
Fax:   (202) 857-6395
Email: ralph.taylor@arentfox.com
       jackson.toof@arentfox.com

*Attorneys for BOKF, N.A., solely in its capacity as successor Indenture Trustee under the Indenture governing the Second Lien Notes*

/s/ David A. Crichlow
David A. Crichlow
Craig A. Barbarosh
Karen B. Dine

19

Rebecca Kinburn
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Tel:      (212) 940-8800
Fax:      (212) 940-8776
Email:   craig.barbarosh@kattenlaw.com
            david.crichlow@kattenlaw.com
            karen.dine@kattenlaw.com
            rebecca.kinburn@kattenlaw.com

*Attorneys for Plaintiff UMB Bank, N.A. solely in its capacity as successor Indenture Trustee under the Indentures governing the First Lien Notes*