

**FRIEDMAN KAPLAN** FRIEDMAN KAPLAN SEILER & ADELMAN LLP

**ERIC SEILER**
eseiler@fklaw.com
212.833.1103

February 7, 2016

Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *BOKF, N.A. v. Caesars Entertainment Corporation*, 15-CV-1561
     *UMB Bank, N.A. v. Caesars Entertainment Corporation*, 15-CV-4634

Dear Judge Scheindlin:

    We represent defendant Caesars Entertainment Corporation ("CEC").  We write in regard to tomorrow's pre-motion conference on CEC's proposed motions for partial summary judgment against claims for breach of the implied covenant of good faith and fair dealing, and intentional interference with contractual relations.  At the conference, we intend to discuss certain filings by BOKF and UMB in these matters and in the pending bankruptcy matter of Caesars' subsidiary Caesars Entertainment Operating Co., Inc. ("CEOC").  We are providing herewith relevant excerpts of these filings, for the Court's convenience.

    BOKF and UMB's letter of February 5 asserts that their good faith claims "are based on CEC misconduct that is distinct from, and in addition to, CEC's unlawful disclaimers of its guarantee" which are at issue on the contract claims.  (Ltr. at 2.)  The good faith claims supposedly add an element "not implicated by Plaintiffs' Contract Claims," based on a "broader scheme" by CEC.  (*Id.*)  Exhibits 1 and 2 hereto are the good faith and tortious interference claims pled in BOKF and UMB's complaints, respectively.  These claims, and plaintiffs' breach of contract claims, all concern the same allegations about the guarantee; there are no claims about CEC's "broader scheme."

    Also attached are excerpts of filings by BOKF in CEOC's bankruptcy, where BOKF asserted that its lawsuit here concerned only CEC's guarantee: Exhibit 3 (¶¶ 1-2, 12), Exhibit 4 (¶¶ 14, 16, 26), Exhibit 5 (¶¶ 1, 15-16, 39), and Exhibit 6 (¶¶ 1, 11-12, 15, 24, 26).  Specifically, "BOKF denie[d] that the Disputed Transactions are the 'subject' of the BOKF Action."  *See* Ex. 4 ¶ 16.  (The Disputed Transactions, as defined, are the same as the "scheme" that plaintiffs now say is the subject of their good faith claims.)  BOKF also stated that it "assert[s] claims under the BOKF Indenture for intentional interference with contractual relations and breach of the duty of good faith and fair dealing *due to CEC's disavowal of the guarantee* .... Nothing in the Trustees' actions to enforce the CEC guarantees hinges on avoidance or validity of the 'controversial' prepetition transactions."  *See* Ex. 6 ¶¶ 12, 15 (emphasis added).  (The "prepetition transactions" are the same as the "scheme.")

    We appreciate the Court's attention to these matters.

                                        Respectfully,

                                        *Eric Seiler / l.g.*

                                        Eric Seiler

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOKF, N.A., solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018, | **15 CV 1561** CIVIL ACTION NO.:_____ |
| **Plaintiff,** | **COMPLAINT FOR RECOVERY ON GUARANTEE, DAMAGES AND DECLARATORY RELIEF** |
| v. | **DEMAND FOR TRIAL BY JURY** |
| CAESARS ENTERTAINMENT CORPORATION, | MAR 03 2015 |
| **Defendant.** | U.S.D.C. S.D.N.Y. |

BOKF, N.A. ("BOKF" or the "Trustee"), solely in its capacity as successor trustee under the Indenture dated as of April 16, 2010 (as supplemented or amended, the "2010 Indenture"[1]) for the 12.75% Second Priority Senior Secured Notes due 2018 (the "12.75% Second Lien Notes" or the "Notes"), through counsel, hereby brings this Complaint against Caesars Entertainment Corporation ("Defendant" or "CEC") to enforce CEC's guarantee obligations (the "Parent Guarantee") under the 2010 Indenture, and in support thereof respectfully alleges as follows:

### INTRODUCTION

1.      On April 16, 2010, at the very moment in time when Caesars asked investors to purchase its new 12.75% Second Lien Notes and thereby to infuse its businesses with many hundreds of millions of dollars of necessary capital, it stated:

> *To induce* the Initial Purchasers to enter into the Purchase Agreement and to satisfy a condition to your obligations thereunder, the Issuers, the Company . . . and Parent

---

[1] The 2010 Indenture is defined more fully below in Paragraph No. 29. All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the 2010 Indenture.

## COUNT VI
**(Intentional Interference with Contractual Relations)**

211.   The Trustee repeats and realleges the allegations in Paragraphs 1 through 210 as if fully set forth herein.

212.   The 2010 Indenture constitutes a contractual relationship between the Trustee, the 12.75% Second Lien Noteholders, and CEOC.

213.   CEC was at all relevant times aware of that contractual relationship.

214.   As described herein, CEC knowingly and deliberately caused CEOC to breach its obligations to the 12.75% Second Lien Noteholders under the 2010 Indenture.  In doing so, CEC acted with malice and bad faith, and with the intention of benefitting CEC at the expense of CEOC and the 12.75% Second Lien Noteholders.

215.   The Trustee and the 12.75% Second Lien Noteholders were damaged by CEC's intentional action to cause CEOC to breach its obligations under the 2010 Indenture in an amount to be determined at trial, including but not less than an amount equal to the principal of and accrued, unpaid and capitalized interest on the 12.75% Second Lien Notes.

## COUNT VII
**(Breach of Duty of Good Faith and Fair Dealing)**

216.   The Trustee repeats and realleges the allegations in Paragraphs 1 through 215 as if fully set forth herein.

217.   The terms of the 2010 Indenture, the 12.75% Second Lien Notes, including the Form of Note, and the Parent Guarantee were at all times herein valid and enforceable contract obligations of CEC and CEOC to the Trustee and the 12.75% Second Lien Noteholders.

218.   New York law implies in every contract a covenant requiring each party to deal fairly and in good faith with the other and to refrain from taking any actions that would deprive the other party of the benefit of their respective bargain.

63

219.   CEC breached the covenant of good faith and fair dealing by engaging in a course of conduct outside of performance of the contract that plainly sought to accomplish certain outcomes CEC would never have been able to achieve had it followed the terms of the 2010 Indenture, the 12.75% Second Lien Notes and the Parent Guarantee, as well as the provisions of the TIA.

220.   Specifically, CEC violated the implied covenant of good faith and fair dealing by the following:

(a)   By attempting to disclaim the Parent Guarantee under Article XII of the 2010 Indenture and the 12.75% Second Lien Notes, including the Form of Note, despite the fact that CEOC still constitutes a Wholly Owned Subsidiary under the 2010 Indenture and two other necessary conditions, under Section 12.02(c)(ii) and (iii), have not been met;

(b)   By attempting to disclaim the Parent Guarantee under Article XII of the 2010 Indenture and the 12.75% Second Lien Notes, including the Form of Note, even if CEOC would not constitute a wholly owned subsidiary of CEC under the 2010 Indenture based solely on CEC's equity ownership of CEOC following the 5% Stock Sale or the 6% Stock Transfer as part of the purported performance incentive program, because two other necessary events, under Section 12.02(c)(ii) and (iii), have not occurred; and

(c)   By attempting to disclaim the Parent Guarantee under Article XII of the 2010 Indenture and the 12.75% Second Lien Notes, including the Form of

Note, notwithstanding that CEC's guarantees of all of the Existing Notes have not been released or discharged.

221.   CEC's foregoing actions to strip the Trustee and the 12.75% Second Lien Noteholders of such protections through a course of conduct constituting bad faith deprive the Trustee and the 12.75% Second Lien Noteholders of the benefit of their bargain under the Indentures.

222.   Further, at the time of the original issuance of the 12.75% Second Lien Notes—in the aggregate notional principal amount of $750 million—no reasonable person would have anticipated Caesars' current and past course of conduct at the time of contracting.

223.   Accordingly, the Trustee is entitled to the declaratory relief claimed in Count II, above.

224.   Additionally, the Trustee and the 12.75% Second Lien Noteholders have suffered substantial actual and prospective damages in an amount to be determined at trial, including but not less than an amount equal to the principal of and accrued, unpaid and capitalized interest on the 12.75% Second Lien Notes.

## **PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully requests that this Court enter judgment against CEC and enter an order:

A.   Enforcing the Parent Guarantee against CEC and awarding the Trustee and 12.75% Second Lien Noteholders all amounts due and owing under the 2010 Indenture, including but not limited to unpaid principal and interest due under the Parent Guarantee;

B.   Declaring that the Parent Guarantee is in full force and effect;

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UMB BANK, N.A. solely in its capacity as
Indenture Trustee under those certain indentures,
dated as of June 10, 2009, governing Caesars
Entertainment Operating Company, Inc.'s 11.25%
Notes due 2017; dated as of February 14, 2012,
governing Caesars Entertainment Operating
Company, Inc.'s 8.5% Senior Secured Notes due
2020; dated August 22, 2012, governing Caesars
Entertainment Operating Company, Inc.'s 9%
Senior Secured Notes due 2020; dated February
15, 2013, governing Caesars Entertainment
Operating Company, Inc.'s 9% Senior Secured
Notes due 2020,

                Plaintiff,

    v.

CAESARS ENTERTAINMENT
CORPORATION,

                Defendant.

Case No. _____

COMPLAINT FOR
DECLARATORY JUDGMENT
AND DAMAGES

JURY TRIAL DEMANDED

        Plaintiff UMB BANK, N.A. solely in its capacity as Indenture Trustee ("UMB" or the

"Indenture Trustee") under those certain First Lien Indentures (defined below), dated as of June

10, 2009, governing Caesars Entertainment Operating Company, Inc.'s 11.25% Notes due 2017;

dated as of February 14, 2012, governing Caesars Entertainment Operating Company, Inc.'s

8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing Caesars Entertainment

Operating Company, Inc.'s 9% Senior Secured Notes due 2020; dated February 15, 2013,

governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020

(collectively the "First Lien Notes," as described more fully below), by and through it attorneys

Katten Muchin Rosenman LLP, submits the following Complaint, and in support thereof

respectfully alleges upon personal knowledge as to itself and its own acts, and upon information

and belief as to all other matters, as follows:

First Lien Indentures, which rendered "the principal of, premium, if any, and interest on all the Notes … immediately due and payable" by CEC pursuant to the Guarantee.

70.     CEC has not paid these amounts as required under the First Lien Indentures.

71.     The First Lien Noteholders were damaged by this breach.

## COUNT FIVE

### (Breach of Contract: Payment on Guarantee)

72.     Plaintiff incorporates by reference each of the prior paragraphs of the Complaint as if fully set forth herein.

73.     By its Guarantee, CEC is a primary obligor for all amounts immediately due and payable to the First Lien Noteholders under the First Lien Indentures.

74.     CEC is accordingly required to pay the First Lien Noteholders an amount no less than the principal and accrued interest on all outstanding First Lien Notes.

75.     CEC has not paid this amount.

76.     CEC's failure to satisfy its payment obligations as a primary obligor is a breach of the First Lien Indentures.

## COUNT SIX

### (Breach of the Implied Duty of Good Faith and Fair Dealing)

77.     Plaintiff incorporates by reference each of the prior paragraphs of the Complaint as if fully set forth herein.

78.     CEC has breached its implied duty of good faith and fair dealing by engaging in the improper disavowal of its Guarantee described above, in an attempt to avoid its obligations pursuant to its Guarantee.  CEC's actions have deprived the First Lien Noteholders of the right to receive the benefits to which they are entitled under the First Lien Indenture.

79.    The First Lien Noteholders were damaged by this breach.

## COUNT SEVEN

### (Payment of Costs and Expenses)

80.    Plaintiff incorporates by reference each of the prior paragraphs of the Complaint as if fully set forth herein.

81.    The First Lien Indentures include a provision that "[e]ach Guarantor also agrees to pay any and all costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Trustee or any holder in enforcing any rights under this Section 12.01." First Lien Indentures section 12.01(j).

82.    This is an action to enforce First Lien Noteholders' rights under section 12.01 of the First Lien Indentures.

83.    CEC is accordingly liable for the costs and expenses (including reasonable attorneys' fees and expenses) incurred by the Indenture Trustee in connection with this action.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant CEC and enter an Order:

(a) Declaring that the Guarantees are in full force and effect;

(b) Awarding Plaintiff, on behalf of First Lien Noteholders, all amounts due and owing under the First Lien Indentures, including but not limited to unpaid principal and interest due under the First Lien Indentures and/or the Guarantees, and directing that CEC pay such amounts;

(c) Awarding Plaintiff additional damages in an amount to be determined at trial;

# EXHIBIT 3

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| | x | |
| In re: | : | Chapter 11 |
| | : | |
| CAESARS ENTERTAINMENT OPERATING | : | Case No. 15-01145 (ABG) |
| COMPANY, INC., *et al.,*[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | x | |
| | x | |
| CAESARS ENTERTAINMENT OPERATING | : | |
| COMPANY, INC., *et al.,* | : | |
| | : | |
| *Plaintiffs* | : | Chapter 11 |
| vs. | : | |
| | : | Adversary Case No. 15-00149 |
| BOKF, N.A., WILMINGTON SAVINGS FUND | : | |
| SOCIETY, FSB, MEEHANCOMBS GLOBAL | : | |
| CREDIT OPPORTUNITIES MASTER FUND, LP, | : | |
| RELATIVE VALUE-LONG/SHORT DEBT | : | |
| PORTFOLIO, A SERIES OF UNDERLYING | : | |
| FUNDS TRUST, SB 4 CF LLC, CFIP ULTRA | : | |
| MASTER FUND, LTD, TRILOGY PORTFOLIO | : | |
| COMPANY, LLC, AND FREDERICK BARTON | : | |
| DANNER, | : | |
| | : | |
| *Defendants.* | : | |
| | x | |

## SECOND PRIORITY NOTES TRUSTEE BOKF, N.A.'S PRELIMINARY OPPOSITION TO DEBTORS' MOTION TO STAY, OR IN THE ALTERNATIVE, FOR INJUNCTIVE RELIEF ENJOINING PROSECUTION OF CERTAIN PENDING LITIGATION

---

[1] The last four digits of Caesars Entertainment Operating Company, Inc. ("CEOC")'s tax identification number are 1623. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/CEOC.

BOKF, N.A. ("BOKF" or the "Trustee"), solely in its capacity as successor trustee under the Indenture dated as of April 16, 2010 (as supplemented or amended, the "2010 Indenture") for the 12.75% Second Priority Senior Secured Notes Due 2018 (the "12.75% Second Priority Notes"), through counsel, hereby files this preliminary opposition (the "Opposition") to the Debtors' Motion to Stay, or in the Alternative, for Injunctive Relief Enjoining Prosecution of Certain Pending Litigation Against Debtors' Directors and Non-Debtor Affiliates [Adv. Proc. ECF No. 4] (the "Injunction Motion").[2]  In support hereof, BOKF respectfully states as follows[3]:

## PRELIMINARY STATEMENT

1.     It has been said that analogies can be useful but also misleading because they smuggle in assumptions that can be wrong.   The same is true when purposefully lumping together four separate lawsuits—as the Debtors have done—and misleadingly referring to them collectively as "the Actions" in order to smuggle in assumptions as to all lawsuits.  The Debtors would have this Court believe that the four lawsuits at issue—*the Actions*—all involve claims that (i) are property of the Debtors' estate, including fraudulent transfer claims; (ii) threaten any reorganization of the Debtors; (iii) will deplete property of the Debtors' estate because of the shared insurance between the Debtors and non-debtor Caesars Entertainment Corporation ("CEC"); (iv) will cause the Debtors to face indemnification claims from CEC; and (v) will subject the Debtors to burdensome discovery. **The BOKF Guarantee Action (defined below), however, involves none of these assumptions.**[4]  To the contrary, the BOKF Guarantee Action

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Injunction Motion or BOKF's Complaint for Recovery on Guarantee, Damages and Declaratory Relief (the "BOKF Complaint"), as applicable.  The Complaint is attached as **Exhibit B** to the Declaration of Judson Brown [Adv. Proc. ECF No. 5] (the "Brown Affidavit") filed in support of the Injunction Motion.

[3] BOKF incorporates by reference the arguments set forth in the Official Committee of Second Priority Noteholders' Preliminary Objection to Debtors' Motion to Enjoin Pending Litigation, filed contemporaneously herewith.

[4] The Debtors fail to acknowledge the different claims, legal issues and procedural postures of each separate action.

is straightforward.  CEC unconditionally and irrevocably guaranteed a debt that is now due and owing and BOKF, as the Trustee under the 2010 Indenture, is suing to enforce that guarantee.

2.      Prior to commencing the BOKF Guarantee Action, CEC disclaimed the Parent Guarantee under the 2010 Indenture publicly and to BOKF.  As a result, BOKF filed a complaint against non-debtor CEC only to determine the rights of the 12.75% Second Priority Noteholders under the 2010 Indenture regarding the irrevocable and unconditional Parent Guarantee (defined below) and for declaratory relief that the Parent Guarantee remains valid, binding and enforceable.  The BOKF Guarantee Action includes only direct, independent claims against CEC in connection with CEC's Parent Guarantee, none of the claims are derivative or property of the Debtors' estates and none of the Debtors or their officers or directors are defendants.[5]  Thus, the BOKF Guarantee Action is not subject to the automatic stay under Bankruptcy Code § 362.

3.      The Injunction Motion also is grossly premature and not yet ripe for adjudication.  The Debtors' principal argument is premised on CEC losing the Actions (including the BOKF Guarantee Action) and the respective plaintiffs executing on the judgments in full—essentially what the Debtors contend would then threaten any reorganization of the Debtors.  But if and when a judgment is entered for BOKF and the 12.75% Second Priority Noteholders and against CEC, at that time the Debtors would have the option of returning to Court to argue and make an evidentiary showing that *execution* on the judgment should be stayed.[6]  A stay of the litigation process now is not warranted.

---

[5] The BOKF Guarantee Action asserts claims for:  (i) Breach of Contract – Guarantee; (ii) Declaratory Judgment that CEC's Guarantee Has Not Been Terminated or Released and Remains Valid, Binding and Enforceable on CEC Under the 2010 Indenture; (iii) Breach of Contract – Indenture §§ 6.01(h) and (e); (iv) Breach of Contract – Indenture § 6.07; (v) Violations of the Trust Indenture Act, 15. U.S.C. §§ 77aaa, *et seq.* (the "TIA"); (vi) Intentional Interference with Contractual Relations; and (vii) Breach of Duty of Good Faith and Fair Dealing.

[6] To be clear, BOKF makes no statement regarding application of a stay at that time and reserves all rights in connection therewith, including its right to object to any such motion.  Further, if the Court were to issue an injunction at that time, it should exercise its equitable authority to require posting a bond, in an amount to be

(the "BOKF Guarantee Action"). Based upon the date of service, CEC's current deadline to file a responsive pleading to the Complaint is March 25, 2015.

11.     On March 12, 2015, the Honorable Shira A. Scheindlin accepted the BOKF Guarantee Action as related to the *MeehanCombs* action pending before her.[11] Notably, Judge Scheindlin ruled that the SDNY Litigation was not stayed "as to non-debtor defendant CEC." *See MeehanCombs*, 2015 WL 221055, at *1 n.5.

12.     The BOKF Guarantee Action asserts, *inter alia*, that the "irrevocable and unconditional" Parent Guarantee could not have been and was not terminated or released under the express terms of the 2010 Indenture. To the extent necessary, BOKF seeks declaratory relief that the Parent Guarantee remains in full force and effect. *See* BOKF Compl., at Count II, 53-57.

13.     On March 13, 2015, BOKF informed the District Court that the Debtors commenced the above captioned adversary proceeding and filed the Injunction Motion. A copy of the correspondence is attached hereto as **Exhibit 1**.

## ARGUMENT

### I.     The Automatic Stay Is Not Applicable

BOKF, on behalf of the 12.75% Second Priority Noteholders, asserts direct claims against non-debtor parent CEC to enforce CEC's independent contractual obligations under the Parent Guarantee as provided in the 2010 Indenture. BOKF's claims are not property of the Debtors' estates and do not attempt to assert control over property of the estates, rendering Bankruptcy Code § 362(a) inapplicable. *See, e.g., In re Teknek*, LLC, 563 F.3d 639, 644 (7th Cir. 2009) (affirming district court's holding that third party claim was not property of the

---

[11] *See Meehancombs Global Credit Opportunities Master Fund, LP, et al. v. Caesars Entertainment Corporation, et al.* (Case. No. 14-7091) ("*MeehanCombs*"). On October 14, 2014, Judge Scheindlin also accepted *Danner v. Caesars Entertainment Corporation, et al.* (Case No. 14-7973) ("*Danner*," and together with *MeehanCombs*, the "SDNY Litigation"), as related to *MeehanCombs*.

Dated: March 18, 2015
Chicago, Illinois

Attorneys for BOKF, N.A. solely in its
capacity as successor Indenture Trustee for
the 12.75% Second-Priority Notes due 2018

**FOLEY & LARDNER LLP**

By:   /s/ Mark F. Hebbeln
      Mark F. Hebbeln, Esq. (Bar #6272385)
      Harold L. Kaplan, Esq. (Bar #3125293)
      FOLEY & LARDNER LLP
      321 North Clark Street, Suite 2800
      Chicago, IL 60654-5313
      Telephone: (312) 832-4500
      Facsimile: (312) 832-4700
      mhebbeln@foley.com
      hkaplan@foley.com

**ARENT FOX LLP**

      Andrew I. Silfen, Esq.
      (admitted *pro hac vice*)
      Mark B. Joachim, Esq.
      (admitted *pro hac vice*)
      Michael S. Cryan, Esq.
      ARENT FOX LLP
      1675 Broadway
      New York, NY 10019
      Telephone: (212) 484-3900
      Facsimile: (212) 484-3990
      andrew.silfen@arentfox.com
      mark.joachim@arentfox.com
      michael.cryan@arentfox.com

      and

      Jackson D. Toof, Esq.
      (admitted *pro hac vice*)
      ARENT FOX LLP
      1717 K Street, NW
      Washington, DC 20006
      Telephone: (202) 857-6000
      Facsimile: (202) 857-6395
      jackson.toof@arentfox.com

# EXHIBIT 4

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | x : | Chapter 11 |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*,[1] | : : : | Case No. 15-01145 (ABG) |
|  | : | (Jointly Administered) |
| Debtors. | : x |  |
|  | x |  |
| CAESARS ENTERTAINMENT OPERATING COMPANY, INC., *et al.*, | : : : |  |
| *Plaintiffs,* | : : | Chapter 11 |
| vs. | : : | Adversary Case No. 15-00149 |
| BOKF, N.A., WILMINGTON SAVINGS FUND SOCIETY, FSB, MEEHANCOMBS GLOBAL CREDIT OPPORTUNITIES MASTER FUND, LP, RELATIVE VALUE-LONG/SHORT DEBT PORTFOLIO, A SERIES OF UNDERLYING FUNDS TRUST, SB 4 CF LLC, CFIP ULTRA MASTER FUND, LTD, TRILOGY PORTFOLIO COMPANY, LLC, AND FREDERICK BARTON DANNER, | : : : : : : : : : : : |  |
| *Defendants.* | : x |  |

## DEFENDANT BOKF, N.A.'S ANSWER AND AFFIRMATIVE DEFENSES
## TO THE DEBTORS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

BOKF, N.A. ("BOKF" or the "Trustee"), solely in its capacity as successor trustee under

the Indenture dated as of April 16, 2010 (as supplemented or amended, the "2010 Indenture") for

the 12.75% Second-Priority Senior Secured Notes Due 2018 issued by Caesars Entertainment

---

[1] The last four digits of Caesars Entertainment Operating Company, Inc. ("CEOC")'s tax identification number are 1623. Due to the large number of Debtors in these chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/CEOC.

## I.    ANSWER TO "THE DISPUTED TRANSACTIONS"

14.     *Over the past several years, CEC initiated a series of asset transfers and capital markets transactions to restructure and manage CEOC's debt and provide CEOC with liquidity. The primary subject transactions include the following (collectively, the "Disputed Transactions").*

- *The "CIE Transactions": In May 2009, the Debtors transferred their interest in the World Series of Poker ("WSOP") intellectual property to non-Debtor affiliate Caesars Interactive Entertainment ("CIE") in exchange for certain preferred shares in CIE, which were valued at $15 million. CEOC retained the right to use the WSOP trademark and intellectual property in certain contexts pursuant to a perpetual, royalty-free license. In September 2011, the Debtors transferred their rights to host WSOP tournaments to CIE for $20.5 million in cash.*

- *The "CERP Transaction": In fall 2013, CEC refinanced the debt associated with the six CMBS properties, which was set to mature in early 2015. In October 2013, the Debtors transferred their interests in the Octavius Tower and Project Linq, a retail, dining, and entertainment development, to CERP for $80.7 million in cash, the retirement of $52.9 million of CEOC notes, and the maintenance of certain indirect benefits.*

- *The "Growth Transaction": In fall 2013, as a part of a series of transactions resulting in the formation of CGP, the Debtors transferred their interests in (i) the Planet Hollywood Resort & Casino in Las Vegas, (ii) the Horseshoe Baltimore project, and (iii) 50% of the management fees associated with these properties to CGP for $360 million in cash.*

- *The "Four Properties Transaction": In spring 2014, the Debtors transferred their interests in (i) four casino properties (The Quad, Bally's Las Vegas, The Cromwell, and Harrah's New Orleans) and (ii) 50% of the management fees associated with these properties to CGP for approximately $1.8 billion of cash and CGP's assumption of a $185 million credit facility used to renovate The Cromwell.*

- *The "Shared Services Joint Venture": In spring 2014, as part of the Four Properties Transaction, CEOC entered into a shared services joint venture, CES, with CEC, CEOC, and Caesars Growth Properties Holdings, LLC. The joint venture partners executed an enterprise services and license agreement under which CEOC contributed to CES a worldwide license to certain intellectual property, including Total Rewards®, and received a 69% ownership stake plus 33% voting rights in CES.*

- *The "B-7 Refinancing": In May and June 2014, CEOC refinanced short-term maturities with $1.75 billion of new term loans, and amended its First Lien Credit Agreement to extend maturities and provide covenant relief. As part of the B-7 Refinancing, CEC sold five percent of its stock in CEOC to unaffiliated investors, which triggered a release of CEC's guarantee of certain CEOC debt.*

- *The "Senior Unsecured Notes Transaction": In August 2014, CEOC and CEC purchased approximately $155 million in 6.50% Senior Notes due 2016 ("2016 Notes") and 5.75% Senior Notes due 2017 ("2017 Notes" and, together with the 2016 Notes, the "Senior Unsecured Notes") from non-affiliated holders, CEC contributed $426.6 million of Senior Unsecured Notes to CEOC for cancellation, and CEOC amended its Senior Unsecured Notes Indentures to confirm the release of CEC's guarantee of certain CEOC debt had occurred in connection with the B-7 Refinancing. Through this transaction, CEOC reduced its outstanding indebtedness by approximately $582 million.*

**ANSWER:** BOKF denies that CEC's sale of five percent of its stock in CEOC to purported "unaffiliated investors," as part of the B-7 Refinancing or the Senior Unsecured Notes Transaction and the amendments of the Senior Unsecured Notes Indentures triggered a release of CEC's Parent Guarantee of the 12.75% Second Priority Notes under the 2010 Indenture. BOKF is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 14 of the Complaint and therefore denies the same and demands strict proof thereof.

15.    *These Disputed Transactions are central to these chapter 11 proceedings. As the Court noted earlier this week, these transactions "appear[] [to be] a central issue in this case" that will be the subject of multiple investigations in this bankruptcy. Mem. Op. dated March 9, 2015, (Dkt. No. 633), at 8.*

**ANSWER:** BOKF admits that these Disputed Transactions are transactions that must be investigated in these chapter 11 proceedings. BOKF further admits the Debtors quote an excerpt from the Court's Memorandum Opinion [Dkt. No. 633], and respectfully refers the Court to the Memorandum Opinion [Dkt. No. 633] for its actual language and complete contents. BOKF is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 15 of the Complaint and therefore denies the same and demands strict proof thereof.

## II.   ANSWER TO "THE ACTIONS"

16.   *The Disputed Transactions are also the subject of four different lawsuits pending in Delaware Chancery Court and the Southern District of New York. These four lawsuits (the Actions) were brought by various trustees and holders of second lien and unsecured notes issued by CEOC, against CEOC, CEC, and certain of their affiliates and directors. In general, the Actions claim that the Disputed Transactions were unlawful, that they were fraudulent transfers, that they breached certain covenants under the applicable note indentures, and that their approval by the company's directors were violations of their fiduciary duties. The four lawsuits are as follows:*

**ANSWER:**   BOKF denies that the Disputed Transactions are the "subject" of the BOKF Action, and states that the subject of the BOKF Action is non-debtor CEC's irrevocable and unconditional guarantee of the 12.75% Second Priority Notes and CEC's breach of the 2010 Indenture for attempting to terminate and/or release its Parent Guarantee thereunder.   BOKF denies the remaining allegations in Paragraph No. 16 of the Complaint to the extent they are directed at the BOKF Action.   BOKF is without knowledge or information sufficient to form a belief as to the truth of the allegations as they pertain to the other defendants or the Other Actions and therefore denies the same and demands strict proof thereof.

17.   *The Wilmington Savings Action:* On August 4, 2014, the indenture trustee for certain Second Lien Notes commenced an action against CEOC and certain non-debtor affiliates, including CEC, CGP, CACQ, CERP, CES, as well as certain CEC and CEOC directors. The lawsuit, captioned Wilmington Savings Fund Society, FSB v. Caesars Entertainment Corporation, C.A. No. 10004 VCG, is pending in the Court of Chancery of the State of Delaware. The trustee, Wilmington Savings, expressly alleges that it is bringing derivative claims in the name of CEOC, including claims for breach of fiduciary duty and waste of corporate assets by CEOC's directors, breach of fiduciary duty and aiding and abetting breach of fiduciary duty by CEC's directors, and actual and constructive fraudulent transfers. See Compl. ¶¶ 167-199. The trustee also brings claims for breach of the 2009 Indenture and declaratory relief with respect to CEC's guarantee under a certain Second Lien Notes indenture. The claims in the lawsuit all arise out of and relate to the CIE, CERP, Growth, Four Properties, and B-7 Refinancing Transactions, as well as the Shared Services Joint Venture.*

**ANSWER:**   BOKF admits that Wilmington Savings Fund Society, FSB, solely in its capacity as successor Indenture Trustee for the 10% Second-Priority Senior Secured Notes due 2018 ("WSFS"), filed a complaint on August 4, 2014, against CEOC and certain non-debtor

## V.    ANSWER TO "THE DEBTORS' INDEMNIFICATION OBLIGATIONS"

24.    *Debtor CEOC has indemnification obligations to certain Non-Debtor Affiliates based on its bylaws. CEOC's bylaws provide for the broad indemnification of its current and former directors, officers, and employees. These obligations cover defense and settlement costs associated with claims arising out of an act or omission committed in good faith while acting as an officer, director, or employee.*

**ANSWER:**  BOKF denies that the BOKF Action creates additional indemnification

obligations, and states that if CEC is found liable on the Parent Guarantee under the 2010

Indenture and pays CEOC's obligation, CEC will assume BOKF and the 12.75% Second Priority

Noteholders' claims in the bankruptcy case.  BOKF is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 24 of the

Complaint to the extent they are directed at the BOKF Action.  BOKF is without knowledge or

information sufficient to form a belief as to the truth of the allegations as they pertain to the other

defendants or the Other Actions and therefore denies the same and demands strict proof thereof.

## VI.    ANSWER TO "THE CONTINUATION OF THE ACTIONS WILL BE DETRIMENTAL TO THE DEBTORS' ESTATE"

25.    *If the Actions continue, and are not stayed or enjoined, the Debtors' estate will be harmed and their reorganization efforts will be jeopardized.*

**ANSWER:**  BOKF denies that the Debtors' estate will be harmed and their

reorganization efforts will be jeopardized if the BOKF Action continues.  BOKF is without

knowledge or information sufficient to form a belief as to the truth of the allegations as they

pertain to the other defendants or the Other Actions and therefore denies the same and demands

strict proof thereof.

26.    *First, the Actions seek to litigate claims that are themselves property of the estate. The Actions bring multiple claims in the name of CEOC, including claims for fraudulent transfer, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and corporate waste. These claims all arise out of harm done to the estate via the Disputed Transactions, and any recovery obtained from them would be for the benefit of all creditors—not just the individual plaintiff bringing the suit. These claims, therefore, are property of the estate for the*

*estate itself to prosecute. The Actions also bring claims asserting that CEC is obligated under parent guarantees of second lien and unsecured notes issued by CEOC—and those claims are based on the Disputed Transactions, against the same defendants, pursuing the same pool of money.*

**ANSWER:**  BOKF admits that the BOKF Action brings claims asserting that non-debtor CEC is obligated under the Parent Guarantee of the 12.75% Second Priority Notes issued by CEOC, but denies that the claims in the BOKF Action are "based on the Disputed Transactions, against the same defendants, pursuing the same pool of money."  BOKF respectfully refers the Court to the BOKF Complaint, which speaks for itself, for a full and complete reading of its content, but denies any characterization thereof.  BOKF denies the remaining allegations in Paragraph No. 26 of the Complaint to the extent they are directed at the BOKF Action.  BOKF is without knowledge or information sufficient to form a belief as to the truth of the allegations as they pertain to the other defendants or the Other Actions and therefore denies the same and demands strict proof thereof.

27.   *Second, the Actions threaten the Debtors' reorganization altogether. A substantial source of recovery by the Debtors' stakeholders will be any contribution to the Debtors' estate from CEC—whether pursuant to the existing RSA which calls for CEC to provide contributions with a value of at least $1.5 billion, pursuant to a different settlement agreement, or pursuant to a litigated resolution. That contribution will be made to resolve claims related to the Disputed Transactions, including claims related to CEC's guarantee of debt issued by CEOC. The Actions, however, seek to reinstate CEC's parent guarantee of CEOC's second lien and senior unsecured notes, totaling approximately $5.2 billion and $530 million, respectively, on the petition date—and if those Actions were successful, CEC likely would be unable to make a substantial contribution to the Debtors' estate. As of September 30, 2014, CEC (exclusive of its interest in CEOC) had total current assets of approximately $2.1 billion, and its current market capitalization is approximately $1.4 billion. Thus, unless stayed, the Actions pose a substantial threat to the Debtors' restructuring efforts.*

**ANSWER:**  BOKF admits that the BOKF Action brings claims asserting that non-debtor CEC is obligated under the Parent Guarantee of the 12.75% Second Priority Notes and thus is an action to enforce the Parent Guarantee, not "reinstate CEC's parent guarantee[.]"  BOKF respectfully refers the Court to the BOKF Complaint for a full and complete reading of its

Dated: April 10, 2015
Chicago, Illinois

Attorneys for BOKF, N.A. solely in its
capacity as successor Indenture Trustee for
the 12.75% Second-Priority Senior Secured
Notes due 2018

**FOLEY & LARDNER LLP**

By:   /s/ Mark F. Hebbeln
      Mark F. Hebbeln, Esq.
      (ARDC No. 6272385)
      Harold L. Kaplan, Esq.
      (ARDC No. 3125293)
      FOLEY & LARDNER LLP
      321 North Clark Street, Suite 2800
      Chicago, IL 60654-5313
      Telephone: (312) 832-4500
      Facsimile: (312) 832-4700
      mhebbeln@foley.com
      hkaplan@foley.com

**ARENT FOX LLP**

      Andrew I. Silfen, Esq.
      (admitted *pro hac vice*)
      Mark B. Joachim, Esq.
      (admitted *pro hac vice*)
      Michael S. Cryan, Esq.
      ARENT FOX LLP
      1675 Broadway
      New York, NY 10019
      Telephone: (212) 484-3900
      Facsimile: (212) 484-3990
      andrew.silfen@arentfox.com
      mark.joachim@arentfox.com
      michael.cryan@arentfox.com

      and

      Jackson D. Toof, Esq.
      (admitted *pro hac vice*)
      ARENT FOX LLP
      1717 K Street, NW
      Washington, DC 20006
      Telephone: (202) 857-6000
      Facsimile: (202) 857-6395
      jackson.toof@arentfox.com

- 30 -

# EXHIBIT 5

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,[1]<br><br>*Debtors.* | Chapter 11<br><br>Case No. 15-01145 (ABG)<br><br>(Jointly Administered) |
| CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>BOKF, N.A., *et al.*<br><br>*Defendants.* | Chapter 11<br><br>Adversary Case No. 15-00149 |

## JOINT PRETRIAL BRIEF OF WSFS AND BOKF[2]

1.      Under the control and direction of their corporate parent, non-debtor Caesars

Entertainment Corp. ("CEC"), the Debtors seek to enjoin direct claims for enforcement of CEC's

contractual guarantee of nearly $5.5 billion in notes held or represented by the Defendants, now

pending in three cases before the Southern District of New York and one before the Delaware

Chancery Court (the "Guarantee Actions").  Those claims are asserted only against CEC (not the

Debtors) and are not property of the bankruptcy estate.  The automatic stay does not apply to

them and, absent an injunction, the Defendants will pursue the claims in their chosen *fora*.

2.      The Debtors' request for an injunction in favor of their non-debtor parent is

extraordinary.  Just yesterday, Judge Scheindlin of the Southern District of New York

emphatically rejected CEC's request to postpone consideration of BOKF's proposed motion for

summary judgment, noting:

---

[1]    A complete list of the Debtors may be obtained at https://cases.primeclerk.com/CEOC.

[2]    This brief is filed by Defendants Wilmington Saving Fund Society, FSB ("WSFS") and
BOKF, N.A. ("BOKF").

## I.    BACKGROUND[3]

13.     In 2005 and 2006, a captive subsidiary of CEC – the debtor Caesars

Entertainment Operating Company ("CEOC") – issued approximately $755 million in senior

unsecured notes, of which approximately $241 million remains outstanding and held by entities

unaffiliated with the Debtors.  In 2009 and 2010, CEOC issued approximately $5.2 billion in

four series of second priority notes, all of which remain outstanding.

14.     CEC guaranteed all obligations of CEOC in respect of those notes.  Last year,

however, CEC repudiated its guarantees as CEOC was on the verge of defaulting.

### A.    The Guarantee Actions Seek To Enforce CEC's Contractual Guarantees.

15.     The Defendants initiated the Guarantee Actions to enforce CEC's repudiated

guarantees.  Three of the four Guarantee Actions were filed before the petition date.[4]

16.     Due to CEOC's bankruptcy petition and the automatic stay, the Defendants are

only prosecuting direct claims on the guarantees against nondebtor CEC.  By definition, those

claims are not property of the bankruptcy estate and are not subject to the automatic stay.  Rather,

as Judge Scheindlin observed, they "attempt[] to vindicate noteholders' rights under non-

bankruptcy law, including under the TIA, against a non-debtor."

### B.    The Debtors Seek A Permanent Injunction Of The Guarantee Actions.

17.     The Debtors ask the Court to enter an order "granting an injunction pursuant to

Bankruptcy Code Section 105(a) enjoining and prohibiting the continuation of the [Guarantee]

Actions against the Non-Debtor Affiliates [*i.e.*, CEC] until the effective date of a restructuring

plan or further order of this Court."  Compl. ¶ 50.

---

[3]   Facts referenced here will be set forth in a Stipulation Of Undisputed Facts to be filed before
trial or will be established at trial.

[4]   For more information on the Guarantee Actions, see the preliminary objections to the
Debtors' injunction motion.  (Adv. Pro. ECF 7, 18, 21, 22, 24, 25).

which time CEC's (ultimately unsuccessful) motion to dismiss the WSFS Action was pending

before the Delaware Chancery Court – before filing their Complaint.  This is classic forum

shopping, not a legitimate effort to enhance the prospects of a successful reorganization.

36.     In any event, the RSA is imperiled but not due to the Guarantee Actions.  Rather,

the Debtors breached the RSA by failing to achieve a required "milestone."  They also ceased

restructuring negotiations with their first-lien bank lenders.  The RSA – which was supported by

a minority of the Debtors' creditors even in the best of times and is vigorously opposed by

creditors holding more than $11 billion in claims – cannot possibly serve as the foundation for a

finding that the Guarantee Actions threaten a "successful reorganization."

37.     Tacitly conceding this, the Debtors again have changed position.  They now claim

that a contribution from CEC will be necessary even absent the RSA, whether through settlement

or litigation recoveries.  The Defendants agree that CEC is liable to the bankruptcy estate for the

billions of dollars of fraudulent conveyances it orchestrated through "controversial" prepetition

transactions now under investigation by the Examiner.  But CEC's putative liability for its

prepetition misconduct – no matter how large – provides no grounds for an injunction against the

Defendants' independent claims on causes of action that are not available to the estate and that

have nothing do to with CEC's liability to creditors generally.

38.     For one thing, the Debtors can and should reorganize without a voluntary

"contribution" from CEC if, as is the case in the RSA, CEC's price includes new equity and

blanket releases in favor of CEC, its shareholders, and its affiliates (including the LBO

sponsors), all of whom are liable for billions of dollars of damages to the estate.

39.     More fundamentally, the Debtors have not cited any authority for the proposition

that an injunction can be issued to protect an out-of-the-money shareholder for the purpose of

ensuring that the shareholder can satisfy its own liability to the debtors. To the contrary, the

Seventh Circuit has noted that an injunction against third-party litigation may be appropriate

only in cases where claims against non-debtor parties "depended on the non-debtor's misconduct

with respect to the corporate debtor," typically in situations that "involve transfers from the

debtor to a non-debtor control person or entity." *Teknek*, 563 F.3d at 649 (emphasis in original).

In other words, an injunction may be appropriate where the bankruptcy estate pursues the same

claims that a third-party litigant is pursuing. While CEC certainly is liable and should be held

accountable for "misconduct with respect to the corporate debtor," the Guarantee Actions do not

seek recompense for that liability. Rather, the Guarantee Actions seek to enforce CEC's

individual liability on causes of action not available to the bankruptcy estate.

40.     The two guarantor cases cited by the Debtors are not to the contrary. They

involved small partnerships whose principals were so distracted by litigation on their personal

guarantees that a temporary injunction was warranted. *Gander*, 432 B.R. at 786-87; *In re

Northlake Bldg. Partners*, 41 B.R. 231, 233 (Bankr. N.D. Ill. 1984). As noted, the Debtors have

stipulated away that position. Where, as here, a guarantor will not be prevented from devoting

"time and energy" to the reorganization, no injunction may issue. *See, e.g., GAC Storage*, 489

B.R. at 770 ("restraining the Bank is not justified because the Guarantors' time and energy are

not directed toward the Debtor's reorganization").

41.     If, as the Debtors allege (but have not proven), CEC is unable to satisfy all of its

liabilities, the proper course of action is for CEC to file its own bankruptcy case. If CEC desires

a discharge of its contractual liability to the Defendants, it must do so. It is wholly improper for

CEC to seek an automatic stay and discharge in the absence of bankruptcy relief.

-13-

Dated: May 29, 2015

JONES DAY

By:   _/s/ Timothy W. Hoffmann_____
Timothy W. Hoffmann
77 West Wacker Drive
Chicago, IL 60601

Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester
555 South Flower Street
50th Floor
Los Angeles, CA 90071

Geoff Stewart
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

-and-

KELLEY DRYE & WARREN LLP
Eric R. Wilson
David I. Zalman
101 Park Avenue
New York, NY 10178

*Attorneys for Defendant,*
*Wilmington Savings Fund Society, FSB*

Respectfully submitted,

FOLEY & LARDNER LLP

By:   _/s/ Mark F. Hebbeln_____
Mark F. Hebbeln, Esq.
Harold L. Kaplan, Esq.
Lars A. Peterson, Esq.

321 North Clark Street, Suite 2800
Chicago, IL 60654-5313

-and-

ARENT FOX LLP
Andrew I. Silfen, Esq.
Mark B. Joachim, Esq.
Michael S. Cryan, Esq.

1675 Broadway
New York, NY 10019

Jackson D. Toof, Esq.
Arent Fox LLP
1717 K Street, NW
Washington, DC 20006

*Attorneys for Defendant BOKF, N.A.*

-16-

# EXHIBIT 6

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br>CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,[1]<br>*Debtors.* | Chapter 11<br>Case No. 15-01145 (ABG)<br>(Jointly Administered) |
| CAESARS ENTERTAINMENT<br>OPERATING COMPANY, INC., *et al.*,<br>*Plaintiffs,*<br>*v.*<br>BOKF, N.A., *et al.*<br>*Defendants.* | Chapter 11<br>Adversary Case No. 15-00149 |

## JOINT POST-TRIAL BRIEF OF WSFS AND BOKF

Defendants Wilmington Saving Fund Society, FSB ("WSFS") and BOKF, N.A.

("BOKF" and, collectively, the "Trustees") submit this post-trial brief to summarize and apply

the appropriate legal standards to the evidence adduced at trial on June 3 and 4.

Undefined capitalized terms have the meanings set forth in the Trustees' Joint Pretrial

Brief (Adv. Pro. ECF 132) ("Def. Br."). Trial exhibits are cited as "Def. Ex." and "Pl. Ex." and

the trial transcript is cited as "6/3 Tr." and "6/4 Tr." The Debtors' Pretrial Brief (Adv. Pro.

ECF 129) is cited as "Pl. Br."

---

[1]   A complete list of the Debtors may be obtained at https://cases.primeclerk.com/CEOC.

## I.   PRELIMINARY STATEMENT

1.      The Trustees' guarantee claims do not "depend[] on the non-debtor's misconduct *with respect to the corporate debtor*" and do not "involve transfers *from the debtor* to a non-debtor control person or entity." *In re Teknek, LLC*, 563 F.3d 639, 649 (7th Cir. 2009) (emphasis in original).  They are independent and personal to the Trustees, and seek only to enforce CEC's liability under guarantees contained in indentures it executed long ago.

2.      The Examiner is not investigating the Trustees' guarantee claims, and neither the Debtors nor any other creditor can assert or collect on them for the benefit of the bankruptcy estate.  The Trustees do not seek to recover "the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy" as the claims that the estate threatens (but has not yet asserted) against CEC.  *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998).  The Trustees' guarantee claims do not fall within the category of claims that can be subject to an injunction of the sort described in *Fisher*, and the Court would make new law if it issued the injunction the Debtors request here.

3.      Even if the Court has the power to enter an injunction, the Debtors have not proven that one is warranted.  The Trustees have unsubordinated claims against CEC (not a debtor), with the same priority as all other guarantees CEC has given, via contractual rights obtained at the time the debt was issued.  They are not "jumping the line" any more than any other holder of a guarantee in "the more common case in which a creditor of a bankrupt files a claim against an insurer or guarantor of the bankrupt and is allowed to proceed."  155 F.3d at 882.

4.      An injunction against the Trustees' guarantee claims is not a necessary prerequisite to a successful reorganization.  It will not foster consensus or enhance negotiation.  It will not advance the bankruptcy case.  Much to the contrary, an injunction will harden positions and insulate CEC from the pressure of an adverse decision respecting the guarantees,

governing certain unsecured notes in an effort to remove CEC's guarantee of those obligations,

which allegedly resulted in "the automatic release of CEC's guarantee" under the Indentures.

BOKF Compl. ¶ 146.

### A.   The Trustees Seek Only To Enforce CEC's Contractual Guarantees.

8.      The WSFS Complaint.  On August 4, 2014, WSFS filed its Complaint in the

Delaware Chancery Court against CEC, CEOC, various CEC affiliates, and various officers and

directors of CEC and CEOC.  Only Claims II and III of the WSFS Complaint are relevant to this

adversary proceeding.  Both are directed to CEC alone and both seek only to enforce CEC's

guarantee under the WSFS Indenture.  Claim II alleges breach of contract for denial of the

guarantee, and Claim III requests a declaration that the guarantee "has not been released and

remains valid, binding and enforceable against CEC."  WSFS Compl. ¶¶ 134-54.

9.      Specifically, WSFS alleges that section 12.01(g) of the Indenture keeps CEC's

guarantee in effect until the underlying debt has been paid, *id.* ¶ 148, that section 12.01(f)

prohibits the guarantee from being reduced, impaired or terminated except under the narrow

circumstances set forth in section 12.02(c), *id.* ¶ 149, and that section 12.02(c) does not permit a

release of the guarantee under the facts here, *id.* ¶¶ 137, 150-53.  Accordingly, WSFS asserts that

CEC breached the Indenture by repudiating the guarantee, *id.* ¶¶ 135-42 (Claim II), and requests

a declaration that CEC's guarantee is enforceable, *id.* ¶ 154 (Claim III).  Claims II and III do not

depend on CEC's misconduct with respect to the Debtors and do not seek to avoid or invalidate

the transactions that purportedly released CEC from its guarantee liability.  Rather, WSFS

alleges that the guarantee remains enforceable notwithstanding those transactions.

10.     Other counts in the WSFS Complaint focus on the series of "controversial" asset

transfers engineered by CEC and CEOC between 2010 and 2014, almost all of which predate the

2014 guarantee-stripping transactions.  *Id.* ¶¶ 63-108.  Claim I alleges breach of the WSFS

Indenture against CEOC, *id.* ¶¶ 128-33, and Claims IV through IX assert claims (directly and derivatively on behalf of CEOC) against CEC and other defendants for avoidance of fraudulent transfers, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and waste of corporate assets, *id.* ¶¶ 155-99. Due to CEOC's bankruptcy case, those claims are stayed and should be pursued by the bankruptcy estate on behalf of all creditors. The claims do not relate to the May 2014 stock sale or have anything to do with CEC's attempt to escape its guarantees.[2]

11.   <u>The BOKF Complaint</u>. On March 3, 2015, BOKF filed its Complaint against CEC (and only CEC) in the United States District Court for the Southern District of New York. Like WSFS Claims II and III, BOKF seeks only "to enforce CEC's guarantee obligations" under the BOKF Indenture. BOKF Compl. at 1.

12.   BOKF alleges seven causes of action. Counts I, III and IV allege breach of the BOKF Indenture for failure to honor the guarantee. *Id.* ¶¶ 160-67, 177-95. Count II requests a declaration that CEC's guarantee "has not been terminated or released and remains valid, binding and enforceable against CEC." *Id.* ¶¶ 168-76. Counts VI and VII assert claims under the BOKF Indenture for intentional interference with contractual relations and breach of the duty of good faith and fair dealing due to CEC's disavowal of the guarantee. *Id.* ¶¶ 211-24.

13.   Count V seeks a declaration that the purported termination and release of CEC's guarantee violates section 316(b) of the Trust Indenture Act of 1939 (the "<u>TIA</u>"). *Id.* ¶¶ 196-210; *see* 15 U.S.C. §§ 77aaa to 77bbb. BOKF alleges that section 316(b) prohibits impairment of a noteholder's right to principal and interest absent consent, and that the alleged removal of

---

[2]   One of the now-stayed WSFS claims relates to the "B-7" refinancing transaction that also was announced in May 2014 but is entirely distinct from CEC's May 2014 stock sale. WSFS Compl. ¶¶ 117-19. That claim is for waste of corporate assets and self-dealing due to CEOC's use of loan proceeds to pay off debt held by CEC affiliates and other obligations that bore lower interests rates and were not yet due. Claims II and III of the WSFS Complaint do not involve the May 2014 refinancing in any way, or even mention it.

CEC's guarantee via the May and August 2014 transactions violated that prohibition. BOKF
Compl. ¶¶ 198-205. To the extent required (and BOKF contends it is not), BOKF also alleges
that the purported guarantee-stripping transactions constituted an out-of-court restructuring in
violation of the TIA. *Id.* ¶ 197.

14.     While Count V addresses some of the controversial prepetition transactions that
also may be the subject of estate causes of action (including those being investigated by the
Examiner), it does so as part of BOKF's contention that the transactions comprised a
restructuring that violated the TIA. BOKF's allegations relate only to the *effect* of those
transactions on the noteholders' substantive right to recover principal and interest, and BOKF
does not seek to avoid or invalidate the transactions or recover any property transferred as part of
them. BOKF's theory of recovery is entirely different from any claim available to the estate.
BOKF invokes the TIA's "broad protection against nonconsensual debt restructuring and . . . [of]
a bondholder's right to receive payment of both principal and interest." *Id.* ¶ 200. The estate, on
the other hand, has claims for avoidance of fraudulent conveyance, breach of fiduciary duty and
the like. The estate has no claim under the TIA, while BOKF asserts no claim for avoidance and
does not seek to invalidate any of the prepetition transactions.

**B.      *Fisher* and *Teknek* Authorize An Injunction Only Where A Creditor
Asserts Claims For Misconduct With Respect To The Corporate Debtor
Relating To Transfers Made To Non-Debtor Insiders.**

15.     The Trustees assert claims only against CEC and only for enforcement of CEC's
guarantees. The Trustees are not pursuing claims against others and not asserting rights of the
bankruptcy estate or the Debtors' creditors generally. Nothing in the Trustees' actions to enforce
the CEC guarantees hinges on avoidance or validity of the "controversial" prepetition
transactions. The Seventh Circuit's opinions in *Fisher* and *Teknek* establish that the Court lacks
authority to enjoin those strictly personal claims.

> . . . SDI's claim against the alter egos does not depend on the alter egos'
> misconduct with respect to the debtor.

*Id.* at 649 (emphasis in original) (citations omitted).

23.     That is the defining principle.  The Court cannot take the extraordinary step of enjoining litigation pending before another federal or state court unless the claims depend on the defendant's misconduct with respect to the debtor.  "[S]eemingly always" such claims involve transfers made from the debtor to an insider.  Thus, in *Teknek* the Circuit vacated the injunction even "though SDI's claims involve the same pool of money as the trustee's claims, and that money is in the possession of the same defendants."  *Id.*  Why?  Because "the claims are not based on the same acts.  The alter egos looted both Teknek and Electronics.  Those are separate acts, which caused separate injuries to two separate companies, only one of which is in bankruptcy."  *Id.*  As a consequence, the bankruptcy trustee could not pursue SDI's claims for the benefit of the estate and continued prosecution of those claims therefore did not "defeat or impair" the bankruptcy court's jurisdiction.

**C.     The Trustees' Claims Do Not Depend On
        CEC's Misconduct With Respect To The Debtors.**

24.     This case falls squarely within *Teknek*.  As in *Teknek*, the Trustees' guarantee claims against CEC are based on "separate acts" and seek redress for "separate injuries" from the estate's potential claims.  The Trustees' claims are based on CEC's breach of the contractual guarantee and violation of the TIA.  They do not depend on CEC's misconduct with respect to the Debtors.  In contrast, the estate's potential claims are based on CEC's misconduct in looting the Debtors' property.  The bankruptcy estate has no standing or ability to pursue the Trustees' guarantee claims for the benefit of all creditors.  Even if the Trustees' claims allegedly might diminish CEC's ability to satisfy the estate's claims (whether by settlement or judgment), that is no basis for an injunction.

- 9 -

25.    The Debtors agree that the Trustees' guarantee claims do not belong to the estate.
6/3 Tr. 75:1-6, 106:25-107:3 (Millstein).  They also agree that the Examiner is not investigating
the guarantee claims.  6/3 Tr. 131:10-13, 149:5-10 (Millstein); 6/4 Tr. 232:3-6 (Eisenberg).  The
Examiner's mission is to investigate causes of action that would benefit the estate.  He has no
interest in the Trustees' personal claims (which, if successful, would not result in enhanced
recoveries to creditors in these cases).

26.    Instead, the Debtors point to portions of the Trustees' Complaints that reference
the "controversial" prepetition transactions, apparently to show factual overlap between the two
sets of claims.  *Teknek* establishes that an overlap of facts, in and of itself, does not warrant an
injunction.  Moreover, almost all of those prepetition transactions occurred before CEC
repudiated its guarantees and have nothing in common with the Trustees' claims for breach of
the Indentures and declaratory relief.  The May 2014 stock sale referenced in the WSFS
Complaint was a sale of a *CEC* asset – shares it held in CEOC – to a third party, and WSFS has
not demanded that the sale be unwound.  Similarly, BOKF's claim under the TIA does not seek
to avoid or invalidate the prepetition transactions.  Rather, BOKF alleges a violation of the TIA
due to CEC's efforts to terminate or release its guarantee without consent of the second-priority
noteholders.  That is a completely different cause of action than those which may be asserted by
the estate, and it does not depend on CEC's misconduct with respect to the Debtors.  The
prepetition transactions are cited to show that CEC engaged in an out-of-court restructuring, not
to prove wrongdoing or establish avoidance or invalidity.

## III.    THE DEBTORS HAVE NOT ESTABLISHED A BASIS FOR AN INJUNCTION

27.    Even if the Court did have the power to enter an injunction, there is no basis for
one.  The Debtors concede that an injunction is not necessary to a successful reorganization.  6/3
Tr. 78:12-23 (Millstein).  They only speculate that an injunction might "enhance" the likelihood

Dated:  June 26, 2015

JONES DAY

By:  /s/ Timothy W. Hoffmann
Timothy W. Hoffmann
77 West Wacker Drive
Chicago, IL 60601

Bruce Bennett
James O. Johnston
Sidney P. Levinson
Joshua M. Mester
555 South Flower Street
50th Floor
Los Angeles, CA  90071

Geoff Stewart
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113

-and-

KELLEY DRYE & WARREN LLP
Eric R. Wilson
David I. Zalman
101 Park Avenue
New York, NY  10178

*Attorneys for Defendant,*
*Wilmington Savings Fund Society, FSB*

Respectfully submitted,

FOLEY & LARDNER LLP

By:  /s/ Mark F. Hebbeln
Mark F. Hebbeln, Esq.
Harold L. Kaplan, Esq.
Lars A. Peterson, Esq.

321 North Clark Street, Suite 2800
Chicago, IL 60654-5313

-and-

ARENT FOX LLP
Andrew I. Silfen, Esq.
Mark B. Joachim, Esq.
Michael S. Cryan, Esq.

1675 Broadway
New York, NY 10019

Jackson D. Toof, Esq.
Arent Fox LLP
1717 K Street, NW
Washington, DC  20006

*Attorneys for Defendant BOKF, N.A.*