UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BOKF, N.A., solely in its capacity as successor Indenture Trustee for the 12.75% Second-Priority Senior Secured Notes due 2018,**<br><br>Plaintiff,<br><br>v.<br><br>**CAESARS ENTERTAINMENT CORPORATION,**<br><br>Defendant. | Case No. 1:15-cv-01561 (SAS) |
| **UMB BANK, N.A. solely in its capacity as Indenture Trustee under those certain indentures, dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s 11.25% Notes due 2017; dated as of February 14, 2012, governing Caesars Entertainment Operating Company, Inc.'s 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020; dated February 15, 2013, governing Caesars Entertainment Operating Company, Inc.'s 9% Senior Secured Notes due 2020,**<br><br>Plaintiff,<br><br>v.<br><br>**CAESARS ENTERTAINMENT CORPORATION,**<br><br>Defendant. | Case No. 1:15-cv-04634 (SAS)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE DEFENDANT'S EXPERT WITNESS JAMES GADSDEN ON _DAUBERT_ GROUNDS** |

## TABLE OF CONTENTS

                                                                                         Page

I.    OVERVIEW ................................................................................................................1

II.    ARGUMENT ..............................................................................................................2

      A.  Mr. Gadsden's Opinion As To How Section 12.02(c) Should be Interpreted is Inadmissible ....................................................................................................................3

      B.  Mr. Gadsden's Assertion That the Guarantee Was One of "Financial Reporting" is Barred by the Law of the Case Doctrine ..............................................................4

      C.  Mr. Gadsden's Opinion That the Guarantee is not a "Core Provision" is an Inadmissible Conclusion of Law. ......................................................................7

III.   CONCLUSION .........................................................................................................8

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Algarin v. New York City Dep't of Correction*,
  460 F. Supp. 2d 469 (S.D.N.Y. 2006)..................................................................................4

*BOKF, N.A. v. Caesars Entm't Corp*,
  Nos. 15-cv-1561 (SAS), 15-cv-4634 (SAS), 2015 WL 5076785 (S.D.N.Y.
  Aug. 27, 2015) ...................................................................................................................3, 4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)............................................................................................................1, 2

*In re Rezulin Products Liability Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................................2, 4

*Israel v. Spring Indus.*,
  No. 98 CV 5106(ENV)(RML), 2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006) .........................4

*Kuhmo Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)...............................................................................................................2

*MTX Commc'ns Corp. v. LDDS/Worldcom, Inc.*,
  132 F. Supp. 2d 289 (S.D.N.Y. 2001)....................................................................................6

*Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*,
  No. 11 Civ. 1237(LGS)(JCF), 2014 WL 1468118 (S.D.N.Y Apr. 15, 2014)...........................6

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) .......................................................................................................3

*Weiner v. Snapple Beverage Corp.*,
  No. 07 Civ. 8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) .............................................8

*Zaccaro v. Shah*,
  745 F. Supp. 2d 508 (S.D.N.Y 2010).....................................................................................3

**Rules**

Fed. R. Evid. 402 ......................................................................................................................5

Fed. R. Evid. 702 ...................................................................................................................2, 5

Plaintiffs BOKF, N.A. ("BOKF"), solely in its capacity as successor indenture trustee for the 12.75% second-priority senior secured notes due 2018 and issued pursuant to the indenture dated as of April 16, 2010 (as supplemented and amended, the "12.75% Second Priority Indenture"), and UMB Bank, N.A. ("UMB," and together with BOKF, the "Plaintiffs"), solely in its capacity as indenture trustee under those certain indentures (as supplemented and amended, the "First Lien Indentures," and together with the 12.75% Second Priority Indenture, the "Indentures"), dated as of June 10, 2009, governing Caesars Entertainment Operating Company, Inc.'s ("CEOC's") 11.25% Notes due 2017; dated as of February 14, 2012, governing CEOC's 8.5% Senior Secured Notes due 2020; dated August 22, 2012, governing CEOC's 9% Senior Secured Notes due 2020; dated February 15, 2013, governing CEOC's 9% Senior Secured Notes due 2020, respectfully submit this memorandum of law in support of their *Daubert* motion pursuant to Fed. R. Evid. 702 to exclude the proposed expert testimony of Defendant Caesars Entertainment Corporation's ("CEC") proffered expert witness James Gadsden ("Gadsden").

## I.   OVERVIEW

In attempting to bolster its absurd argument that "and" means "or," CEC has offered an attorney, James Gadsden ("Gadsden") to provide "expert testimony" that contradicts the Court's findings and improperly presents legal argument as expert opinion.[1]  Gadsden's opinions are threefold: (1) that it would not be commercially reasonable to require the satisfaction of all three clauses of Section 12.02(c)(i)-(iii) in the Indentures to release the Parent Guarantee; (2) that the Parent Guarantee was provided to facilitate CEOC's financial reporting, not to provide credit

---

[1] CEC served the Expert Report of James Gadsden on December 18, 2015 (the "Gadsden Report"). References to the Gadsden Report are cited: Gadsden Rpt. ¶ ____, his report is attached as Exhibit A to the Crichlow Declaration. Plaintiffs deposed Gadsden on February 10, 2016 (the "Gadsden Deposition"). References to the Gadsden Deposition transcript are cited:  Gadsden Tr. ____, excerpts from that Transcript are attached as Exhibit B to the Crichlow Declaration.

support; and (3) that the guarantee is not one of the "core terms" of the Indentures.  Gadsden Rpt. ¶ 2-27.

Gadsden's opinions should be excluded from trial, as they run afoul of the Court's previous rulings as well as the rules on expert opinions set forth by the Federal Rules of Evidence and relevant case law.

## II.   ARGUMENT

Expert testimony is only admissible when offered by qualified experts whose opinions are scientifically valid and whose conclusions will assist the trier of fact in determining a fact in issue.  Fed. R. Evid. 702.  Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on *sufficient* facts or data, (2) the testimony is the product of *reliable* principles and methods, and (3) *the witness has applied the principles and methods reliably to the facts of the case. Id.* (emphasis added).

This rule requires trial courts to ensure that expert testimony is reliable and relevant before admitting that testimony.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).  Additionally, a party may not proffer an "expert" serving as a mere advocate. *In re Rezulin Products Liability Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) ("plaintiffs' experts propose improperly to assume the role of advocates for the plaintiffs' case by arguing the intent or motives underlying [the conduct], a transgression that has resulted in the exclusion of 'expert' testimony as to the 'real motive behind certain business transactions.'")  As the proponent of the proffered expert

testimony, CEC bears the burden of establishing the admissibility of the proffered expert testimony "by a preponderance of proof." *Daubert* at 592, n.10. (citation omitted).

> A. **Mr. Gadsden's Opinion As To How Section 12.02(c) Should be Interpreted is Inadmissible**

Gadsden's first opinion, that "it would not be commercially reasonable to require the satisfaction of all three clauses of Section 12.02(c)(i)-(iii)" (Gadsden Rpt. ¶ 2) is inappropriate legal opinion as to the meaning of contractual terms. Additionally, the basis of his opinion, which is "the custom and practice in drafting indentures" (Gadsden Tr. at 14:20-21), is extrinsic evidence that courts routinely exclude as inappropriate parol evidence. Gadsden's opinion is also entirely irrelevant and improperly based solely on his say-so.

Gadsden seeks to usurp the Court's role of interpreting contractual language by urging the ultimate conclusion: that the conditions listed in Section 12.02(c)(i)-(iii) should be interpreted disjunctively. "Under New York law, '[t]he court's function in interpreting a contract is to apply the meaning intended by the parties, as derived from the language of the contract in question.'" *BOKF, N.A. v. Caesars Entm't Corp.*, Nos. 15-cv-1561 (SAS), 15-cv-4634 (SAS), 2015 WL 5076785, at *13 (S.D.N.Y. Aug. 27, 2015) (internal citations omitted). The Second Circuit "requires the exclusion of testimony which states a legal conclusion because such testimony does not aid the trier of fact." *Zaccaro v. Shah*, 745 F. Supp. 2d 508, 517 (S.D.N.Y 2010) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)).

Gadsden's opinion is inappropriate because Section 12.02(c)(i)-(iii) is unambiguous, as admitted by CEC in its Opposition to Plaintiffs' Motion for Partial Summary Judgment dated December 4, 2015. *BOKF* ECF 64 p. 6 n.2. Parol evidence, particularly evidence of commercial reasonableness, is thus immaterial and inadmissible. *See*, *BOKF* ECF 87 at 8, 10-11. As the Court held in its August 27, 2015 Opinion, evidence "relating to the noteholders' understanding

3

of the Guarantee is inadmissable where the language of the contract is unambiguous." *BOKF, N.A.*, 2015 WL 5076785, at *8.

To the extent Gadsden is arguably not offering a legal conclusion, his "opinion as to how market participants would understand 12.02(c) of the trustee case indentures" (Gadsden Dep. Tr. 32:19-33:6) is simply not relevant to any inquiry at issue in this case. The understanding of hypothetical market participants has no bearing on the meaning of the Indentures' contractual terms. *See, e.g., In re Rezulin*, 309 F. Supp. 2d 531 at *555 (excluding as speculative testimony of two experts who offered opinions of what "doctors in general think.").

Gadsden's opinion on commercial reasonableness should also be excluded because he purports to rely on experience in reaching this conclusion, but fails to provide any insight into how his experience sheds light on the commercial reasonableness of the Indentures. *See* Gadsden Dep. Tr. 34:3-36:4. "If [a] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached…and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Israel v. Spring Indus.*, No. 98 CV 5106(ENV)(RML), 2006 WL 3196956, at *2 (E.D.N.Y. Nov. 3, 2006); *see also Algarin v. New York City Dep't of Correction*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006)("An anecdotal account of one's experience, however extensive or impressive the numbers it emcompasses, does not by itself equate to a methodology."). Ultimately, Gadsden's opinion should be excluded because it fails to meet the requirements of an expert opinion, and is merely legal advocacy in another form.

    **B.**    **Mr. Gadsden's Assertion That the Guarantee Was One of "Financial Reporting" is Barred by the Law of the Case Doctrine**


Gadsden's second opinion, that "the guarantee was provided to facilitate financial reporting for CEOC" (Gadsden Rpt. ¶ 2) is contrary to the Court's prior holding, which is law of the case, that "[t]here is no indication from any other section of the indenture that the Guarantee was put in place merely to facilitate regulatory filings. Thus, the plain language of the Guarantee section indicates that it provided credit support."  *BOKF, N.A.*, 2015 WL 5076785, at *7.  *See also*, *BOKF* ECF 90 at 2-3.  Accordingly, his testimony is not admissible because it is irrelevant under F.R.E. 402.  Moreover, as the Court observed in the hearing of February 8, 2016, Mr. Gadsden's testimony is impermissible extrinsic evidence. (Feb. 8, 2016 Hearing Tr[2]. at 4:16-20,"I don't think I'm going to let Gadsden tell me the purpose of putting in the Guarantee, which is extrinsic evidence.")

Gadsden's opinion about hypothetical market participants' understanding of the purpose of the guarantee is, again, not a relevant inquiry in determining the meaning of the Indentures' provisions.  Even if one accepts his conclusion that CEC entered into the Indentures as a Parent Guarantor in order to take advantage of Regulation S-X Rule 3-10's exception to relevant reporting requirements, that does not change the obligations that CEC assumed when it signed the Indentures as Parent Guarantor.

Additionally, Gadsden's analysis is not grounded in any generally accepted methodology, and thus cannot meet the standard that expert testimony be based on "sufficient facts or data" and be "the product of reliable principles and methods." Fed. R. Evid. 702.  Specifically, in reaching his conclusion about the purpose of the guarantee provision Gadsden reviewed 89 indentures filed with the SEC between 2008 and 2013.  However, he failed to move beyond his own reading of those indentures to determine whether any authoritative source could confirm or contradict his opinions.

---

[2] Excerpts from the February 8, 2016 Hearing Transcript are attached as Exhibit C to the Crichlow Declaration.

> Q. So, do you know how many, if any, of the indentures that you reviewed ultimately led or ended up with a release of the parent guarantee?
>
> A. I don't know how many.
>
> Q. You didn't look to see?
>
> A. No.
>
> Q. Do you know whether any court has opined on the validity of releases from those 89 indentures?
>
> A. I don't know of any.

Gadsden Dep. Tr. 162:2-163:10.

An expert's opinion is not the product of "sufficient facts or data" if he or she fails to conduct sufficient due diligence necessary to provide the court with the assurance that the expert has considered all the facts relevant to his or her analysis. *See MTX Commc'ns Corp. v. LDDS/Worldcom, Inc.*, 132 F. Supp. 2d 289, 293 (S.D.N.Y. 2001) (excluding expert testimony because the expert did not appropriately consider all variables important to his analysis); *see also Oleg Cassini, Inc. v. Electrolux Home Products, Inc.*, No. 11 Civ. 1237(LGS)(JCF), 2014 WL 1468118, at *8-9 (S.D.N.Y Apr. 15, 2014) (striking art appraiser's expert testimony where the expert provided her impression of the industry standard but failed to compare the sketches at issue to others of similar value). When questioned about the application of the 89 indentures to his analysis, Gadsden could not point to a *single indenture* that he considered to be one of financial reporting and made no attempt to draw any comparisons to the Indentures at issue:

> Q. So, did you identify specific indentures that you felt were more oriented towards releasing the financial reporting -- I'm sorry. Let me say that again. Did you identify specific indentures that you felt were more oriented towards financial reporting specifically, like here are the five indentures I think qualify under what you just set out?

6

> A. So, we have the -- that's what -- that's how I identified the indentures at issue in our case. I don't remember making a -- identifying as a category among the other 89, these are the ones that I considered oriented towards financial reporting.

Gadsden Tr. at 161:8-23.

Again, Gadsden's report lacks the hallmarks of a true expert opinion, and should be excluded as legal argument.

### C.     Mr. Gadsden's Opinion That the Guarantee is not a "Core Provision" is an Inadmissible Conclusion of Law.

Gadsden's final opinion, that the Guarantee is not a "core term" should not be accepted because it too is a conclusion of law.

Statutory interpretation is a question of law to be decided without reliance on expert testimony. (Feb. 8, 2016 Hearing Tr. at 3:7-8.) Therefore, the interpretation of the elements of a violation of Section 316(b), including the meaning of "core term," is within the exclusive provence of the Court. Indeed, Mr. Gadsden admits as much because he admits that it is a question of law for the Court to decide.

> Q. Wouldn't the removal of a guarantee which provides a right to receive payment of the principal and interest on or after the due date of the notes be an impairment under this section?
>
> A. I think that is really a legal question for the Court.

Gadsden Tr. at 183:15-21.

Additionally, Gadsden's opinion should be excluded because he presents no reliable basis for his opinions:

> Q. Is there any SEC guidance that you are relying on in identifying the percentage of noteholders' consent that would be required in order to indicate to you that a provision is core?
>
> A. None that I am aware of.

7

> Q. Are you aware of commonly accepted academic work on that topic?
>
> A. I can't point to anything at the moment.

Gadsden Tr. at 185:16-186:1.

Courts routinely preclude such opinions, noting "[n]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742, 2010 WL 3119452, at *7 (S.D.N.Y. Aug. 5, 2010) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999)).

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court preclude CEC from offering Mr. Gadsden's opinions at trial.

Dated: New York, New York
February 15, 2016

KATTEN MUCHIN ROSENMAN LLP

By:  /s/ David A. Crichlow
    David A. Crichlow
    Craig A. Barbarosh
    Karen B. Dine
    Rebecca Kinburn
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
Tel:　(212) 940-8800
Fax:　(212) 940-8776
Email: craig.barbarosh@kattenlaw.com
       david.crichlow@kattenlaw.com
       karen.dine@kattenlaw.com
       rebecca.kinburn@kattenlaw.com

*Counsel for Plaintiff UMB Bank, N.A. solely in its capacity as successor Indenture Trustee under the relevant Indentures governing the First Lien Notes*

By:  /s/ Andrew I. Silfen
    Andrew I. Silfen
    Michael S. Cryan
    Mark A. Angelov
    Beth M. Brownstein
ARENT FOX LLP
1675 Broadway
New York, NY  10019-5820
Tel:　(212) 484-3900
Fax:　(212) 484-3990
Email: andrew.silfen@arentfox.com
       michael.cryan@arentfox.com
       mark.angelov@arentfox.com
       beth.brownstein@arentfox.com

-and-

    Ralph A. Taylor, Jr., Esq. (*admitted pro hac vice*)
    Jackson D. Toof, Esq. (*admitted pro hac vice*)
    Martin F. Cunniff, Esq. (*admitted pro hac vice*)
ARENT FOX LLP
1717 K Street, N.W.
Washington, D.C. 20006
Tel:　(202) 857-6000
Fax:　(202) 857-6395
Email: ralph.taylor@arentfox.com

jackson.toof@arentfox.com
martin.cunniff@arentfox.com

*Counsel for Plaintiff BOKF, N.A., solely in its capacity as successor Indenture Trustee under the relevant Indenture governing the 12.75% Second Priority Notes*