

ERIC SEILER
eseiler@fklaw.com
212.833.1103

February 17, 2016

BY ECF
Hon. Shira A. Scheindlin
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *BOKF, N.A. v. Caesars Entertainment Corporation*, 15-CV-1561
              *UMB Bank, N.A. v. Caesars Entertainment Corporation*, 15-CV-4634

Dear Judge Scheindlin:

      We represent defendant Caesars Entertainment Corporation ("CEC"). We write in response to plaintiffs' letter of February 15 proposing a bifurcation of the trial set to begin on March 14 (the "Letter"). CEC opposes bifurcation. The fact that plaintiffs pled two bases – statutory and contractual – on which they contend CEC should be found liable for wrongfully terminating its guarantee of CEOC's obligations under the indentures (the "Parent Guarantee") does not entitle plaintiffs to two trials. Otherwise, bifurcated trials would be the rule, not the exception. *See Lennon v. Seaman*, 2002 WL 109525, at *10 (S.D.N.Y. Jan. 28, 2002) (denying bifurcation of interrelated claims); *SEC v. Reserve Mgmt. Co.*, 2010 WL 11248673, at *1-*3 (S.D.N.Y. Nov. 20, 2010) (same).

      It appears to us that plaintiffs have proposed the opposite of the bifurcation suggested by the Court at the February 8 conference (the "Conference"). Plaintiffs would require testimony at two trials, not only by many of the same witnesses about the transactions that terminated the Parent Guarantee, but also by many of the same witnesses about years' worth of complex "Disputed Transactions" – a subject which sweeps far more broadly than the Parent Guarantee and its termination. At the Conference, Your Honor told plaintiffs they had "misled the Court" (Conference Tr. 49:15) with a two-week trial schedule, when "two months, maybe three months" (*id.* 48:3-4) were needed. Now plaintiffs' proposed bifurcation exacerbates the problem by calling for two trials, each of which substantially exceeds two to three weeks, and each of which could approach two months or more (not to mention a third trial, for the *MeehanCombs* and *Danner* cases). Plaintiffs' proposal is inefficient, it is at odds with Federal Rule of Civil Procedure 42(b)'s mandate "to expedite and economize," and it is also profoundly prejudicial to CEC.

**Background – Plaintiffs Have Created a Problem for the Trial of These Cases**

      On February 5, plaintiffs wrote the Court stating that the trial would concern the Disputed Transactions, not only the Parent Guarantee, and arguing that evidence of the

Disputed Transactions was uniquely relevant to proving their claims for breach of the implied covenant of good faith and fair dealing, and intentional interference with contractual relations. (*BOKF v. CEC*, Dkt. # 85 at 2; *UMB v. CEC*, Dkt. # 89 at 2)  Whatever prior indication of this could have been fairly gleaned from the pleadings, the magnitude of what plaintiffs now described as their intended proof was inconsistent with their earlier statement to the Court on November 10, at the conference to schedule the trial. On November 10, plaintiffs told the Court that trial would last "two weeks," and "plaintiffs' case is going to be introduced through just a couple of witnesses, maybe missing one or two. But that would be short." (Tr. 20:19-22) This schedule might have made sense for a trial only about the Parent Guarantee – though it is clear from plaintiffs' proposed pre-trial order of February 12, listing 20 fact witnesses (who all were deposed about the Parent Guarantee) and four experts (who all opined about the Parent Guarantee), that even for a trial limited to the Parent Guarantee, two to three weeks likely would not suffice. Adding the Disputed Transactions to the trial, as plaintiffs said at the Conference they would do, would redefine the scope of many of the fact witnesses' testimony, and (for CEC) would require calling more fact witnesses.

Noting at the Conference that "this is a shock to me" (Conference Tr. 51:1), the Court urged plaintiffs to "think long and hard about how they want to present this case" (*id.* 48:1-2) in the two or three weeks allotted to it, and suggested they might "bifurcate to get the Guarantee case tried first …. If you want to try the Guarantee case clean and simple, two weeks, if the bankruptcy judge lets it happen, maybe that's wise …. maybe you better consider my suggestion and just try the contract case first." (*Id.* 49:7-10, 50:19-21)

**Plaintiffs' Proposal For Bifurcation Is Inappropriate**

Having created this problem, plaintiffs now seek to solve it in a manner opposite to the Court's suggestion, and markedly prejudicial to CEC, despite Rule 42(b)'s admonition to seek "to *avoid* prejudice" through bifurcation (emphasis added). While the Court seemed to ask plaintiffs to consider first trying their claims that CEC's termination of the Parent Guarantee breached the indentures, plaintiffs propose to first try their claims that CEC's termination of the Parent Guarantee violated the Trust Indenture Act (the "TIA").

To worsen matters, while at the Conference plaintiffs portrayed the Disputed Transactions as a distinctive part of their good faith and tortious interference claims ("There were huge transfers out of assets, and that's really the basis of the conduct here on their breach of the covenant of good faith and fair dealing and the interference claim" (*id.* 31:15-18)), plaintiffs now say something additional. They say the Disputed Transactions are also "relevant" in deciding if the termination of the Parent Guarantee was part of an out-of-court reorganization under the TIA "to the extent that they occurred and resulted in cash proceeds being received by CEOC, thereby buying CEOC more time." (Letter at 3) Plaintiffs now hope to preclude CEC from defending itself at the first trial against these allegations about the Disputed Transactions. They brush aside CEC's due process rights by saying these are "facts that are easily established and that are not in dispute." (*Id.*) This is specious. As the Court told plaintiffs, "Every transaction you described, they're going to have a different version of it …. you may be able to do it in a conclusionary way, but unless you think they're

not going to defend themselves, they may feel that they need to explain every detail of every transaction …. They have a right to defend each and every transaction you've put in issue." (Conference Tr. 31:9-10, 21-24, 32:4-5) In the context of the TIA claims, CEC will have to offer evidence to demonstrate, as to each of the Disputed Transactions, that it was neither part of nor preparatory to an out-of-court reorganization. Such proof will take time and is not likely to be reduced by stipulation.

In short, because plaintiffs now insist on trying the Disputed Transactions in connection with the TIA claims, as well as in connection with the good faith and tortious interference claims, their proposal to leave the latter claims for the second trial does not shorten the first trial, and it creates great redundancy. The Court should not credit plaintiffs' assertion that the TIA claims "require[] distinct and far more limited proof" than the contract claims (Letter at 3) – plaintiffs have made clear they will seek to present virtually the same proof twice, and CEC will have to rebut it twice.

The inefficiency of having two juries at successive trials hear evidence about the same Disputed Transactions is manifest. So too is the prejudice to CEC. Plaintiffs surely would oppose an order under Federal Rule of Civil Procedure 54(b) allowing CEC to appeal the judgment in the first trial, and unless CEC persuaded the Court, it would have to defend twice against the same complex fact pattern and indistinguishable contract claims, before it could appeal the result in the first trial as of right.

To obscure this, plaintiffs use the misleading defined terms "the TIA Claim" and "the Remaining Claims" to refer to the matters to be tried at their proposed first and second trials, respectively. But the fact is that at the first trial, concerning the TIA Claim, plaintiffs also seek to try at least parts of five contract claims, including Counts I and IV in BOKF's complaint and Counts IV and V in UMB's complaint, as well as Count VII of UMB's complaint for costs and expenses under the indentures. (Letter at 1-2 & n.1)[1] In the contract claims which would be part of the first trial, plaintiffs assert that CEC breached the indentures by terminating the Parent Guarantee. (*E.g., BOKF v. CEC*, Dkt. # 1 at ¶¶ 161, 164-65, 167, 194-95; *UMB v. CEC*, Dkt. # 1 at ¶¶ 67, 69-71, 73-76, 81-83) It would be hairsplitting for plaintiffs to distinguish these contract claims from the Remaining Claims they propose to prosecute in the second trial – those too include contract claims where plaintiffs assert that CEC breached the indentures by terminating the Parent Guarantee. (*E.g., BOKF v. CEC*, Dkt. # 1 at ¶¶ 178-86, 217-20; *UMB v. CEC*, Dkt. # 1 at ¶¶ 60-64, 78) *See Blyden v. Mancusi*, 186 F.3d 252, 268-69 (2d Cir. 1999) (Seventh Amendment violation from bifurcation that lets second jury (on damages issues) reexamine issues decided by first jury); *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 2014 WL 572524, at *2 (S.D.N.Y.

---

[1] Plaintiffs presumably seek to include contract claims in the first trial so they can demand contract-style expectancy damages on their TIA claims. As the Court is aware, CEC disputes that contract damages are a proper remedy under the TIA. "Section 323(b) [of the TIA] limits a plaintiff's recovery to actual damages. In general, courts have held this language to mean victorious plaintiffs would be entitled to 'recover only their out-of-pocket losses ….'" *Royal Park Inv. SA/NV v. HSBC Bank USA, N.A.*, 2015 109 F. Supp. 3d 587, 598 (S.D.N.Y. 2015) (Scheindlin, J.) (citation omitted).

Feb. 13, 2014) (Scheindlin, J.) (prejudice to parties and drain on judicial resources to have bifurcation "by type of claim. This would result in two trials over the exact same products").

## If the Court Is Inclined To Bifurcate, Then the Contract Claims Should Be Tried First

Should the Court consider bifurcation, CEC believes the only plausible approach – albeit one that prejudices CEC more than a single trial – is to have a first trial of the breach of contract claims (*i.e.*, CEC ran afoul of the indentures by terminating the Parent Guarantee), without proof relating to the Disputed Transactions. The first trial would include the "and/or" issue and the "Existing Notes" issue, which implicates the meaning of "wholly owned subsidiary" under Regulation S-X. The second trial should be of the TIA claims (*i.e.*, CEC violated the statute by terminating the Parent Guarantee), and the good faith and tortious interference claims that also relate to the Disputed Transactions. In this structure, the first trial may still exceed two to three weeks, but perhaps not by that much.

CEC's proposed bifurcation could yield efficiencies in the second trial. If the first jury finds that CEC effectively terminated the Parent Guarantee under the "Existing Notes" clause because the May 2014 transactions caused CEOC to no longer be CEC's "wholly owned subsidiary" under Regulation S-X, and valid notice was given thereof in June 2014, then the second jury need not consider whether the August 2014 transaction violated the TIA. Separately, CEC's proposal would allow common law claims that are potentially case-dispositive to be tried first, leaving for a later trial the claims which revolve around the interpretation of a statute the Second Circuit may soon rule on (but has not yet ruled on).

By contrast, plaintiffs can point to no efficiencies from their proposal, other than this: "if the jury finds in their favor on the TIA Claim, there should be no need to pursue trial over the Remaining Claims, unless that verdict is disturbed on appeal …." (Letter at 4) Even this statement is untrue. First, as noted, so long as the Remaining Claims are not resolved, CEC has no "appeal" as of right. Second, if in the initial trial on the TIA, the jury found that the termination of the Parent Guarantee in May 2014 did not violate the TIA, then even a "find[ing] in [plaintiffs'] favor" by this jury – *i.e.*, as to the August 2014 transaction – would not suffice for judgment to be entered on the TIA claims. (That is, the jury's finding as to May 2014 would mean there was no Parent Guarantee to be terminated in August, for purposes of finding a TIA violation in the first trial.) Third, in this scenario, it would still be necessary to try the Remaining Claims, to decide if the May 2014 transactions terminating the Parent Guarantee breached the indentures. Put another way, plaintiffs would be very unlikely to find that there was "no need to pursue trial over the Remaining Claims."

Finally, if the Court orders any bifurcation, then plaintiffs' proposed pre-trial order, which we have been working on a response to since February 12, will require substantial revision. We would thus seek a revised schedule to complete the pre-trial order.

Respectfully,

Eric Seiler