**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BOKF, N.A., | |
| Plaintiff, | |
| v. | No. 1:15-cv-01561-SAS |
| CAESARS ENTERTAINMENT CORPORATION, | |
| Defendant. | |
| UMB BANK, N.A., | |
| Plaintiff, | |
| v. | No. 1:15-cv-04634-SAS |
| CAESARS ENTERTAINMENT CORPORATION, | Oral Argument Requested |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF**
**MARTHA E.M. KOPACZ AND CHRISTOPHER HILLCOAT**

FRIEDMAN KAPLAN
SEILER & ADELMAN LLP
7 Times Square
New York, NY 10036-6516
Telephone: (212) 833-1100
Fax: (212) 833-1250

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Fax: (212) 492-0020

*Attorneys for Caesars Entertainment Corporation*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

    I.      KOPACZ'S TESTIMONY SHOULD BE EXCLUDED AS
           IRRELEVANT AND UNRELIABLE ................................................................ 4

          A.    Kopacz's Opinions Are Based on a Standard Different from that
                Employed by the Court, and Should Be Excluded as Irrelevant and
                under Rule 403 ......................................................................................... 4

          B.    Kopacz's Testimony Should Be Excluded Because Her
                Methodology Was Developed and Used Solely for this Litigation ............ 7

          C.    Kopacz's "Framework" Should Be Excluded as Unreliable ................... 10

          D.    Kopacz's Testimony Is Inadmissible to the Extent that It Is Merely
                a Purported Summary of the Evidence ...................................................... 11

    II.      HILLCOAT'S TESTIMONY SHOULD ALSO BE EXCLUDED ...................... 14

CONCLUSION ....................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Algarin v. New York City Dep't of Correction*,
   460 F. Supp. 2d 469 (S.D.N.Y. 2006)..................................................................15

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002).............................................................................3

*Andrews* v. *Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989)...........................................................................12

*BOKF, N.A.* v. *Caesars Entm't Corp.*,
   2015 WL5076785 (S.D.N.Y. Aug. 27, 2015) (Scheindlin, J.)..................................4

*United States* v. *Casamento*,
   887 F.2d 1141 (2d Cir. 1989).........................................................................16

*Daubert* v. *Merrell Dow Pharm., Inc.*
   43 F.3d 1311 (9th Cir. 1995) ...........................................................................7

*Daubert* v. *Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...............................................................................1, 3, 6

*United States* v. *Dixon*,
   413 F.3d 520 (5th Cir. 2005) ...........................................................................7

*Faryniarz* v. *Nike, Inc.*,
   2002 WL 1968351 (S.D.N.Y. Aug. 23, 2002).....................................................10

*Gary Price Studios, Inc.* v. *Randolph Rose Collection, Inc.*,
   2006 WL 1319543 (S.D.N.Y. May 11, 2006) .......................................................8

*Highland Capital Mgmt., L.P.* v. *Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005)...............................................................13

*Israel* v. *Spring Indus., Inc.*,
   2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006)........................................................10

*Johnson Elec. N. Am. Inc.* v. *Mabuchi Motor Am. Corp.*,
   103 F. Supp. 2d 268 (S.D.N.Y. 2000)................................................................3

*Johnson* v. *Manitowoc Boom Trucks, Inc.*,
   484 F.3d 426 (6th Cir. 2007) ...........................................................................8

*LaBarge* v. *Joslyn Clark Controls, Inc.*,
    242 Fed. Appx. 780 (2d Cir. 2007)............................................................................10

*Lidle* v. *Cirrus Design Corp.*,
    2010 WL 2674584 (S.D.N.Y. July 6, 2010) ............................................................6

*LinkCo, Inc.* v. *Fujitsu Ltd.*,
    2002 WL 1585551 (S.D.N.Y. Jul. 16, 2002) ........................................................13

*Lippe v. Bairnco Corp.*,
    288 B.R. 678 (S.D.N.Y. 2003) *aff'd*, 99 F. Appx. 274 (2d Cir. 2004) ...................15

*Malletier* v. *Dooney & Bourke, Inc.*,
    525 F. Supp. 2d 558 (S.D.N.Y. 2007) (Scheindlin, J.) ...........................................7

*Member Servs., Inc.* v. *Sec. Mut. Life Ins. Co. of N.Y.*,
    2010 WL 3907489 (N.D.N.Y. Sept. 30, 2010)......................................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    593 F. Supp. 2d 549 (S.D.N.Y. 2008) (Scheindlin, J.) ...........................................8

*Norris* v. *Baxter Healthcare Corp.*,
    397 F.3d 878 (10th Cir. 2005) ................................................................................8

*Point Prods. A.G.* v. *Sony Music Entm't, Inc.*,
    2004 WL 345551 (S.D.N.Y. Feb. 23, 2004)...........................................................7

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..............................................................12, 13

*S.W.* v. *City of New York*,
    2011 WL 3038776 (E.D.N.Y. Jul. 25, 2011).........................................................16

*United States* v. *Williams*,
    506 F.3d 151 (2d Cir. 2007).....................................................................................3

*Williamson Oil Co., Inc.* v. *Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ...............................................................................7

**Statutes**

Trust Indenture Act of 1939.........................................................................................1

iii

**Other Authorities**

17 C.F.R. 210.3-10.................................................................................................................14

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...............................................................................................15

Fed. R. Evid. 403 ........................................................................................................1, 4, 7, 13

Fed. R. Evid. 702 ................................................................................................... *passim*

Defendant Caesars Entertainment Corporation ("CEC") submits this memorandum of law in support of its motion, pursuant to Federal Rules of Evidence 403 and 702 and *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to exclude testimony of plaintiffs' proffered expert witnesses Martha E.M. Kopacz ("Kopacz") and Christopher Hillcoat ("Hillcoat").

### PRELIMINARY STATEMENT

In support of their claim under the Trust Indenture Act, plaintiffs have proffered a purported expert opinion by Kopacz that "Caesars' restructuring involved nearly four dozen individual transactions, including [the May and August 2014] Guarantee Transactions," going back to the leveraged buyout in 2008.  (Adler Decl. Ex. A[1] (Kopacz Rept.) at ¶7.)  Kopacz's opinion relies on a "framework" that she invented for this case, and that no one else has ever used, for determining whether an out-of-court restructuring has occurred.

Kopacz's testimony is not based on any reliable methodology, and thus does not satisfy the standards of admissibility under Rule 702 and *Daubert*, and should also be excluded as confusing and prejudicial under Rule 403.  *First*, her "framework" is, as she admitted in her deposition, different from—and probably broader than—the definition of reorganization that the Court has applied in this case.  Indeed, she testified at her deposition that "I just don't agree with" parts of the definition cited by the Court, that she did not understand other parts, and that she therefore was not willing to "to embrace [the Court's] definition, other than to say it is one of infinite number of definitions of restructuring, reorganization."  (Adler Decl. Ex. B (Kopacz Dep. Tr.) at 155:20-22; 156:3-4; 165:17-20.)  But an expert's role is to assist the trier of fact by applying her expertise within the governing legal standards, not to opine on or challenge the

---

[1]   Citations to "Adler Decl. Ex. _" refer to exhibits attached to the accompanying declaration of Philippe Adler, filed in support of CEC's motion.

Court's determination of what those standards are.  Accordingly, Kopacz's opinion based on her framework is irrelevant to the issues at hand, as well as potentially prejudicial and confusing. *Second*, her "framework," as she also admitted in her deposition, was developed expressly for purposes of her testimony in this case, and has never been applied by her or, to her knowledge, anyone else.  *Third*, her "framework" is not a reliable principle or method for determining whether a set of facts constitutes a restructuring, but is instead (as she testified) a "laundry list of things that may be prevalent or present in a restructuring" (Adler Decl. Ex. B. (Kopacz Dep. Tr.) at 128:25-129:2), some or all of which, in her view, may or may not be present in a restructuring. *Fourth*, apart from her unreliable, litigation-driven "framework," her report consists of little more than a recitation of evidence, and her testimony would thus supplant the role of the jury in interpreting the evidence.

Hillcoat's testimony likewise does not satisfy Rule 702 and *Daubert*.  Hillcoat, whom plaintiffs have proffered to rebut the testimony of CEC's expert James Gadsden, opines that the parent guarantee is a "commercially reasonable credit support on which the Noteholders have a contractual right to rely …." (Adler Decl. Ex. C. (Hillcoat Rept.) at ¶3(B).)  But Hillcoat's opinion is not based on any empirical analysis or any other reliable expert methodology, but solely on his own unsupported (and faulty) legal analysis.  Such testimony is inadmissible both because it is unreliable and because it is improper legal opinion.  And Hillcoat lacks the experience that would qualify him to offer his opinions at trial.  In any event, if the Court grants plaintiffs' motion to exclude Gadsden's testimony, it should necessarily also exclude testimony by Hillcoat, both because if Gadsden does not testify there is nothing for Hillcoat to rebut and because the same logic on which plaintiffs' motion rests applies with even greater force to Hillcoat.

**ARGUMENT**

Under *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993),

expert testimony must both "rest[] on a reliable foundation and [be] relevant to the task at

hand.'" *Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (quoting

*Daubert*, 509 U.S. at 597). Under Rule 702 of the Federal Rules of Evidence, expert testimony

offered by a qualified expert is admissible only if:

     (a)    The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

     (b)    The testimony is based on sufficient facts or data;

     (c)    The testimony is the product of reliable principles or methods; and

     (d)    The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 and *Daubert* require the Court to "undertake a rigorous examination

of the facts on which the expert relies, the method by which the expert draws an opinion from

those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*,

303 F.3d at 267.

The proponent of expert testimony bears the burden of demonstrating its

admissibility under these standards by a preponderance of the evidence. *United States* v.

*Williams*, 506 F.3d 151, 160 (2d Cir. 2007). When a proposed expert "fails to meet the

requirements of the Federal Rules of Evidence and *Daubert*, courts within the Second Circuit

have not hesitated to exclude the expert's testimony at trial." *Johnson Elec. N. Am. Inc.* v.

*Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 279 (S.D.N.Y. 2000).

## I.   KOPACZ'S TESTIMONY SHOULD BE EXCLUDED AS IRRELEVANT AND UNRELIABLE

Kopacz offers the opinion that the transactions at issue—the B7 refinancing, the 5% stock sale, the PIP transactions, and the August transaction—"were integral components of an out-of-court 'restructuring' by Caesars [defined collectively to include CEC, CEOC, and their subsidiaries (Adler Decl. Ex. A (Kopacz Rept.) at ¶ 2)], as that term is used in the corporate restructuring industry and as generally understood by professionals and stakeholders involved in high yield investing, asset based lending, bankruptcy, distressed investment banking, private equity and related areas."  (*Id.* at ¶ 7.)  In reaching this conclusion, Kopacz applies a multi-factor "framework" that she devised for determining whether an out-of-court reorganization has occurred.  (*Id.* at ¶ 8.)

Kopacz's testimony, however, does not satisfy the standards of admissibility under Rule 702 and *Daubert*, and should also be excluded under Rule 403.

### A.   Kopacz's Opinions Are Based on a Standard Different from that Employed by the Court, and Should Be Excluded as Irrelevant and under Rule 403

In its August 27, 2015 Opinion and Order, this Court set forth the standards for determining whether the challenged transactions were part of an impermissible out-of-court reorganization.  *BOKF, N.A.* v. *Caesars Entm't Corp.* ("*BOKF I*"), 2015 WL5076785, at *5 (S.D.N.Y. Aug. 27, 2015).  Citing a definition from Investopedia.com, the Court explained that a reorganization is:

> [a] process designed to revive a financially troubled or bankrupt firm. A reorganization involves the restatements of assets and liabilities, as well as holding talks with creditors in order to make arrangements for maintaining repayments. Reorganization is an attempt to extend the life of a company facing bankruptcy through special arrangements and restructuring in order to minimize the possibility of past situations reoccurring.

*Id.* at *5 n.53 (quoting Reorganization Definition, Investopedia.com, www.investopedia.com/terms/r/reorganization.asp).  The Court further explained that to determine whether the challenged transactions were part of a plan to accomplish an out-of-court reorganization in violation of the TIA, the finder of fact "may examine all evidence related to these transactions to determine whether a restructuring occurred—*i.e.*, did the transaction involve the restatement of assets and liabilities, did CEOC hold talks with creditors in order to make arrangements for maintaining repayments, and did the transactions attempt to extend the life of a company facing bankruptcy through special arrangements and restructuring." *Id.* at *11.  While CEC respectfully disagrees with this formulation of the standard for determining what constitutes an out-of-court debt "reorganization" under the TIA, and reserves the right to propose an alternative standard, it is the standard that the Court has indicated is applicable here.

As Kopacz conceded in her deposition, however, the "framework" on which her opinion was based is "different" from and probably "broader" than the definition this Court has employed.  (Adler Decl. Ex. B. (Kopacz Dep. Tr.) at 154:14-18; 157:4-19.)  Kopacz testified that "there are parts of [the Court's definition] that I just don't agree with," and other parts that "[don't] make any sense to me." (*Id.* at 155:14-22; 169:20-21; *see also id.* at 31:2-25 (acknowledging that she had not carefully read or completely understood the Court's opinion when writing her report and would need additional information to be able to understand it).)  She stated that she was not sure she had "a clear understanding of Judge Scheindlin's opinion today," and thought the Court's standard was "not particularly clear."  (*Id.* at 30:23-25; 31:17-20.)  She expressly declined "to embrace [the Court's] definition, other than to say it is one of infinite number of definitions of restructuring, reorganization."  (*Id.* at 165:17-20.)

Indeed, she testified that after reading the Investopedia definition of "reorganization" cited in the Court's opinion, "I said, you know what, I should really get them to change it because this doesn't make any sense whatsoever." (*Id.* at 170:6-10.) She explained:

> [P]art of the challenge is I don't know how the definition is created. I know that Investopedia is the financial equivalent to Wikipedia. So that people, people suggest things and they add things, right? . . . . But I don't know if this was a definition that was written by a single person and submitted and accepted, or if it is a definition that has been written by multiple people and then amalgamated to create the definition. Because again Investopedia—it is like Wikipedia; any of us could add content to it if we were deemed qualified.

(*Id.* at 169:25-170:19.)

Consistent with her rejection and lack of understanding of the definition of "reorganization" that the Court has applied, Kopacz did not apply *any* of the criteria for an out-of-court reorganization identified by the Court. She acknowledged that she "do[es]n't agree that a reorganization involves the restatement of assets and liabilities"; "do[es]n't know what a special arrangement is"; believes the idea that reorganizations involve talks with creditors that are aimed at maintaining repayments "doesn't make any sense"; and disputes that a reorganization is necessarily an attempt to extend the life of a company facing bankruptcy. (*Id.* at 154:25-155:3; 163:19-164:9; 165:20-21; 169:17-24.) Accordingly, her "framework" does not employ any of these criteria. (Adler Decl. Ex. A (Kopacz Rept.) at ¶¶ 13-44 (describing the elements of her framework).)

The relevance requirement under *Daubert* requires the court to determine "whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. In other words, expert testimony is admissible only if "the expert's reasoning or methodology can be properly applied to the facts before the court." *Lidle* v. *Cirrus Design Corp.*, 2010 WL 2674584, at *4 (S.D.N.Y. July 6, 2010).

6

Thus, courts have consistently excluded expert opinions that, like Kopacz's, are premised on inapplicable legal standards. *See, e.g., Malletier* v. *Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 569-70 (S.D.N.Y. 2007) (Scheindlin, J.) (excluding expert reports on consumer confusion and trademark dilution because of "lack of fit" between expert's methodology and governing legal principles); *Point Prods. A.G.* v. *Sony Music Entm't, Inc.*, 2004 WL 345551, at *7 (S.D.N.Y. Feb. 23, 2004) (excluding expert report on alleged lost sales because the report did not address sales lost due to factors other than defendant's conduct and thus did not "fit . . . the evidence or fact that is in issue"); *Williamson Oil Co., Inc.* v. *Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (excluding expert's testimony that there was collusive price fixing where expert improperly defined illegal collusion); *United States* v. *Dixon*, 413 F.3d 520, 523–524 (5th Cir. 2005) (excluding expert testimony concerning defense of duress that focused on defendant's individual state of mind where relevant issue for such defense was the objective reasonableness of defendant's perceptions).

Kopacz's opinion also should be excluded under Rule 403, because any minimal probative value it may have is substantially outweighed by the danger of unfair prejudice, confusing the issue, and misleading the jury. Because Kopacz's opinion purports to assess whether the challenged transactions were part of an "out-of-court restructuring" or "reorganization," the jury could be led to conclude that her opinion applies the same standard applied by the Court. The Court should not permit an expert to provide testimony that appears to address the issue at hand, but in fact is materially different.

## B. Kopacz's Testimony Should Be Excluded Because Her Methodology Was Developed and Used Solely for this Litigation

Courts consistently have excluded expert testimony developed for litigation purposes. *See Daubert* v. *Merrell Dow Pharm.* ("*Daubert II*"), 43 F.3d 1311, 1317 (9th Cir.

1995) (disfavoring expert opinions developed "expressly for the purpose of testifying"); *Gary Price Studios, Inc.* v. *Randolph Rose Collection, Inc.*, 2006 WL 1319543, at *8 (S.D.N.Y. May 11, 2006) (excluding expert's testimony where "there appeared[ed] to be no prior application of his theories or methodology"); *Johnson* v. *Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434-35 (6th Cir. 2007) (affirming exclusion of engineering expert in part because expert's opinions on design defect were "conceived, executed, and invented" solely for litigation); *Norris* v. *Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (affirming exclusion of plaintiff's medical experts whose efforts to discredit epidemiological evidence were not developed independent of litigation and were not peer-reviewed).  For example, in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 593 F. Supp. 2d 549, 561 (S.D.N.Y. 2008) (Scheindlin, J.), this Court excluded testimony of an expert witness because, among other reasons, the expert "[could not] name another scientist who ha[d] ever employed, much less approved of" his method, and "had never used it in his day-to-day work, or applied it" in any similar situation.

Kopacz's testimony should be excluded under these principles, because the "framework" she applies to determine whether an out-of-court reorganization occurred was, as she conceded in her deposition, developed solely for this litigation, and, to her knowledge, has never been previously applied by her or anyone else.  (*See, e.g.*, Adler Decl. Ex. B (Kopacz Dep. Tr.) at 20:8-14 (stating that she "started developing the framework the afternoon after . . . [she] met with [Plaintiffs' counsel]").)  She acknowledged that before being retained by plaintiffs' counsel in this case she had never even talked about the definition of restructuring or reorganization, and that, "[t]o the best of my knowledge, my research, no one has ever previously unequivocally defined a framework for a restructuring" or out-of-court reorganization.  (*Id.* at 29:15-21.)  She testified:

Q.    So is it fair to say this is the first matter in which you have been asked to think about whether something is an out-of-court reorganization or restructuring for the purpose of testimony?

A.    Yes.

Q.    And this is the first and only matter to which you have applied your framework?

A.    Yes.

Q.    And is it fair to say you created and wrote down your framework in connection with your work in this matter?

A.    Yes.

(*Id.* at 98:11-24.)

Kopacz also acknowledged that, to her knowledge, no one else has ever used her framework.  Indeed, she testified that, "[t]o the best of my knowledge, my research, no one has ever previously unequivocally defined a framework for a restructuring" or out-of-court reorganization.  (*Id.* at 29:15-21; *see also id.* at 30:10-13 ("[T]here is no universally agreed-upon definition for restructuring, reorganization, in-court, out-of-court, et cetera et cetera."); Adler Decl. Ex. A (Kopacz Rept.) at ¶ 13 ("There is no single, agreed-upon definition of 'restructuring.'").)

Indeed, Kopacz conceded that she knew of no one else who has ever used the framework she employed in this case.  She testified:

Q.    And you have not used that framework for any other engagement other than this one?

A.    I haven't had a reason to.  But I will.

Q.    But the answer is you haven't?

A.    I haven't, no.

Q.    And as far as you know, nobody else has either.

> A.     No, but I will tell you, it is—it is robust.  I like it. So—yeah.  Because I think—it is going to work—it is going to work to answer this question irrespective of what the individual facts are….

(Adler. Decl. Ex. B (Kopacz Dep. Tr.) at 248:24-249:14; *see also id.* at 147:13-148:23 (acknowledging that she and her colleague consulted no other industry practitioners or sources in constructing their framework).)

Because her methodology was developed solely for this litigation and has never been reviewed or tested by anyone else, Kopacz's opinions should be excluded as unreliable.

**C.     Kopacz's "Framework" Should Be Excluded as Unreliable**

Kopacz's opinion is inadmissible for the further reason that it is untestable and hence unreliable.  *See LaBarge* v. *Joslyn Clark Controls, Inc.*, 242 Fed. Appx. 780, 782 (2d Cir. 2007) (affirming exclusion of expert testimony and recognizing that an expert's theory must "be testable"); *Faryniarz* v. *Nike, Inc.*, 2002 WL 1968351, at *3 (S.D.N.Y. Aug. 23, 2002) (excluding expert's conclusions that were "incapable of being tested or challenged").  To the extent that a witness is testifying based on her experience, the expert must be able to "explain how that experience leads to the conclusion reached," so that the finder of fact is not "simply taking the expert's word for it."  *Israel* v. *Spring Indus.*, *Inc.*, 2006 WL 3196956, at *2 (E.D.N.Y. Nov. 3, 2006) (internal quotation marks and citation omitted).

The "framework" upon which Kopacz's opinion is based is a list of "indicia" purporting "to illustrate the environment in which a restructuring occurs and the customary participants, activities, and statements involved in an out-of-court restructuring."  (Adler Decl. Ex. A (Kopacz Rept.) at ¶ 14.)  As Kopacz acknowledged in her deposition, however, "every situation is different, every set of transactions is going to be different" (Adler Decl. Ex. B (Kopacz Dep. Tr.) at 128:18-22), and her framework is merely a "menu" (*id.* at 253:9) or "laundry list of things that may be prevalent or present in a restructuring" (*id.* at 128:25-129:2).

Thus, Kopacz's framework does not explain how the "indicia" relate to one another or to the ultimate determination of whether a set of events constitutes a restructuring. Nor does her framework explain whether and in what circumstances the existence of certain indicia does or does not identify whether a restructuring is occurring or has occurred. Instead, she testified, whether a restructuring has taken place depends on her subjective assessment of particular "facts and circumstances" and that "every situation is different." (*Id.* at 111:16-112:4; 128:14-129:2; 238:20-239:6.) She testified:

> [I]n terms of determining whether a restructuring is going on or reorganization, it's very fact specific. It has to do with the context in which the activities are going on and what the level of distress is and what the objectives are. So it is not a, you know, with rare exception could you ever say a stand-alone issue or a stand-alone person or a stand-alone statement in a very narrow context is a restructuring. You would have to look at it in a context of everything that's going on. …. But for the most part, all of the rest of the indicia, it is going to be which ones are important, which ones are—how many of them are there, and what the facts and circumstances are.

(*Id.* at 238:7-239:6.) Thus, she stated, "most of these things [in her framework] exist outside of the restructuring world. It is simply how these people, activities, or comments are done in the context of an adverse situation that makes it a restructuring." (*Id.* at 252:16-23.)

Kopacz's "framework" thus is not a reliable, testable methodology, but simply a list of factors that she considers, and, based on the "context" and the "facts and circumstances," testifies whether she believes a restructuring has occurred. For that reason, too, it does not satisfy the reliability requirements of Rule 702 and *Daubert*.

## D.    Kopacz's Testimony Is Inadmissible to the Extent that It Is Merely a Purported Summary of the Evidence

Finally, Kopacz's testimony should be excluded to the extent that it consists merely of a purported summary of the evidence. Kopacz's report consists of page after page of

purported summaries of the evidence in the case, with little or no analysis or explanation of how the evidence might relate to her opinions.  Expert "opinions" of this kind are not admissible.

Evidence is appropriately presented as expert testimony only if it is based on "scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702.  Because of this requirement, an expert witness may not testify about "lay matters which a jury is capable of understanding and deciding without the expert's help."  *Andrews* v. *Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (citations omitted).  Expert testimony is thus not appropriate if it will effectively serve to "supplant the role of counsel in making argument at trial, [or] the role of the jury in interpreting the evidence."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).  For these reasons, courts preclude any expert testimony that takes the form of a mere "narrative reciting selected [evidence]" detached from the application of some specialized knowledge.  *Id.* at 551; *accord Member Servs., Inc.* v. *Sec. Mut. Life Ins. Co. of N.Y.*, 2010 WL 3907489, at *26 (N.D.N.Y. Sept. 30,  2010) (excluding expert testimony that was "little more than a factual narrative based upon [the proposed expert's] review of select discovery documents and . . . other expert reports.").

Kopacz's opinions are largely of the type prohibited by these principles.  For example, Kopacz purports to summarize at length evidence from SEC filings of CEOC's revenues and operating profits from 2009 through 2014 and statements from third parties, including Wall Street analysts, credit rating agencies, and CEC officials, concerning CEOC's cash flows during that time.  (Adler Decl. Ex. A (Kopacz Rept.) at ¶¶ 47-53.)  She purports to describe transactions undertaken by CEC and/or CEOC (*id*. at ¶¶ 68-85), but provides no analysis of the transactions, instead simply compiling statements from public filings, documents

produced in discovery, deposition transcripts, credit rating agency reports, Wall Street analyst

reports, and news articles indicating that the transactions would provide CEOC with liquidity and

some degree of relief from the financial burdens of its debt load.  (*Id.*)  Indeed, her report

explicitly says that "Caesars restructuring involved nearly four dozen individual transactions,

including the Guarantee Transactions" (Adler Decl. Ex. A (Kopacz Rept.) at ¶ 7), which she

described as "going back to the LBO" (Adler Decl. Ex. B (Kopacz Dep. Tr.) at 113:114:10).

Kopacz intends to testify that each of these transactions, including "casino clos[ures] and other

"operational actions" that CEOC took (*id.* at 107:21-108:13), and many of which occurred from

2009-2013, "long before" the challenged transactions were completed, was part of the CEOC

reorganization that is the focus of her opinion (*id.* at 114:19-115:3; 115:22-116:15).

   Marshalling one party's view of the evidence is not a proper role for an expert.

*See LinkCo, Inc.* v. *Fujitsu Ltd.*, 2002 WL 1585551, at *2 (S.D.N.Y. Jul. 16, 2002); *Rezulin

Prods.*, 309 F. Supp. 2d at 551 (rejecting parts of plaintiffs' expert's testimony that was "a

narrative reciting selected regulatory events" because "[s]uch material, to the extent it is

admissible, is properly presented through percipient witnesses and documentary evidence").  An

expert witness may not merely summarize evidence in a way that involves no application of

specialized knowledge. *See Highland Capital Mgmt.*, *L.P.* v. *Schneider*, 379 F. Supp. 2d 461,

468-69 (S.D.N.Y. 2005) ("While an expert must of course rely on facts or data in formulating an

expert opinion, an expert cannot be presented to the jury solely for the purpose of constructing a

factual narrative based upon record evidence." (citation omitted)).

   Finally, testimony by Kopacz that merely purports to summarize the evidence

should also be precluded as prejudicial under Fed. R. Evid. 403.  Even if the evidence is

otherwise admissible, it would be unfair and prejudicial to allow plaintiffs to present such

evidence to the jury with the imprimatur of a purported expert, rather than through admissible documents and percipient witnesses.

## II.      HILLCOAT'S TESTIMONY SHOULD ALSO BE EXCLUDED

Plaintiffs have proffered Hillcoat, one of their purported rebuttal experts, to opine that "[t]he Parent Guarantee is a commercially reasonable credit support on which the Noteholders have a contractual right to rely in evaluating the creditworthiness of their investment and may look to for payment of obligations due under the Indentures and Notes in the event of default by the Issuer." (Adler Decl. Ex. C (Hillcoat Rept.) at ¶ 3(B).)  Hillcoat bases this conclusion on an argument that a subsidiary's use of a parent's consolidated financial statements for financial reporting purposes under Rule 3-10 implies that the related parent guarantee is provided for credit support (*id.* at ¶¶ 21-24, 43), on his view that provisions regarding guarantees vary among transactions to a degree that conclusions about their purposes cannot be gleaned from the nature of accompanying covenants and default provisions (*id.* at ¶ 44), and on statements contained in the Notes' offering materials and industry commentary (*id.* at ¶¶ 46-53). Hillcoat purports to rebut testimony by CEC's expert James Gadsden that plaintiffs' interpretation of the guarantee release provisions in Section 12.02(c) of the Indentures is commercially unreasonable, and, based upon his reading of the Indentures, his systemic survey of indentures governing notes by other issuers, and his knowledge of the market for high-yield debt, that the guarantee provisions at issue here are consistent with having been principally intended for reporting purposes rather than credit support. (*BOKF* Dkt. 107-1 (Gadsden Rept.) at ¶¶ 6, 36.)

The Court should exclude Hillcoat's testimony because (in contrast with Gadsden's proposed testimony) it is not based on any relevant experience, empirical data or reliable methodology.  To the contrary, Hillcoat merely opines on the meaning of the guarantee

release provisions in the Trustee Cases Indentures based on his own unsupported (and faulty) legal analysis.  Hillcoat testified at his deposition that each indenture is a contract that stands on its own and, therefore, he did not need to and did not review a single indenture other than the CEOC indentures at issue in this case in formulating his opinion.  (Adler Decl. Ex. D (Hillcoat Dep. Tr.) at 77:6-16; *see also id.* at 77:25-78:5 (conceding that he did not review any indentures other than those at issue "in connection with this engagement in any way").  Instead, Hillcoat testified, his opinions were based solely on his "general professional knowledge" and "an awareness of what to look for in an indenture to come to a conclusion with regard to the durability of [CEC's] guarantee."  (*Id.* at 78:9-80:4.)

Hillcoat's "general professional knowledge" and "awareness" however, are insufficient here.  Indeed, Hillcoat admitted that he has never negotiated an indenture on behalf of noteholders, an issuer, a guarantor or a deal manager.  (*Id.* at 84:2-24.)  While Hillcoat testified that he has negotiated indentures on behalf of trustees—although he had not done so in at least a decade (*id.* at 87:15-21)—he conceded that trustees play only a ministerial role with respect to indentures and that "[t]he trustee's role is not to shape the transaction."  (*Id.* at 85:20-21; 99:8-15.)  Hillcoat also could not recall a single instance during his time "negotiating" indentures in which an issue concerning the indenture's parent guarantee language arose.  (*Id.* at 87:6-12.)  *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003) *aff'd*, 99 F. Appx. 274 (2d Cir. 2004) ("[A]n expert who is relying 'solely . . . on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'") (quoting Fed. R. Evid 702 advisory committee's note (2000 Amendments)); *see also Algarin v. New York City Dep't of Correction*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006) ("An anecdotal account of one's

15

experience, however extensive or impressive the numbers it encompasses, does not by itself equate to a methodology." (internal quotations marks and citation omitted)).

       In any event, if the Court grants plaintiffs' motion to exclude Gadsden's testimony, Hillcoat's rebuttal testimony should also be excluded.  That is so, first, because Hillcoat's rebuttal testimony may properly be presented at trial only to contradict or respond to some affirmative evidence presented by CEC.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (permitting rebuttal expert evidence that is "intended solely to contradict or rebut [expert] evidence on the same subject matter identified by another party"); *United States* v. *Casamento*, 887 F.2d 1141, 1172 (2d Cir. 1989) ("The function of rebuttal evidence is to explain or rebut evidence offered by the other party.");  *S.W.* v. *City of New York*, 2011 WL 3038776, at *2 (E.D.N.Y. Jul. 25, 2011) ("Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." (internal quotation marks and citation omitted)). And, in any event, if the Court excludes Gadsden's testimony on the ground that it constitutes improper legal opinion, as plaintiffs argue (*UMB* Dkt. 111, at 3-4), the same conclusion would at least equally preclude testimony by Hillcoat on the same subject.

## CONCLUSION

       For the foregoing reasons, the Court should exclude testimony from Plaintiffs' proposed expert witnesses Martha E.M. Kopacz and Christopher Hillcoat.

Dated:  New York, New York
         February 22, 2016

FRIEDMAN KAPLAN SEILER & ADELMAN
LLP


By: _____/s/ Eric Seiler_____
      Eric Seiler
      Philippe Adler
      Jason C. Rubinstein
      Christopher M. Colorado
      7 Times Square
      New York, New York 10036-6516
      (212) 833-1100
      eseiler@fklaw.com


PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP


      Lewis R. Clayton
      Michael E. Gertzman
      Jonathan H. Hurwitz
      Ankush Khardori
      1285 Avenue of the Americas
      New York, New York 10019-6064
      (212) 373-3000
      lclayton@paulweiss.com

*Attorneys for Caesars Entertainment Corporation*